Michael S. Elkin (admitted *pro hac vice*)
MElkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:      (212) 294-6700

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Cesie C. Alvarez (admitted *pro hac vice*)
CAlvarez@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:      (415) 591-1000

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:      (213) 615-1700

Michael D. Bednarek (admitted *pro hac vice*)
michael@bednareklegal.com
BEDNAREK LEGAL, PLLC
1100 N. Glebe Road, Suite 1010
Arlington, VA 22201
Telephone:      (202) 997-1665

Attorneys for Defendants
WOWWEE GROUP LIMITED, WOWWEE
CANADA, INC., WOWWEE USA, INC., and
GRAMPS GOODS, INC.

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBLOX CORPORATION et al., | Case No. 3:22-cv-04476-SI |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| WOWWEE GROUP LIMITED, et al., | **Fed. R. Civ. P. 12(b)(6)** |
| Defendants. | Hearing: December 2, 2022<br>Time: 10:00 a.m. |

1    TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on Friday, December 2, 2022 at 10:00 a.m., or as soon

3    thereafter as may be heard before the Honorable Susan Illston, in Courtroom 1, 17th Floor, of this

4    Court located at 450 Golden Gate Avenue, San Francisco, California 94102, or pursuant to any

5    remote hearing procedures ordered by the Court, Defendants WowWee Group Limited, WowWee

6    Canada, Inc., WowWee USA, Inc. (collectively, "WowWee") and Gramps Goods, Inc. move

7    pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all claims

8    against WowWee in this action in whole or in part for failing to state a claim upon which relief can

9    be granted (the "Motion"). Alternatively, WowWee moves pursuant to the Federal Arbitration Act

10   ("FAA") for an order dismissing or staying all non-intellectual property claims in favor of

11   arbitration.

12   This Motion is based upon this Notice, the attached Memorandum of Points and Authorities,

13   the accompanying Request for Judicial Notice ("RJN"), other pleadings and papers filed in this

14   action, and such other and further submission, evidence, and argument as may be presented to the

15   Court prior to or at the time of hearing on this Motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II.  BACKGROUND/PLAINTIFFS' ALLEGATIONS ............................................... 2

    A.  WowWee and Its My Avastars Fashion Dolls ........................................... 2

    B.  Roblox ....................................................................................................... 3

    C.  Jazwares .................................................................................................... 4

    D.  Gamefam ................................................................................................... 4

    E.  Roblox Changes Its Terms in June 2022 to Assert Claims Over Users' IP ..... 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT ........................................................................................................ 6

    A.  The FAC Fails to Plead a Valid Copyright Infringement Claim ............... 6

        1.  Plaintiffs Cannot Sue for Infringement of Copyrights They Do Not Own ...... 7

        2.  Plaintiffs Cannot Sue on the Unregistered "Avatar Bases" ........... 7

        3.  Plaintiffs Cannot Sue on Works Registered After They Filed This Action ...... 9

        4.  Plaintiffs Cannot Sue for Alleged Infringement of the "Gamefam My Avastars Avatar" ...... 10

    B.  The FAC Fails to Adequately Allege That the My Avastars Fashion Doll Is Substantially Similar to Plaintiffs' Alleged Works Under the Objective "Extrinsic Test" ...... 11

        1.  Plaintiffs Fail to Satisfy the "Extrinsic Test" of Substantial Similarity ...... 11

        2.  Plaintiffs' List of "Humanoid" Features of Their Avatars Consists Entirely of Unprotectable Ideas and Commonplace Elements ...... 12

    C.  Plaintiffs Have Not Sufficiently Alleged Any Protectible Trade Dress ...... 16

    D.  Plaintiffs' Additional Lanham Act Claims Fail ..................................... 19

    E.  Plaintiffs' Contract and Interference Claims Belong in Arbitration ...... 21

    F.  If Plaintiffs' Contract Claim Is Not Arbitrable, It Fails on Its Face ...... 22

    G.  The Intentional Interference with Contractual Relations Claim Fails ...... 23

    H.  Jazwares's Claims Should Be Dismissed Due to Its Lack of Standing ...... 25

V.  CONCLUSION ...................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*1800 Get Thin, LLC v. Hiltzik,*
5
    2011 WL 3206486 (C.D. Cal. July 25, 2011) ........................................................................20

6
*Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944
7
    F.2d 1446 (9th Cir. 1991) ........................................................................................................21

8
*Activision Blizzard, Inc. v. Game & Tech. Co., Ltd.,*
    2018 WL 1358661 (P.T.A.B. Mar. 14, 2018) ........................................................................18

9
*AHTNA Gov't Servs. v. 52 Rausch, LLC*,
10
    2003 WL 403359 (N.D. Cal. Feb. 19, 2003) ..........................................................................22

11
*AOP Ventures, Inc. v. Steam Distrib., LLC*,
    2016 WL 7336730 (C.D. Cal. Oct. 11, 2016), *modified on other grounds*, 2016
12
    WL 10586307 (C.D. Cal. Dec. 27, 2016) .........................................................................19, 20

13
*Apple Computer, Inc. v. Microsoft Corp.*,
14
    35 F.3d 1435 (9th Cir. 1994) ...................................................................................................11

15
*Apple Computer, Inc. v. Microsoft Corp.*,
    799 F. Supp. 1006 (N.D. Cal. 1992), *aff'd*, 35 F.3d 1435
16
    (9th Cir. 1994).........................................................................................................................12

17
*Applied Underwriters Inc. v. Lichtenegger Eyeglasses,*
18
    2017 WL 2881517 (E.D. Cal. Nov. 30, 2018) ........................................................................20

19
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................................................................6

20
*Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters*, 459
21
    U.S. 519 (1983)........................................................................................................................25

22
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 545 (2007).....................................................................................................................6
23

24
*Blehm v. Jacobs,*
    702 F.3d 1193 (10th Cir. 2012) ...............................................................................................12

25
*Bosley Med. Inst., Inc. v. Kremer*,
26
    403 F.3d 672 (9th Cir. 2005) ...................................................................................................19

27
*Broker Genius, Inc. v. Seat Scouts LLC*,
    2018 WL 2214708 (S.D.N.Y. May 14, 2018) .........................................................................22

28

ii

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ......................................................................................20

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ........................................................................................11

*Ceiling Fan Software, LLC v. Blizzard Ent., Inc.*,
  2012 WL 12507761 (D. Ariz. May 10, 2012) .............................................................18

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ......................................................................11

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ......................................................................................22

*Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*,
  114 F. Supp. 2d 992 (S.D. Cal. 2000) .........................................................................18

*Corbello v. Valli*,
  974 F.3d 965 (9th Cir. 2020) ........................................................................................11

*Country Kids 'N City Slicks, Inc. v. Sheen*,
  77 F.3d 1280 (10th Cir. 1996) ........................................................................................8

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ......................................................................................23

*Cub Club Investment, LLC v. Apple Inc.*,
  2022 WL 469378 (N.D. Cal. Feb. 16, 2022) ...............................................................13

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  2015 WL 12731929 (C.D. Cal. May 8, 2015) .............................................................16

*Denims v. Ram Imports, Inc.*,
  2020 WL 11884712 (C.D. Cal. Dec. 10, 2020) ...........................................................17

*Doggie Dental, Inc. v. Shahid*,
  2021 WL 4582112 (N.D. Cal. June 17, 2021) ...............................................................8

*Enea Embedded Tech., Inc. v. Eneas Corp.*,
  2009 WL 648891 (D. Ariz. Mar. 11, 2009) .................................................................19

*Esplanade Prods., Inc. v. Walt Disney Co.*,
  2017 WL 5635027 (C.D. Cal. Nov. 8, 2017), *aff'd*, 768 F. App'x 732 (9th Cir.
  2019) ............................................................................................................................11

*Feist Pubs., Inc. v. Rural Tel. Serv. Co. Inc.*,
  499 U.S. 340 (1991) ......................................................................................................13

iii

*Fodor v. L.A. Unified Sch. Dist.*,
  2014 WL 12235424 (C.D. Cal. June 3, 2014) ................................................................9

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)......................................................................................6, 7, 8

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by Skidmore as Tr. for*
  *Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (*en banc*)..............6, 7

*GENFIT S.A. v. CymaBay Therapeutics Inc.*,
  2022 WL 195650 (N.D. Cal. Jan. 21, 2022) ..................................................................24

*Hernandez v. Dollar Tree Stores, Inc.*,
  2021 WL 4296023 (S.D. Cal. Sept. 21, 2021)................................................................21

*Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*,
  2016 WL 9045853 (C.D. Cal. May 2, 2016) ..................................................................22

*Hot Focus Inc. v. Best Accessory Grp. LLC*,
  2022 WL 3013032 (C.D. Cal. June 23, 2022) ................................................................18

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) ........................................................................................16

*Interactive Network, Inc. v. NTN Commc'ns, Inc.*,
  875 F. Supp. 1398 (N.D. Cal.) ..................................................................................12

*Izmo, Inc. v. Roadster, Inc.*,
  2019 WL 2359228 (N.D. Cal. June 4, 2019) ..................................................................9

*Kifle v. YouTube LLC*,
  2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) ..............................................................6, 9

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ....................................................................................11

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997)...................................................................................16, 17

*Leadsinger, Inc. v. BMG Music Publ'g*,
  429 F. Supp. 2d 1190 (C.D. Cal. 2005) ......................................................................25

*LEGO A/S v. Best-Lock Constr. Toys, Inc.*,
  404 F. Supp. 3d 583 (D. Conn. 2019)......................................................................13, 14

*Lizalde v. Advanced Plan. Servs., Inc.*,
  2011 WL 1103642 (S.D. Cal. Mar. 25, 2011) ................................................................9

iv

*Longest v. Green Tree Servicing LLC*,
  74 F. Supp. 3d 1289 (C.D. Cal. 2015) ...................................................................22

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (*en banc*) ..............................................................6

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
  724 F.2d 357 (2d Cir. 1983)..................................................................................13

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*,
  365 F.3d 133 (2d Cir. 2004)............................................................................10, 12

*Mattel, Inc. v. MGA Ent., Inc.*,
  616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g*
  (Oct. 21, 2010) .................................................................................................12, 13

*Mattel, Inc. v. MGA Ent., Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ...................................................................12

*Nev. DeAnza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*,
  474 F. Supp. 3d 1087 (N.D. Cal. 2020) .................................................................24

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
  783 F.3d 527 (5th Cir. 2015) ..................................................................................12

*Oskar Sys., LLC v. Club Speed, Inc.*,
  745 F. Supp. 2d 1155 (C.D. Cal. 2010) ...................................................................8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co*1126,
  270 Cal. Rptr. 1, 791 P.2d 587 (1990)...................................................................23

*Playboy Enters., Inc. v. Welles*,
  279 F.3d 796 (9th Cir. 2002) ..................................................................................21

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)..................................................................................................9

*Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*,
  2020 WL 8225666 (C.D. Cal. Dec. 18, 2020) .......................................................24

*Russell v. Price*,
  612 F.2d 1123 (9th Cir. 1979) ..................................................................................7

*Sabin v. Curt Mfg. Co.*,
  2009 WL 10673588 (D. Ariz. May 4, 2009) .........................................................19

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ............................................................................................10

*Satava v. Lowry,*
    323 F.3d 805 (9th Cir. 2003) ................................................................. 13

*Silvers v. Sony Pictures Ent., Inc.,*
    402 F.3d 881 (9th Cir. 2005) ................................................................. 25

*Sleep Sci. Partners v. Lieberman,*
    2010 WL 1881770 (N.D. Cal. May 10, 2010) .......................................... 16

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) ................................................................... 6

*Stebbins v. Rebolo,*
    2022 WL 2668372 (N.D. Cal. July 11, 2022) ........................................... 8

*Stevo Design, Inc. v. SBR Marketing Ltd.,*
    919 F. Supp. 2d 1112 (D. Nev. 2013) ..................................................... 20

*Thermolife Int'l, LLC v. BPI Sports, LLC,*
    2022 WL 612669 (9th Cir. Mar. 2, 2022) ............................................... 21

*Treehouse Avatar LLC v. Valve Corp.,*
    570 F. Supp. 3d 1005 (W.D. Wash. 2021) ............................................... 18

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
    529 U.S. 205 (2000) ............................................................................. 16

*Walker & Zanger, Inc. v. Paragon Indus., Inc.,*
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................. 17

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,*
    210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003) .......... 15

*Zito v. Steeplechase Films, Inc.,*
    267 F. Supp. 2d 1022 (N.D. Cal. 2003) ............................................... 6, 7

**Statutes**

15 U.S.C. § 1114 .................................................................................... 19

15 U.S.C. § 1125(a)(1)(A) ....................................................................... 19

15 U.S.C. § 1125(a)(1)(A) and (B) ............................................................ 19

17 U.S.C. § 101 ....................................................................................... 9

17 U.S.C. § 102(a) ................................................................................. 14

17 U.S.C. § 102(a), (b) ........................................................................... 11

17 U.S.C. § 204(a) ................................................................................................10

17 U.S.C. § 409(9) ..................................................................................................8

17 U.S.C. § 410(c) ..................................................................................................8

17 U.S.C. § 411(a) ..........................................................................................6, 7, 9

17 U.S.C. § 501(b) ................................................................................................25

Cal. Civ. Code § 1670.5(a) ..................................................................................10

Copyright Act...............................................................................................10, 23

Federal Arbitration Act ..................................................................................21, 22

Lanham Act....................................................................................1, 16, 18, 19, 21

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................................11

Fed. R. Civ. P. 12(b)(6).......................................................................................0, 6

1    MEMORANDUM OF POINTS AND AUTHORITIES

2  **I.    INTRODUCTION**

3         This lawsuit is part of an overreaching campaign by Roblox to usurp for itself intellectual

4  property it did not design and elements that are commonplace and ubiquitous in the online gaming

5  and toy industries. The Roblox gaming platform was designed to allow independent creators to build

6  online games and worlds, thus providing a platform for endless creativity to generations of game

7  players and designers. The relevant Roblox Terms of Service ("TOS") expressly provided that

8  content created by users would be owned by the user with limited, non-exclusive licenses provided

9  to Roblox.

10        WowWee designed fashion dolls—the My Avastars Fashion Dolls—that allow children to

11 interact in the real world with dolls they could dress up and adorn in an expansive variety of ways.

12 Those dolls were also to be featured in an independent game on the Roblox platform, which was

13 fully consistent with and, in fact, encouraged by the TOS at the time. Roblox responded by changing

14 its TOS and rushing to court with this lawsuit, alleging that WowWee's My Avastars Fashion Dolls

15 somehow infringe its copyrights and trademarks and breach its new TOS.

16        The copyright claims fail for at least three reasons. First, it is well established that a

17 copyright registration is prerequisite to suing for copyright infringement, and Roblox lacks copyright

18 registrations for the two "Avatar Bases" it claims WowWee has infringed. Second, Roblox lacks

19 timely registrations for the works it added in its First Amended Complaint ("FAC"), which were

20 registered after Roblox originally sued. Third, any original aspects of the remaining works are not

21 "substantially similar" to WowWee's dolls. Where, as here, the allegedly infringing works bear no

22 resemblance to Plaintiffs' alleged works, courts routinely dispose of such claims on the pleadings.

23        Plaintiffs' trade dress claim is even more far-fetched. Plaintiffs' vague, broad-stroke

24 description of its "trade dress" (FAC ¶ 57)—which includes the "humanoid, blocky shape,"

25 "cylindrical heads," "the C-shaped hands," and cartoonish changeable faces with no nose—consists

26 merely of generic, ubiquitous features common to both physical toys and online gaming, and thus

27 cannot constitute protectible trade dress. Plaintiffs' other Lanham Act claims also fail, as there are

28 no allegations that WowWee used Roblox's trademark or name in packaging or advertising. The

---

alleged infringement consists of hashtag references, which courts have repeatedly determined to be permissible, and other accurate references to the Roblox platform that are purely referential and not actionable. Plaintiffs' substantially congruent state law claims fail for the same reasons.

The remaining contract and interference claims do not belong in Court because they involve an alleged breach of the Roblox TOS and under no uncertain language in the same TOS, are subject to arbitration. Even if arbitration were not required, Plaintiffs' remaining claims fail on their face, including because the contract claims fail to allege any breach, and the interference claims do not plausibly allege damages. Plaintiffs' parallel unfair competition and state law claims similarly fail for failing to plead the basic elements of the claims.

Finally, if any claims remain, Jazwares should be dismissed for lack of standing, as it is not alleged to own or have any exclusive license to the intellectual property at issue, and is not alleged to have entered any contract with WowWee that would make Jazwares an appropriate Plaintiff.

Plaintiffs' rushed and ill-advised effort to sue WowWee for perfectly lawful conduct fails to allege actionable claims. The FAC should be dismissed on the pleadings without leave to amend.

## II.    BACKGROUND/PLAINTIFFS' ALLEGATIONS[1]

### A.    WowWee and Its My Avastars Fashion Dolls

Founded in Montreal, Quebec, Canada in 1988 by two brothers, WowWee is a family-run toy company that designs, develops, markets, and distributes innovative toys and consumer entertainment products, including numerous award-winning toys that mix the joy of toys with cutting edge technology. WowWee's My Avastars Fashion Dolls put the customization of online avatars into a tangible "fashion doll" form incorporating concepts common to digital avatars, including the ability to customize the dolls' faces, hair styles, clothing, and accessories. FAC ¶¶ 79-89. WowWee currently offers four packs of My Avastars Fashion Dolls. *Id.* ¶ 74. They are sold as base bodies having no faces, clothing, or hair applied and feature a head with a curved jaw and chin, a curved chest area, and hands with five fingers. *Id.* ¶ 92; Request for Judicial Notice ("RJN"), Ex. 2. Customers can select among three different skin tones and customize the dolls with included stickers

---

[1] Except where noted, this Section is based on the FAC allegations, which are assumed to be true solely for purposes of this motion.

and outfits. FAC ¶¶ 75-81. The My Avastars Fashion Dolls are 11 inches tall—markedly larger in size and scale than the Jazwares's mini action figures. RJN, Ex. 2.

**B.      Roblox**

Roblox is a popular "online platform" where "millions of users" contribute content and create games or "experiences." FAC ¶ 2. As Roblox's website states: "We don't make Roblox. You Do." RJN, Ex. 4. What Roblox alleges is "distinctive" are the assets within experiences created by Roblox "developers" or "creators" who can be "anyone … from amateur coders to professional game development companies." FAC ¶ 33. A "Roblox user's journey starts with the adoption of their own personal avatar—a unique digital identity" that appear as "digital manifestations of the millions of users who visit the Roblox Platform every day." *Id.* ¶¶ 2, 5. "Users have the ability to customize their avatars in endless ways within the Roblox Platform, including by choosing their avatars' clothing, body parts, facial expressions, gear, and accessories." *Id.* ¶ 32. The Roblox "developer community has created a wide range of diverse experiences on the Platform, ranging from role-play experiences to obstacle courses and battle games, and even concert experiences." *Id.* ¶ 6. Since "2018, over 29 million Roblox creators" have created "millions of immersive 3D games and experiences" available on the Roblox Platform." *Id.* ¶¶ 4, 29, 58. Roblox wants users to "focus on creation" and provides "free tools to help developers begin creating on Roblox." *Id.* ¶ 28. There are no allegations that anyone at WowWee ever acted as a "Creator" under the TOS.[2]

Users typically begin with one of two Roblox "Avatar Bases" depicted here:

 

R6            R15

*Id.* ¶ 4 (referring to them as "Classic Avatars"). The R6 is composed of five blocks and a cylindrical head, and the R15 is composed of 15 rounded pieces; users can then customize the avatars in infinite ways. *See id.* Ex. 1(a), Creator Terms §1(b)(iii). Roblox has no registered copyrights for these "bases," presumably because they lack sufficient original artistic expression to qualify for protection.

---

[2] Roblox's TOS defines "Creators" as "Users who create and upload and publish UGC (like Virtual Items and Experiences) [sic] the Platform and include both amateur and professional developers." FAC, Ex. 1(d) at 80.

Plaintiffs filed this case on August 2, 2022. Dkt. 1. After obtaining additional copyright registrations on September 9, 2022, they filed the FAC on September 19, 2022. Dkt. 36. Roblox alleges that it has valid copyright registrations for five avatars, which it misleadingly refers to as the "Roblox-designed avatars" (FAC ¶ 5): the Cindy, Lindsey, Kenneth and Dennis Roblox Avatars (each registered on 7/14/2022),[3] and the Claire Dancefiend Avatar (registered on 9/9/2022). Roblox also claims rights in three mini-action figures that it alleges are avatars it licensed to Jazwares: the Claire Dancefiend, the Brookhaven Customer, and the Stylz Salon Stylist Avatar Figurines, each registered by Roblox on September 9, 2022, after Roblox filed its Complaint. *Id.* ¶ 56.

**C.     Jazwares**

Jazwares, through an alleged license with Roblox, released mini-action figures based on modified avatars featured in top experiences on the Roblox platform. *Id.* ¶¶ 9, 49, 51. The FAC does not allege that Jazwares owns or has exclusive rights to any of the copyrights at issue, only that Roblox owns the "intellectual property" and "exclusive rights." *Id.* ¶¶ 54, 90. Jazwares is not named in any relevant copyright registration. RJN, Exs. 5-14. The FAC also fails to allege that Jazwares has any interest in the alleged trade dress or trademark and refers throughout to Roblox as the owner of the trade dress and trademark. FAC ¶¶ 1, 54, 57 (defining as "Roblox trade dress"); 58 (stating "Roblox has used this trade dress exclusively and continuously for years, since at least 2007" and "users have come to associate the Roblox trade dress exclusively with Roblox"). The FAC does not allege that Jazwares entered any contract with WowWee that was breached, and does not allege that WowWee interfered with any business relationship or contract to which Jazwares was a party.

**D.     Gamefam**

Gamefam is "one of Roblox's top experience developers." *Id.* ¶¶ 12, 77 n.16, 68 n.8. WowWee and Gamefam have a history of collaborating on various projects where toys and promotion intersect through gaming, including through the Roblox platform. Plaintiffs allege that

---

[3] Plaintiffs allege that Roblox "designed" the Cindy, Lindsey, Kenneth, and Dennis Avatars, which it misleadingly labels "Roblox-designed avatars." As its own copyright registrations show, this is inaccurate: all four works were authored—that is, *created*—by a Chinese citizen, Jiangli Ge. RJN, Exs. 5-8. The Copyright Office's records show that Roblox's only claim to ownership of these works is by a purported written transfer agreement. *Id.*

1    WowWee "induced Gamefam to join it in marketing and selling the My Avastars dolls" and

2    marketed a code that "they claimed to be used within the Roblox Platform." FAC ¶ 13.

3           WowWee and Gamefam collaborated to create "My Avastars: RP," an online roleplaying

4    game featuring characters modeled after the My Avastars Fashion Dolls, which was initially planned

5    to be released on the Roblox platform. The plans for the debut of the digital versions of My Avastars

6    Fashion Dolls in the Gamefam experience on the Roblox platform was entirely within the uses

7    permitted by the TOS at the time those plans were developed and publicly discussed. *See* RJN, Ex.

8    16. The fact that Gamefam was developing a My Avastars game on Roblox was accurately

9    mentioned in a few advertisements, social media posts, and hashtags. FAC ¶¶ 98-100, 156.

10   WowWee planned to license the My Avastars Fashion Dolls as characters on Gamefam's

11   experience. The FAC is vague about whether Roblox considers Gamefam's actions improper. There

12   are no allegations that the Roblox Gamefam relationship has been negatively impacted.

13          **E.      Roblox Changes Its Terms in June 2022 to Assert Claims Over Users' IP**

14          Despite its TOS previously stating that Roblox *creators* retain intellectual property over their

15   unique avatars or experiences, weeks before filing this lawsuit Roblox drastically changed its TOS to

16   retroactively justify the positions taken in this lawsuit and claim ownership over large swaths of

17   user-generated content ("UGC"). In a June 23, 2022 revision to its TOS, Roblox added a provision

18   purporting to *retroactively* expand its claimed intellectual property to include anything it determined,

19   under its "sole discretion," to have been modified from the Avatar Bases. *See* FAC, Ex. 1(a), Creator

20   Terms §1(b)(1). This provision did not appear in prior versions of the TOS. RJN, Ex. 15. When the

21   My Avastars Fashion Dolls were designed and created (starting on or around June 6, 2021), none of

22   the applicable TOS extended to such UGC. RJN, Ex. 15; FAC ¶ 77 & n.16 (noting the My Avastars

23   Fashion Dolls were "launch[ed]" as of June 18, 2022).

24          The FAC refers to the Avatar Bases and the five registered avatars as "Classic Avatars." The

25   FAC alleges that Roblox owns the copyright in all "Modified Classic Avatars." Unlike the Roblox

26   bases that are made of six or 15 base parts, the My Avastars Fashion Doll are composed of eight

27   base parts and were created independent of the Roblox platform.

28

III.   **LEGAL STANDARD**

A complaint must be dismissed if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. "Factual allegations must raise a right to relief above the speculative level," and a court "need not accept as true legal conclusions couched as factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007). A district court should deny leave to amend if it "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).

IV.   **ARGUMENT**

A.   **The FAC Fails to Plead a Valid Copyright Infringement Claim**

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (*en banc*). An issued "[r]egistration…with the Copyright Office [i]s a prerequisite to filing suit[.]" *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003); 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019). And "a plaintiff cannot cure its failure to meet the [pre-suit registration requirement] by amending [a] pending complaint[.]" *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) (quotations omitted).

Plaintiffs' copyright claims fail on their face for several reasons: (i) the majority of the alleged works were either registered too late to be part of this suit, or never registered; (ii) at least two of the claimed works are derivative of works they do not own (and protection only extends to any new material Plaintiffs added); and (iii) the alleged works do not nearly meet the Ninth Circuit's

objective "extrinsic" test for substantial similarity, the *sine qua non* of copyright infringement.

### 1.   Plaintiffs Cannot Sue for Infringement of Copyrights They Do Not Own

The Copyright Office records referenced in the FAC show that, contrary to Plaintiffs' representations to the Court, "Brookhaven Customer Avatar" and "Stylz Salon Stylist Avatar" (the "Third-Party Works") were created by third parties—and were *not* registered by Roblox as alleged, but by their third-party authors. *Compare* RJN, Exs. 11, 13 (Copyright Office website registration data showing third-party authors and copyright claimants), *with* FAC ¶ 149 (alleging that "Roblox … registered … [and] received valid registrations for" the Third-Party Works). Plaintiffs' allegations appear calculated to obscure this ownership. *See, e.g.*, FAC ¶ 45 (alleging "Roblox's ownership of its avatars"), ¶ 54 ("Roblox … retains intellectual property rights in [user-created] Modified Classic Avatars."). Plaintiffs cannot claim infringement of copyrights they do not own. *Funky Films*, 462 F.3d at 1076. In addition, as discussed below at Section 3., these works, and others must be rejected because they were not timely registered.

Plaintiffs concede that two alleged works—"Brookhaven Customer Avatar Figurine" and "Stylz Salon Stylist Avatar Figurine"—are "based on" the Third-Party Works—making them derivative works. FAC ¶ 56 n.6; *see* RJN, Exs. 11, 13 (showing Third-Party Works created and/or published *before* the corresponding figurines). It is well established "that a derivative copyright protects *only the new material* contained in the derivative work, not the matter derived from the underlying work." *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) (emphasis added). Because Plaintiffs are not the registered owners of the Third-Party Works and fail to allege any material they added to these derivative works, their claims as to those two works must also be dismissed.

### 2.   Plaintiffs Cannot Sue on the Unregistered "Avatar Bases"

It is blackletter law that "[r]egistration … with the Copyright Office is a prerequisite to filing suit under copyright law." *Zito*, 267 F. Supp. 2d at 1025; 17 U.S.C. § 411(a). A plaintiff must have an *issued* registration before filing a copyright claim. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019) ("'[R]egistration...has been made' within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application.").

1    Because Plaintiffs do not plead, and apparently do not have, copyright registrations for the

2    so-called "Avatar Base" figures, those works cannot be part of Plaintiffs' case: to the extent their

3    claims rest on purported copying of elements of those two figures, they must be dismissed. *See, e.g.*,

4    *Doggie Dental, Inc. v. Shahid*, 2021 WL 4582112, *8 (N.D. Cal. June 17, 2021) ("Plaintiff has no

5    viable infringement claim for the use of [works]" that were "not among the [works] registered.").

6    Nor can Plaintiffs manufacture an infringement claim for the unregistered Avatar Base figures by

7    claiming that their registered works are "derivatives" of them for at least three independent reasons.[4]

8    First, Roblox's own registrations show the five avatars Roblox claims to have registered are

9    *not* derivative works. *See* RJN, Exs. 5-9; 17 U.S.C. § 410(c) ("In any judicial proceedings the

10   certificate … shall constitute prima facie evidence of … the facts stated in the certificate").

11   Plaintiffs' registrations neither claim derivative work status, nor identify any preexisting work—a

12   statutory requirement for registering a derivative work. 17 U.S.C. § 409(9) ("The application for

13   copyright registration … shall include—in the case of a … derivative work, an identification of any

14   preexisting work or works that it is based on or incorporates"); *Oskar Sys., LLC v. Club Speed, Inc*.,

15   745 F. Supp. 2d 1155, 1164 (C.D. Cal. 2010) (dismissing claim where plaintiffs' registration for

16   putative "derivative work" "fail[ed] to indicate the 'precise underlying or preexisting work' from

17   which the deposited (and registered work) was [purportedly] derived[,]" and citing section 409(9)).

18   Second, registering a derivative work does not give a plaintiff standing to sue on a purported

19   unregistered "underlying" work in any event. *See, e.g.*, *Oskar Sys.*, 745 F. Supp. 2d at 1164 (holding

20   that Plaintiffs could not sue for infringement of putative "underlying" work "by belatedly

21   characterizing the[ir] registered work as derivative of [it]"). As courts have recognized, "[a]dopting

22   [a contrary] rule would frustrate the purpose of copyright registration and open the door to fraud."

23   *Id.* at 1163; *see also Fourth Estate*, 139 S. Ct. at 887 (requiring an issued registration certificate

24

---

25   [4] Both of the Avatar Bases consist of a small number of simple geometrical shapes and generic
     human features. *See supra* § II.B; FAC ¶¶ 4, 29. As such, they do not qualify for registration. *See,*
26   *e.g.*, *Stebbins v. Rebolo*, 2022 WL 2668372, at *2 (N.D. Cal. July 11, 2022) (noting that "there is no
     copyright protection for basic geometric shapes" and finding "an insufficient degree of creativity in
27   the arrangement and selection of [such shapes] to qualify for copyright protection"); *Country Kids*
     *'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1287 (10th Cir. 1996) ("[B]asic and utilitarian aspects of
28   … dolls, such as the shape of a human body … cannot be copyrighted.").

before a "civil action" for infringement is "instituted"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (characterizing copyright registration as a "threshold requirement[] that claimants must complete … before filing a lawsuit.").

Third, even if the Court were inclined to ignore the evidence of Plaintiffs' own registrations *and* the teachings of *Fourth Estate* and *Muchnick*, the FAC simply fails to plausibly allege that any of Plaintiffs' alleged registered works are "derivative works" of the Avatar Bases, which they barely resemble. *See Fodor v. L.A. Unified Sch. Dist.*, 2014 WL 12235424, at *7 (C.D. Cal. June 3, 2014) ("[U]nder Ninth Circuit precedent, a derivative work is by definition a work that would infringe the copyright in the underlying work or works, absent consent of the copyright proprietor of the underlying work") (citing 1 Nimmer on Copyright § 3.01, at 3-3 (2013)). Plaintiffs' vague, conclusory statement that all Roblox avatars are "iterate[d] … derivative works" of one another—whatever that might mean—is entitled to no weight and should be disregarded, since "merely alleging something is a 'derivative work' is a legal conclusion." *Lizalde v. Advanced Plan. Servs., Inc.*, 2011 WL 1103642, at *11 (S.D. Cal. Mar. 25, 2011) (collecting cases); 17 U.S.C. § 101 (defining "derivative work").

### 3.      Plaintiffs Cannot Sue on Works Registered After They Filed This Action

This Court, following *Fourth Estate*, has repeatedly held that "a plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending [its] pending complaint[.]" *Kifle*, 2021 WL 1530942, at *6 ("The Court agrees with other courts in this district … the plain language of § 411(a) refers to the beginning of a lawsuit, not the filing of an amended pleading."); *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) ("The fact that [plaintiff] properly 'commenced' this lawsuit as to some of its copyrights does not excuse its failure to comply with § 411(a) as to its other copyrights."). Accordingly, Plaintiffs' copyright claims must be dismissed to the extent they rely on alleged infringement of elements of the following alleged works, all of which were registered more than one month after this case was filed: "Claire Dancefiend" avatar and figurine; "Brookhaven Customer" avatar and figurine; and "Stylz Salon Stylist" avatar and figurine (collectively, the "Late-Registered Works"). *See* RJN, Exs. 9-14.

4.      **Plaintiffs Cannot Sue for Alleged Infringement of the "Gamefam My Avastars Avatar"**

Plaintiffs' attempt to show infringement by comparing the My Avastars Fashion *doll* to the online "Gamefam My Avastars Avatar" (FAC ¶ 91) is fatally flawed for multiple reasons, at least one of which dooms Plaintiffs' copyright claims: Plaintiffs do not plead (because they do not own) a registration for this (or any other) Gamefam avatar. As discussed above, an unregistered work cannot be the basis for a copyright infringement suit. Plaintiffs' claim thus fails out of the gate for lack of standing—a lack that cannot be cured by amendment.

Moreover, Plaintiffs have no plausible claim to own any exclusive rights *at all* in the Gamefam Avatar: the Court need not, and should not, credit their facially implausible legal conclusions to the contrary. Plaintiffs concede that both WowWee's dolls and Gamefam's online game had been developed prior to June 22, 2022 (*see id.* ¶ 77 & n.16)—*before* Plaintiffs amended the Roblox TOS (the "Revised TOS"). The Revised TOS contains a plainly unconscionable "rights grab" purporting to arrogate to Roblox *all* ownership of *any* user-generated character on the Roblox platform—"to be determined in Roblox's sole discretion"—retroactive to the beginning of time, which is far too vague to constitute a written, signed "instrument of conveyance" that the law requires for any "transfer of copyright ownership[.]" 17 U.S.C. § 204(a). The provision, which did not exist at any relevant time, also cannot be reconciled with the terms that *were* in effect then, which expressly granted WowWee and Gamefam "all copyrights that [either] may hold" for "any UGC… that [either] has ever created or will create and makes available through the Services[.]" RJN, Ex. 15 § III.b. It is also plainly unconscionable—and therefore unenforceable—under the California law that governs it. Cal. Civ. C. § 1670.5(a); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) ("unconscionability doctrine" is "concerned with terms that are unreasonably favorable to the more powerful party, including terms that…contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms [regarding] central aspects of the transaction.").

**B.**     **The FAC Fails to Adequately Allege That the My Avastars Fashion Doll Is Substantially Similar to Plaintiffs' Alleged Works Under the Objective "Extrinsic Test"**

Plaintiffs' copyright infringement claims also fail because the FAC does not adequately allege—and Plaintiffs cannot show—that the My Avastars Fashion doll is substantially similar to protected elements of Plaintiffs' works. "To establish copyright infringement," a plaintiff must show "that the defendant…copied protected elements of" the plaintiff's work, resulting in works that are "substantially similar." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1046 n.2 (9th Cir. 1994). The Ninth Circuit employs a two-part analysis to determine whether works are substantially similar: an objective, extrinsic test and a subjective, intrinsic test. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Both tests "must be satisfied for the works to be deemed substantially similar." *Skidmore*, 952 F.3d at 1064. "[W]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1037 (N.D. Cal. 2018) (noting "ample authority" for determination under Rule 12); *Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635027, at *8 (C.D. Cal. Nov. 8, 2017), *aff'd*, 768 F. App'x 732 (9th Cir. 2019) (a plaintiff's "failure to satisfy the extrinsic component…requires judgment for the defendant as a matter of law").

**1.**     **Plaintiffs Fail to Satisfy the "Extrinsic Test" of Substantial Similarity**

The extrinsic test commences with a three-step analysis: once the plaintiff identifies similarities between the copyrighted work and the accused work, the court "disregard[s] the non-protectible elements" of a work, and "ask[s] whether the protectible elements, standing alone, are substantially similar[.]" *Skidmore*, 952 F.3d at 1070; *accord Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 144 (9th Cir. 1994).

Only elements of a work that are original to its author can be protected by copyright; the law "does not protect ideas" or concepts. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020); 17 U.S.C. § 102(a), (b) ("In no case [can] copyright protection … extend to any idea … [or] concept."). And even creative, original elements are entitled to only "thin" protection if they are commonplace,

11

"standard … in [an] industry[,]" or "if … conceptual constraints limit the available ways to express an idea, even though there is more than one avenue of expression available[.]" *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1021 (N.D. Cal. 1992), *aff'd*, 35 F.3d 1435 (9th Cir. 1994). Such elements are protected only from "virtually-identical copy[ing]." *Id.* This so-called "scénes á faire doctrine … encompasses stereotyped expression, standard or common features in a wide variety of works, including audiovisual works generated by computers." *Id.* Similarly, under the "merger" doctrine, when "only a limited number of ways exist to express [an] idea, the court will not find substantial similarity absent virtually identical copying." *Interactive Network, Inc. v. NTN Commc'ns, Inc.*, 875 F. Supp. 1398, 1403 (N.D. Cal.) (citing *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)).

> **2.** **Plaintiffs' List of "Humanoid" Features of Their Avatars Consists Entirely of Unprotectable Ideas and Commonplace Elements**

Plaintiffs recite a list of almost absurdly commonplace features for which they allege copyright protection: every one of them appears in innumerable "humanoid, blocky" toys, dolls, or mini-action figures, both classic and modern—from the classic Gumby doll's "block-shaped legs … [and] square or rounded arms" (*see* FAC ¶ 57); to LEGO's ubiquitous minifigures with their "cylindrical heads … C-shaped hands … block-shaped legs … square or rounded arms … [and] cartoon-like … facial expressions" that "lack … a nose" (*id.*); to Minecraft's "block-shaped … square" digital humanoids (*id.*). Such elements are ubiquitous, and in the abstract, unprotectible: these "common anatomical features … are ideas that belong to the public domain." *Blehm v. Jacobs*, 702 F.3d 1193, 1204 (10th Cir. 2012) (recognizing that there can be "no copyright protection in general human features"); *see, e.g.*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 551 (5th Cir. 2015) ("[A]rms, legs, faces, and fingers [on cartoon figures]… are not protectable elements.") (alterations in original); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 915 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("Producing small plastic dolls that resemble young females is a staple of the fashion doll market."); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 948 (C.D. Cal. 2011) (holding that "[an] oversized head, protrusive lips, and diminished nose […] are not original elements"); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136

1   (2d Cir. 2004) ("An upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll

2   face. That idea belongs … to the public domain."); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724

3   F.2d 357, 360 (2d Cir. 1983) ("Though the dolls' bodies are very similar, nearly all of the similarity

4   can be attributed to the fact that both are artist's renderings of the same unprotectable idea.").

5        Nor does combining commonplace elements into a "humanoid" figure—with the obvious

6   constraints imposed by that form—give rise to the broad protection Plaintiffs claim: nothing is

7   original about the idea of assembling components into "humanoid figures with … heads, … hands

8   … bodies and legs … arms, and … facial expressions." FAC ¶¶ 4, 83; *see, e.g.*, *Mattel*, 616 F.3d at

9   915 (holding design of "sculpt" of "young, female fashion doll with exaggerated proportions" was

10  highly constrained thus subject to only "thin copyright," making "virtually identical copying" the

11  correct standard).[5] As courts universally recognize, granting broad protection for a combination of

12  "standard and stereotyped elements … effectively would give [copyright owners] a monopoly on"

13  expressing the same idea in the same medium. *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003).

14       In *Cub Club Investment, LLC v. Apple Inc.*, 2022 WL 469378, at *1 (N.D. Cal. Feb. 16,

15  2022), this Court adopted the defendant's arguments, made by plaintiffs' same counsel in this case,

16  that "[t]here aren't many ways that someone could implement th[e] idea" of "depicting body parts in

17  certain positions[,]" and that plaintiff's "racially diverse emoji" were "entitled to only thin copyright

18  protection against virtually identical copying." Thus, the Court granted dismissal of the copyright

19  claims for lack of substantial similarity. *Id*. at *2. Accordingly, the selection, coordination, and

20  arrangement of elements is not by itself protectable when the result is "not only unoriginal, it is

21  practically inevitable." *Feist Pubs., Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 363 (1991). So

22  too here: Plaintiffs' figures are entitled to only thin protection if any from "virtually identical"

23  copying of their specific expressions of "standard," "common" human features. In cases addressing

24  the same types of stylized human-like features Plaintiffs claim, courts have found infringement only

25  where defendants' dolls almost "exactly replicated the arrangement, size, and positioning of [the

26  plaintiffs'] features." *LEGO A/S v. Best-Lock Constr. Toys, Inc*., 404 F. Supp. 3d 583, 615 (D. Conn.

---

[5] "A sculpt is a mannequin-like plastic doll body without skin coloring, face paint, hair or clothing." *Mattel*, 616 F.3d at 908; *see* FAC ¶ 92 (depicting as-sold My Avastars Fashion doll).

2019). As *Best-Lock* and other examples amply demonstrate, there is nothing unusual about any of the elements Plaintiffs claim, or all of them together:[6]

| Plaintiffs' claimed features | LEGO features |
|---|---|
| **(1) humanoid, blocky shape** | "trapezoidal shape or … torso" (*id.* at 590) |
| **(2) cylindrical heads;** | "cylindrical … head [with] curvature at the top and bottom of head" (*id.*) |
| **(3) C-shaped hands** | "hooked hands" (*id.* at 591) |
| **(4) block-shaped legs;** | "square feet and square legs" (*id.* at 612) |
| **(5) square or rounded arms;** | "square, block-like set of shoulders" (*id.* at 590) |
| **(6) cartoon-like facial expressions and lack of a nose** | "vary[ing] … two-dimensional representation[s] of … facial features" (*id.*) |

*Compare, e.g.*, FAC ¶ 31, *with* RJN, Ex. 17 (U.S. Design Patent 253,711 issued Dec. 18, 1979) *and* RJN, Ex. 18 (U.S. Trademark No. 4,903,968):

| Exemplary Plaintiffs' alleged work (registered July 14, 2022) | Design Pat. No. 253,711 (issued Dec. 18, 1979) | Trademark No. 4,903,968 (Reg. Date Feb. 23, 2016) |
|---|---|---|
|  | 

*FIG. 1* |  |

As these government records show—and as anyone living in this age of LEGOs, Smiley Faces, and emoticons is certainly aware—there is nothing remotely unique or original in the idea of facial expressions that "lack…a nose." Examples could be multiplied almost indefinitely.

### i. Copyright Does Not Protect the Idea of a Customizable Doll

Copyright protection does not extend to Plaintiffs' figures' "changeable facial expressions" or "customize[d] … facial expression … on the Roblox Platform." *See* FAC ¶ 57. Having "changeable" expressions is unprotectable *by definition* since "[c]opyright protection subsists" *only* in "original works of authorship" that are "fixed in [a] tangible medium of expression[.]" 17 U.S.C.

---

[6] The relevant features of LEGO's "minifigures" were protected by a design patent and a utility patent issued in 1979 and 1980, respectively, and two copyright registrations (both issued in 1994) claiming publication dates in 1978 and 1979. *Lego*, 404 F. Supp. 3d at 591.

§ 102(a). Plaintiffs a cannot claim copyright protection for "customization" that, as Plaintiffs concede, is done by "Roblox users." FAC ¶¶ 30, 32, 79, 87. In addition, the idea of "customization" is so commonplace—in the context of dolls, videogames, cartoons, and the real human form—that it could not possibly be a "distinct" feature meriting copyright protection. Moreover, Plaintiffs' *only* works at issue here are audiovisual works—and Plaintiffs do not (and could not) plead that those fixed, audiovisual works are either "changeable" or "customizable." Finally, even if this idea were protectable under copyright law—which it plainly is not—the facial expressions of WowWee's My Avastar Fashion Dolls exist in the real world and, as Plaintiffs concede, can be "changed" only if their purchaser (not WowWee) applies *stickers* to the doll. *Id.* ¶ 85. This is a completely different meaning of "customization" that would not be applicable to Plaintiffs' online, digital avatars, even if they were properly at issue here (which, again, they are not).

### ii.   WowWee's My Avastar Fashion Dolls Are Not Substantially Similar to Plaintiffs' Alleged Works

For the reasons discussed above, Roblox's works at issue are entitled to only "thin" copyright protection if any. Accordingly, the My Avastars Fashion Dolls will infringe Roblox's alleged works only if they are "virtually identical" in appearance. As even a cursory examination shows, they are not even close. WowWee's doll is a real-world object, 11 inches in height;[7] it cuts a far slimmer figure than any of the Registered Avatars, with strikingly narrower sloping shoulders,[8] skinnier and longer legs, and a larger head in proportion to its body. The head of WowWee's doll has a distinct chin that the Registered Avatars (as well as Plaintiffs' claimed works not at issue) lack. *See*, *e.g.*, *id.* ¶ 94 (Jazwares/WowWee comparison).[9] The WowWee doll's hands and fingers, positioned to loosely grip, are slender and relatively delicate, unlike the blocky hands and nonexistent fingers of the Registered Avatars—or the elongated, chunky hands of the Late-Registered Jazwares figures, or

---

[7] Courts have recognized that "[s]ize matters" when evaluating substantial similarity. *See, e.g.*, *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 169 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003).

[8] This difference is even more stark with Plaintiffs' unregistered Avatar Bases, which Plaintiffs' side-by-side comparison shows bear no resemblance to the My Avastars Fashion doll. *See* FAC ¶¶ 30, 92.

[9] The FAC's depiction of the Jazwares doll is highly misleading: the Jazwares minifigure is only one inch tall, strikingly different from the My Avastars' 11-inch height. RJN, Exs. 1-3.

the alternately nonexistent and realistic hands of the unregistered Avatar Bases. Nor are any of the My Avastars Fashion Dolls' clothing, accessories, or stickers "virtually identical," or even colorably similar in any protectable feature, to the corresponding clothes or features of the Registered Avatars.



### C.    Plaintiffs Have Not Sufficiently Alleged Any Protectible Trade Dress

Trade dress encompasses a product's "packaging," "dressing," and "design" and "refers to the 'total image of a product' including features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc*., 4 F.3d 819, 822 (9th Cir. 1993); *Wal-Mart Stores, Inc. v. Samara Bros., Inc*., 529 U.S. 205, 209 (2000). For trade dress claims under the Lanham Act, a plaintiff's complaint "should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (citing *Walker & Zanger, Inc. v. Paragon Indus., Inc*., 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) (rejecting trade dress claim where the definition "fail[ed] to provide adequate notice to competitors … regarding the breadth of plaintiff's exclusivity rights" and noting that a strict trade dress definition is necessary so as not to "hamper efforts to market competitive goods"); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc*., 2015 WL 12731929 (C.D. Cal. May 8, 2015) (granting 12(b)(6) to dismiss claims for trade dress infringement because the definition was "too general to give [the defendants] notice of the boundaries of the claim[s]"); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("Without... a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.")

Courts require a party claiming trade dress protection to provide a definition that describes a "particular visual impression," including "color" and "overall appearance," and not simply "elements that are common in the industry." *Sleep Sci. Partners*, 2010 WL 1881770, at *3, *6

(dismissing trade dress where the plaintiff had not "clearly" "articulate[d]" its "trade dress" or how "these elements interact to create a particular visual impression"); *Denims v. Ram Imports, Inc*., 2020 WL 11884712, at *3 (C.D. Cal. Dec. 10, 2020) (dismissing trade dress claim where it was "unclear" what "design, color … texture, and overall appearance" constituted the plaintiff's trade dress); *Walker*, 549 F. Supp. 2d at 1175-76 (dismissing trade dress where definition was too basic and generic, failed to specify "actual color," and included elements "so common in the industry that it cannot be said to identify a particular source")*.*

Without alleging any particular color or color combinations; any distinct "overall appearance" or "particular visual impression;" or any facial features unique to or associated with their alleged trade dress, Plaintiffs define their trade dress as follows: "(1) humanoid, blocky shape;[10] (2) cylindrical heads; (3) C-shaped hands; (4) block-shaped legs; (5) square or rounded arms; (6) cartoon-like facial expressions and lack of a nose; and (7) the particularized combination of these elements." FAC ¶¶ 57, 95. As was found defective in *Sleep Science Partners,* Plaintiffs do not sufficiently plead how these generic elements "create a particular visual impression." 2010 WL 1881770, at *3, *6. In *Denims*, the court rejected a trade dress claim on a motion to dismiss where it was "unclear" what "design" "color" and "overall appearance" constituted the plaintiff's trade dress. 2020 WL 11884712, at *3. The same defects apply to Plaintiffs' trade dress definition here. And as in *Walker*, Plaintiffs' trade dress definition here relies on "empty generalities," including failing to list any "actual colors," and despite blocky no-nose figures with cartoonish faces and useful C-shaped hands being "common in the industry." *See* 549 F. Supp. 2d at 1176. These common elements are too broadly defined on their face, and do not present any "unique and unexpected… design elements… in the relevant market." *See Landscape*, 113 F.3d at 381.[11]

Plaintiffs' trade dress claim fails on another ground, too. Because Plaintiffs claim protection

---

[10] Roblox's Chief Product Officer, Manuel Bronstein, recently expressed Roblox's plan to distance its association with "blocky" characters in favor of more realistic avatars, explaining that Roblox is "not just one thing." RJN, Ex. 19.

[11] For example, in 1997 LEGO released a game featuring an animated humanoid minifigure "Pepper Roni," with a cylindrical head, c-shaped hands, block shaped body, no nose and legs and rounded arms. In 2014, LEGO introduced MINECRAFT toys with a cube shaped head, c-shaped hands, and block body and legs. Plaintiff Jazwares is well-aware of these toys because they manufactured them, apparently on behalf of LEGO.

1   in the product itself, not its packaging, they cannot rely on any alleged "inherent distinctiveness" but

2   must plead "secondary meaning," which is only present when the purchasing public associates the

3   trade dress "with a single producer or source rather than with the product itself." *See Hot Focus Inc.*

4   *v. Best Accessory Grp. LLC*, 2022 WL 3013032, at *7 (C.D. Cal. June 23, 2022) (citing *lnt'l Jensen,*

5   *Inc.*, 4 F.3d at 824). Plaintiffs allege that "the Roblox trade dress has acquired secondary meaning

6   and the consuming public has come to associate this trade dress solely with Plaintiffs." FAC ¶ 181.

7   Plaintiffs' allegations that Roblox has acquired secondary meaning are wholly conclusory and

8   implausible on their face as the public cannot associate Roblox as the "sole" source of features that

9   are ubiquitous in the toy and gaming industries when other well-known sources use the same

10  features as described above.[12] *See Hot Focus Inc.*, 2022 WL 3013032 at *7-8 (dismissing trade dress

11  claim on pleadings where the plaintiff failed to adequately allege secondary meaning). These

12  combined features would extend to millions of avatars, toys, and dolls where these features are

13  commonly used in this same combination, including for decades through LEGO, MEGABRANDS,

14  Minecraft, and many other toys and game platforms.[13] There are only so many ways to present

15  human-like figures, facial expressions, and the useful purpose of toy dolls and figurines that have C-

16  shaped hands that can hold things. Taken to its logical conclusion, Plaintiffs are essentially claiming

17  that only they exclusively can create large fashion dolls that resemble characters that could be made

18  or interacted with in millions of different experiences and across a multitude of genres and

19  platforms. This despite Roblox never having released a fashion doll, through Jazwares or otherwise.

---

[12] Courts have refused to infer secondary meaning from alleged copying of a product design where the defendant uses a different packaging design or conspicuously displays its own trademarks. *Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1010 (S.D. Cal. 2000).

[13] Moreover, avatars that can be customized by the user are prominently featured in numerous online games (Minecraft and LEGO PC games), video games (Mii Fighters, Mass Effect), computer games (The Sims), mobile app games (PUBG Mobile), video game devices/platforms (Xbox), and personal mobile devices (bitmojis, emojis). *See, e.g.*, *Ceiling Fan Software, LLC v. Blizzard Ent., Inc.*, 2012 WL 12507761, at *1 (D. Ariz. May 10, 2012) (describing online gameplay in which "users … customize their characters"); *Treehouse Avatar LLC v. Valve Corp.*, 570 F. Supp. 3d 1005, 1006 (W.D. Wash. 2021) (discussing online and offline video games in which "a user may … customize [a] chosen character's appearance"); *see also Activision Blizzard, Inc. v. Game & Tech. Co., Ltd.*, 2018 WL 1358661, at *27 (P.T.A.B. Mar. 14, 2018) (asserted claims for "avatar customizations includ[ing] 'facial expressions, bodily movements, animations performed by the avatars, or clothing or accessories worn by the avatars…" were unpatentable as obvious).

1

### D.     Plaintiffs' Additional Lanham Act Claims Fail

2       Plaintiffs claim to have a valid trademark in the "Roblox" name and have alleged claims for

3   false designation of origin and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B) and

4   Trademark Infringement under 15 U.S.C. § 1114 but fail to adequately plead that WowWee used the

5   Roblox mark on packaging or in an advertisement, or otherwise used a confusingly similar mark in

6   commerce in connection with the sale or advertising of goods. Roblox has not alleged plausible facts

7   that there was a use of Roblox's mark nor that it was in commerce. "The term 'use in commerce'

8   means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a

9   right in a mark." 15 U.S.C. § 1125(a)(1)(A). The "commercial use requirement" for Lanham Act

10  claims requires that the alleged use be "in connection with a sale of goods or services rather than

11  simply a use in commerce." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)

12  (quotations omitted); *Sabin v. Curt Mfg. Co.*, 2009 WL 10673588, at *3, *12 (D. Ariz. May 4, 2009)

13  (dismissing trademark infringement claims relating to a domain name because no allegation that the

14  mark "was used in connection with a sale, offering for sale, distribution, or advertising of any goods

15  or services"); *Enea Embedded Tech., Inc. v. Eneas Corp.*, 2009 WL 648891, *7, *8 n.2 (D. Ariz.

16  Mar. 11, 2009) (dismissing trademark infringement claim where plaintiffs' allegations were

17  conclusory, so no plausible claim that the defendant used plaintiff's mark "in connection with the

18  sale, offering for sale, distribution or advertising of any goods or services," or "on or in connection

19  with any goods or services").

20      Roblox has not pleaded such a use here and merely alleges in conclusory fashion that

21  WowWee's uses were "in commerce." FAC ¶174. And while Plaintiffs allege that WowWee

22  infringed the ROBLOX mark by including it as hashtags with a post (*id.* ¶¶ 59, 98-99), such use is

23  insufficient to impose trademark liability. *See, e.g.*, *AOP Ventures, Inc. v. Steam Distrib., LLC*, 2016

24  WL 7336730, at *13 (C.D. Cal. Oct. 11, 2016), *modified on other grounds*, 2016 WL 10586307

25  (C.D. Cal. Dec. 27, 2016). In *AOP Ventures*, the plaintiffs alleged that the "[d]efendants used the

26  hashtag '#DRIPCLUB' on at least five social media posts for their products, including

27  advertisements for Defendants' MILK MAN e-liquid." *Id.* at *4. The *AOP Ventures* court

28  differentiated using words on products or advertisements from using the words in hashtags,

explaining that the "[p]laintiff has offered no evidence Defendants used the mark DRIP CLUB on its advertisements or products, as opposed to using it as a hashtag. Nor has Plaintiff adequately presented the Court with any reason why it should depart from its precedent." *Id*. at *13.

The FAC does not allege any use in commerce on advertisements or products, because there is none. Instead, beyond allegations that WowWee used the hashtags "#roblox" and "#newroblox" on the @my_avastars TikTok account and on Ms. Wiseman's personal account, any alleged use was in reference to Roblox outside of any advertising or packaging. For example, Ms. Wiseman noted on a TikTok video that she was "looking at all the customization of Roblox" and thought "wow that would be a great doll line" (FAC ¶¶ 98-100). She also discussed marketing plans on her TikTok as when she let commentors know she was working with "top roblox developers" to market the product (*id.* ¶¶ 103-105). These uses all plainly qualify as nominative fair use.

Nominative fair use prevents claims like these that seek to unreasonably restrict fair communications, and is properly considered at the motion to dismiss stage. *Applied Underwriters Inc. v. Lichtenegger Eyeglasses*, 2017 WL 2881517, *5-7 (E.D. Cal. Nov. 30, 2018) (granting the defendants' motion to dismiss trademark and related claims where the defendants' use of the trademarks at issue was nominative fair use); *1800 Get Thin, LLC v. Hiltzik*, 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011) (dismissing the plaintiff's trademark infringement claims because "the nominative fair use defense" foreclosed the claims where the defendants used the plaintiff's claimed trademark to refer to the plaintiff's marketing service and not their own); *Stevo Design, Inc. v. SBR Marketing Ltd.*, 919 F. Supp. 2d 1112, 1123-24 (D. Nev. 2013) (granting motion to dismiss because "nominative fair use operates to deprive Plaintiffs of their trademark claims" where the defendants did not use the plaintiffs' "marks to describe their own products or services"). Indeed, "the Ninth Circuit—progenitor of nominative fair use—'did not intend [it] to constitute an affirmative defense.'" *Stevo Design*, 191 F. Supp. 2d at 1124 (citing 6 McCarthy § 31:156.50); *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1150 (9th Cir. 2002) (nominative fair use factors replace traditional *Sleekcraft* factors for likelihood of confusion). Where the defendant uses a trademark to describe the plaintiff's product, rather than its own, a user is entitled to a nominative fair use defense if these three elements are satisfied: (i) the product or service is readily identifiable without the

trademark; (ii) the defendant used only as much of the trademark as reasonably necessary to identify the product or service; and (iii) the defendant falsely suggested sponsorship or endorsement by the trademark holder. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

First, the packaging for the My Avastars Fashion Dolls has never referenced Roblox, so WowWee's product is plainly readily identifiable on its own. Second, WowWee's alleged uses were commentary in social media communications to indicate its collaboration with Gamefam, accurately noting that WowWee anticipated releasing an experience on the Roblox platform. The alleged statements were made in response to comments on social media posts to inform followers that WowWee was working with Gamefam, which, Roblox concedes, is a "lead publisher" of "Roblox games." FAC ¶¶ 68-70. Moreover, the social media posts that mentioned Roblox plainly stated that Ms. Wiseman was inspired by the customization of Roblox avatars. Roblox cannot claim intellectual property rights in customization. Third, there was no reference to sponsorship or endorsement, nor would such be assumed when the Roblox brand is about independent creation by users. The allegedly infringing use is quite clearly nominative fair use and the claims fail.[14]

E.     **Plaintiffs' Contract and Interference Claims Belong in Arbitration**

Even if Plaintiffs had adequately alleged the contract and interference claims, under Roblox's TOS they are subject to arbitration, and should be stayed or dismissed under the FAA. *Hernandez v. Dollar Tree Stores, Inc*., 2021 WL 4296023, at *1 (S.D. Cal. Sept. 21, 2021) ("Where a plaintiff files suit in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for…arbitration" the court shall "stay the trial of the action until such arbitration."). Every operative version of the Roblox TOS includes an arbitration clause that non-IP claims arising under the Terms are subject to arbitration. *See* FAC, Ex. 1(a) §16. Roblox's TOS state that "any dispute arising under or relating to the Roblox [TOS] ('Dispute') will be governed and

---

[14]   The unfair competition and false advertising claims under California law are "substantially congruent" to the Lanham Act claims and should be dismissed for the same reasons. *See Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc*., 944 F.2d 1446, 1457 (9th Cir. 1991) (citing *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (holding that under both, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks"); *see also Thermolife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669 *3 n.1 (9th Cir. Mar. 2, 2022) ("After all, claims of unfair competition under state statutory and common law are substantially congruent to claims made under the Lanham Act").

1    resolved first through the Informal Dispute Resolution … then … through binding arbitration and

2    not through litigation." The contract and other business claims for interference with contract and

3    unfair competition are based upon alleged breach of the TOS. The FAC asserts that WowWee

4    assented to the TOS when Ms. Wiseman created a Roblox account, and thus Roblox should be

5    foreclosed from avoiding arbitration of the contract/non-IP claims by seeking to use the TOS as a

6    sword and a shield.[15]

7         **F.    If Plaintiffs' Contract Claim Is Not Arbitrable, It Fails on Its Face**

8         Plaintiffs also fail to plead an adequate breach of contract claim.[16] Plaintiffs allege WowWee

9    entered a contract with Roblox through Ms. Wiseman's creation of a Roblox user account on

10   7/28/2021. FAC ¶ 111. Ms. Wiseman's creation of a personal account does not mean WowWee

11   assented to any TOS. *See, Broker Genius, Inc. v. Seat Scouts LLC,* 2018 WL 2214708 (S.D.N.Y.

12   May 14, 2018) (granting motion to dismiss because contract claim "not plausible" where allegations

13   did not support a reasonable belief that an individual was acting on behalf of a company when

14   assenting to multiple versions of terms of use, regardless of his actual authority and even though he

15   used his work email, because "there are no facts to support the conclusory assertion" that the

16   plaintiff had a reasonable belief the assent was on behalf of his company).[17]

17        Nonetheless, assuming Plaintiffs plead plausible facts supporting the existence of a contract

18   and some action by WowWee under the pre-June 23, 2022 TOS, the FAC fails to plead any breach

19   of Roblox's June 23, 2022 revised terms. The June 23, 2022 Roblox TOS materially altered key

20   intellectual property sections under which WowWee created the My Avastars Fashion Dolls.[18]

21   Indeed, as Roblox concedes, it revised its terms multiple times since, including on January 11, 2022,

22   April 6, 2022, and June 22, 2022. *Id.* ¶ 114. The June 23, 2022 TOS, revised days before Roblox

23

---

24   [15] Nonparties to a contract like WowWee can also seek to arbitrate under the FAA. *See e.g., AHTNA Gov't Servs. v. 52 Rausch, LLC,* 2003 WL 403359, at *7 (N.D. Cal. Feb. 19, 2003) (collecting cases). And nonsignatories can "enforce arbitration agreements as third-party beneficiaries." *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006).

25

26   [16] In California, breach of contract requires the existence of a contract, a breach, and resulting damage. *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1296 (C.D. Cal. 2015).

27   [17] California law is similar to New York law when for ostensible agency. *Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045853, at *3 (C.D. Cal. May 2, 2016).

28   [18] The terms cited and attached state "last updated June 23, 2022." FAC, Ex. 1(a) at 60.

---

brought this suit, added a material carveout to creators' rights whereby they lost rights to any "Modified Classic Avatars." After June 23, 2022, Roblox claimed sole ownership in the R6 and R15 base avatars and "derivatives thereof"–to be determined in Roblox's "sole discretion." *Id*., Creator Terms §1(b)(1).[19] WowWee did not breach any version of Roblox's TOS, and certainly not those pre-June 23, 2022.

Plaintiffs' allegations also do not present plausible claims that Ms. Wiseman's personal account related to "creation," let alone forfeited any rights or intellectual property of WowWee. Ms. Wiseman's "user" account was never "creator" status, and thus the alleged TOS provisions never applied. *Id.* at 4. WowWee never released any content on the Roblox platform (FAC ¶ 76) and to the extent WowWee assented to the TOS, they are inapplicable to any of WowWee's actions.

### G.     The Intentional Interference with Contractual Relations Claim Fails

The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007). There are no plausible, nonconclusory allegations of any interference with WowWee's relationship with Gamefam, and Plaintiffs fail to allege facts to establish elements three through five. *See id.* Roblox alleges that WowWee intentionally interfered with the contract between Roblox and Gamefam, created through Gamefam's alleged acceptance of the Roblox TOS. FAC ¶ 196. Roblox asserts that WowWee knew that by licensing, creating, and marketing the My Avastars Fashion Dolls "for use with a Roblox experience," breach of the contractual relationship between Roblox and Gamefam was "certain or substantially certain to occur." *Id.* Roblox pleads that it suffered "substantial harm and injury" through loss of purchases of its mini-action figures due to this interference.

First, Plaintiffs fail to sufficiently allege facts regarding WowWee's intent to disrupt a

---

[19] The June 23, 2022 definition of what qualifies as a "Modified Classic Avatar" provides no guidance on what Roblox considers "derivative" and skirts Copyright Law.

contract, the third element. A plaintiff must plead the existence of an intentional act designed to induce a breach or disruption of the contract. *Pac. Gas & Elec. Co. v. Bear Stearns & Co*1126, 270 Cal. Rptr. 1, 791 P.2d 587 (1990). To satisfy the intent requirement, Plaintiff must allege facts that show either (1) that WowWee's specific purpose was to disrupt Gamefam's contract with Roblox or (2) that WowWee knew that interference with the agreement was a necessary consequence of its action or substantially certain to occur. *See Nev. DeAnza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*, 474 F. Supp. 3d 1087, 1095 (N.D. Cal. 2020). Plaintiffs do not sufficiently plead either. Indeed, Plaintiffs do not plead what intentional act WowWee committed that had any effect on the TOS to which Gamefam allegedly assented. On element four, Roblox fails to allege that Gamefam breached its contract with Roblox. As detailed above, the My Avastars Fashion Dolls, and the subsequent characters based on them that Gamefam was incorporating into its experience do not violate Roblox's intellectual property rights or breach any contract. More fundamentally, there was no breach as Gamefam's My Avastars: RP game was never released on Roblox's platform.

Courts dismiss intentional interference claims on the pleadings if plaintiff fails to allege actual interference with the economic relationship or harm caused by defendants' conduct. *Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc*., 2020 WL 8225666, at *10 (C.D. Cal. Dec. 18, 2020) (granting 12(b)(6) dismissal of interference claim because no allegations that a future benefit was interfered with); *GENFIT S.A. v. CymaBay Therapeutics Inc*., 2022 WL 195650, at *4-5 (N.D. Cal. Jan. 21, 2022) (dismissing interference claim on 12(b)(6) because plaintiff continued to act voluntarily within the allegedly interfered-with business relationship, and thus any harm was irrelevant because the plaintiff was not induced to terminate any economic relationship). Roblox fails to allege that WowWee interfered with any economic relationship between Roblox and Gamefam or what harm it suffered because of Gamefam's purported breach of the Roblox TOS. The My Avastars: RP game was never released, leaving no plausible connection between Roblox's alleged loss of reputation and goodwill, lost revenue of sales, and loss of value for potential licensing rights and any purported breach of contract by Gamefam. Moreover, Gamefam is still a top developer on the Roblox platform developing experiences that financially benefit Roblox as Roblox admits noting "Gamefam raised $25 million in its series A funding round in March 2022 to continue

building games on Roblox." FAC ¶70. Plaintiffs' allegations are purely conclusory; the "interference" claim should be dismissed.

### H.     Jazwares's Claims Should Be Dismissed Due to Its Lack of Standing

If the claims are not dismissed in their entirety, to the extent the claims purport to be brought on behalf of Jazwares, they fail because Plaintiffs have not pled that Jazwares is the owner or exclusive licensee to convey standing to pursue copyright claims and has not pled which specific allegations apply to Jazwares. Because Plaintiffs do not plead that Jazwares is the legal or beneficial owner, or even an exclusive licensee, of any copyrights or trademarks alleged in this case, it should be dismissed from this case. *See* 17 U.S.C. § 501(b); *see, e.g., Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (finding that standing to sue requires ownership or the transfer of an exclusive right). The copyrights are registered to Roblox with no mention of Jazwares, and there are no allegations that Jazwares owns any trade dress or trademark rights. With respect to the breach of contract claim, the FAC does not allege that WowWee entered any contract with Jazwares. Plaintiffs' allegations rely on the technical alleged assent to Roblox's Terms—not any Jazwares terms of service. And the FAC is entirely devoid of any allegations as to how WowWee is alleged to have interfered with any relationship with Jazwares. As Jazwares has no standing to bring any of the claims alleged in the FAC, the claims brought on behalf of Jazwares should be dismissed.

## V.     CONCLUSION

Plaintiffs' claims are defective and implausible and should be dismissed. Because there is no indication that Plaintiffs can save any of their claims, "any amendment would be futile" and dismissal should be with prejudice. *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005); *Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Dated: October 19, 2022                    WINSTON & STRAWN LLP


                                           By: */s/ Jennifer A. Golinveaux*

                                           Jennifer A. Golinveaux (SBN: 203056)
                                           JGolinveaux@winston.com
                                           WINSTON & STRAWN LLP
                                           101 California Street, 35th Floor

San Francisco, CA 94111-5840
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Michael S. Elkin (admitted *pro hac vice*)
MElkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:     (212) 294-6700
Facsimile:     (212) 294-4700

Cesie C. Alvarez (admitted *pro hac vice*)
CAlvarez@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543
Telephone:     (213) 615-1700
Facsimile:     (213) 615-1750

Michael D. Bednarek (admitted *pro hac vice*)
michael@bednareklegal.com
BEDNAREK LEGAL, PLLC
1100 N. Glebe Road, Suite 1010
Arlington, VA 22201
Telephone:     (202) 997-1665
Facsimile:     (703) 224-8001

Attorneys for Defendants
WOWWEE GROUP LIMITED, WOWWEE
CANADA, INC., WOWWEE USA, INC., and
GRAMPS GOOD, INC.