1    LATHAM & WATKINS LLP
       Andrew M. Gass (Bar No. 259694)
2        *andrew.gass@lw.com*
       Sarah M. Ray (Bar No. 229670)
3        *sarah.ray@lw.com*
       Ivana Dukanovic (Bar No. 312937)
4        *ivana.dukanovic@lw.com*
     505 Montgomery Street, Suite 2000
5    San Francisco, California 94111
     Telephone: +1.415.391.0600
6
       Elana Nightingale Dawson (*pro hac vice*)
7        *elana.nightingaledawson@lw.com*
       Tyce R. Walters (*pro hac vice*)
8        *tyce.walters@lw.com*
     555 Eleventh Street, NW, Suite 1000
9    Washington, DC 20004
     Telephone: +1.202.637.2200
10
11   *Attorneys for Plaintiffs Roblox*
     *Corporation and Jazwares, LLC*
12
13                  **UNITED STATES DISTRICT COURT**
14                 **NORTHERN DISTRICT OF CALIFORNIA**
15                    **SAN FRANCISCO DIVISION**
16
17   ROBLOX CORPORATION and              Case No. 3:22-cv-04476-SI
     JAZWARES, LLC,
18                                       **PLAINTIFFS' OPPOSITION TO**
                   Plaintiffs,           **DEFENDANTS' MOTION TO DISMISS**
19
20          v.                           Date: December 9, 2022
                                         Time: 10:00 a.m.
21   WOWWEE GROUP LIMITED, WOWWEE        Location: Courtroom 1, 17th Floor
     CANADA, INC., WOWWEE USA, INC.,     Judge: Hon. Susan Illston
22   and GRAMPS GOODS, INC.,
23                 Defendants.
24
25
26
27
28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF ISSUE TO BE DECIDED.......................................................... 1

III.  BACKGROUND ................................................................................................... 1

    A.    Roblox / Jazwares ..................................................................................... 1

    B.    WowWee.................................................................................................... 3

IV.   LEGAL STANDARD ........................................................................................... 6

V.    ARGUMENT ....................................................................................................... 6

    A.    Plaintiffs Have Stated a Claim for Copyright Infringement ................. 6

        1.    Roblox Is the Copyright Owner of the Works at Issue............................. 7

            a.    Roblox Is the Owner of the Brookhaven Customer and Stylz Salon Stylist Avatars...................................................... 7

            b.    Plaintiffs Can Amend Their Complaint to Add New Works .................................................................................... 8

    B.    Plaintiffs Have Sufficiently Alleged Substantial Similarity ................. 10

    C.    Plaintiffs Have Stated Claims for False Designation of Origin, Trademark Infringement, and Trade Dress Infringement.................................... 14

        1.    Plaintiffs Have Successfully Pled That WowWee Confused Consumers Through Its Use of the Avatar Trade Dress ...................... 15

            a.    Plaintiffs Have Adequately Articulated Their Trade Dress ................................................................................... 15

            b.    Plaintiffs Have Adequately Pleaded Secondary Meaning ................................................................................ 16

        2.    Plaintiffs Have Successfully Pled That WowWee Confused Consumers Through Its Use of the ROBLOX Trademark ................... 17

    D.    Plaintiffs Need Not Arbitrate Any Claims They Have Brought in This Suit ........................................................................................................ 20

    E.    Plaintiffs' UCL and False Advertising Claims Should Proceed to Discovery ................................................................................................ 20

    F.    Plaintiffs Have Successfully Pleaded Breach of Contract .................... 21

    G.    Plaintiffs Have Successfully Pleaded Intentional Interference ............ 23

    H.    The Amended Complaint Establishes Jazwares' Standing.................... 24

VI.   CONCLUSION..................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

5
*AFL Telecomm. LLC v. SurplusEQ.com, Inc.*,
   No. 11-cv-1086, 2012 WL 1161607 (D. Ariz. Apr. 9, 2012) ....................................................9

6
*Alfred v. Walt Disney Co.*,
   821 F. App'x 727 (9th Cir. 2020) .........................................................................................11

7

8
*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
   No. 18-cv-06663, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019)............................................19

9

10
*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ................................................................................................14

11
*AOP Ventures, Inc. v. Steam Distribution, LLC*,
   No. 15-cv-01586, 2016 WL 7336730 (C.D. Cal. Oct. 11, 2016),
12
   *vacated on reconsideration*, 2016 WL 10586307 (C.D. Cal. Dec. 27, 2016) .........................19

13
*Avina v. Patenaude & Felix, APC*,
   No. 20-cv-0166, 2021 WL 5990037 (S.D. Cal. Dec. 17, 2021) ............................................21

14

15
*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   No. 15-cv-04084, 2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) ......................................10, 11

16

17
*Bobrick Washroom Equip., Inc. v. Am. Specialties Inc.*,
   No. 10-cv-6938, 2010 WL 11462854 (C.D. Cal. Dec. 15, 2010)..............................14, 15, 16

18
*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ................................................................................................10
19

20
*Cheever v. Huawei Device USA, Inc.*,
   No. 18-cv-06715, 2019 WL 8883942 (N.D. Cal. Dec. 4, 2019)............................................20

21
*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
22
   479 F.3d 1099 (9th Cir. 2007) ........................................................................................23, 24

23
*Dean v. Cortes*,
   No. 18-cv-02335, 2018 WL 3425016 (C.D. Cal. July 12, 2018)............................................17
24

25
*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
   No. 15-cv-769, 2015 WL 12731929 (C.D. Cal. May 8, 2015) ..............................................15

26
*Denims v. Ram Imps., Inc.*,
27
   No. 20-cv-9254, 2020 WL 11884712 (C.D. Cal. Dec. 10, 2020)...........................................16

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
     983 F.3d 443 (9th Cir. 2020) ........................................................................................11

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
     142 F.3d 1127 (9th Cir. 1998) ......................................................................................14

*Enea Embedded Tech., Inc. v. Eneas Corp.*,
     No. 08-cv-1595, 2009 WL 648891 (D. Ariz. Mar. 11, 2009).........................................18

*ET Trading, Ltd v. ClearPlex Direct, LLC*,
     No. 15-cv-00426, 2015 WL 913911 (N.D. Cal. Mar. 2, 2015) ......................................24

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*,
     198 F.3d 1143 (9th Cir. 1999) ................................................................................16, 17

*Fin. Express LLC v. Nowcom Corp.*,
     564 F. Supp. 2d 1160 (C.D. Cal. 2008) .........................................................................17

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
     139 S. Ct. 881 (2019)......................................................................................................8

*Gorski v. The Gymboree Corp.*,
     No. 14-cv-01314, 2014 WL 3533324 (N.D. Cal. July 16, 2014) ..............................19, 20

*Interinsurance Exch. v. State Bd. of Equalization*,
     156 Cal. App. 3d 606 (1984) .........................................................................................22

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
     12 F. Supp. 2d 1035 (C.D. Cal. 1998) ...........................................................................21

*Izmo, Inc. v. Roadster, Inc.*,
     No. 18-cv-06092, 2019 WL 2359228 (N.D. Cal. June 4, 2019)........................................9

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*,
     391 F. Supp. 3d 959 (N.D. Cal. 2019) ...........................................................................10

*Khaled v. Bordenave*,
     No. 18-cv-5187, 2019 WL 1894321 (S.D.N.Y. Apr. 29, 2019) ......................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
     899 F.3d 988 (9th Cir. 2018) ...........................................................................................6

*Kifle v. YouTube LLC*,
     No. 21-cv-01752, 2021 WL 1530942 (N.D. Cal. Apr. 19, 2021).......................................9

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
     676 F.3d 841 (9th Cir. 2012), *abrogated on other grounds as recognized by*
     *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194 (9th Cir. 2020)......11, 12, 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373 (2d Cir. 1997)...................................................................................................16

*LEGO A/S v. Best-Lock Constr. Toys, Inc.*,
    404 F. Supp. 3d 583 (D. Conn. 2019)....................................................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)................................................................................................................25

*Lickerish Ltd. v. Maven Coal., Inc.*,
    No. 20-cv-5621, 2021 WL 3494638 (C.D. Cal. Jan. 29, 2021)..............................................8

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ..................................................................................................6

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) ................................................................................................17

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ..................................................................................12

*McGurr v. N. Face Apparel Corp.*,
    No. 21-cv-00269, 2021 WL 4706984 (C.D. Cal. Aug. 27, 2021) ..........................................21

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ..................................................................................................25

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ................................................................................................6

*Mish v. TForce Freight, Inc.*,
    No. 21-cv-04094, 2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ............................................25

*Molly Maid, Inc. v. Carlson*,
    No. 09-cv-0737, 2010 WL 11507456 (C.D. Cal. Mar. 25, 2010)..........................................14

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*,
    No. 21-cv-06536, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022)............................................11

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
    No. 20-cv-04556, 2021 WL 922074 (C.D. Cal. Jan. 7, 2021)........................................16, 17

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ................................................................................................19

*Norton v. LVNV Funding, LLC*,
    396 F. Supp. 3d 901 (N.D. Cal. 2019) ..................................................................................12

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013) ..................................................................................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
   No. 19-cv-1765, 2020 WL 3032765 (C.D. Cal. Jan. 24, 2020)............................8, 9

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004) ........................................................................................23

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) ..............................................................................7, 8

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
   No. 16-cv-04895, 2017 WL 2775030 (N.D. Cal. June 27, 2017)............................21

*Sebastian Int'l, Inc. v. Russolillo*,
   No. 00-cv-3476, 2005 WL 1323127 (C.D. Cal. Feb. 22, 2005) ............................24

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
   81 F.2d 49 (2d Cir. 1936).....................................................................................13

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ...............................................................................6

*Sleep Sci. Partners v. Lieberman*,
   No. 09-cv-04200, 2010 WL 1881770 (N.D. Cal. May 10, 2010)....................15, 16

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ...............................................................................20

*TSX Toys, Inc. v. 665, Inc.*,
   No. 14-cv-02400, 2015 WL 12791406 (C.D. Cal. Apr. 24, 2015) ........................14

*Ty, Inc. v. GMA Accessories, Inc.*,
   132 F.3d 1167 (7th Cir. 1997) .........................................................................12, 13

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
   No. 18-cv-5369, 2019 WL 6034116 (N.D. Ill. Nov. 14, 2019) ..............................9

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..................................................................................6

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
   18 F.3d 502 (7th Cir. 1994) ..................................................................................13

*Williams v. SBE Ent. Grp.*,
   No. 07-cv-7006, 2008 WL 11339999 (C.D. Cal. Nov. 10, 2008) .........................25

**STATUTES**

15 U.S.C.
   § 1125(a) ...............................................................................................................25
   § 1125(a)(1) .....................................................................................................14, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

17 U.S.C.
  § 101...........................................................................................................................7
  § 411(a).......................................................................................................................8

Lanham Act § 43(a) ...............................................................................................14, 25

Restatement (Third) Of Agency § 6.03 (Am. Law Inst. 2006)......................................21

### OTHER AUTHORITIES

Compendium of U.S. Copyright Office Practices § 402 (2021)........................................8

Compendium of U.S. Copyright Office Practices § 404 (2021)........................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

## I.    INTRODUCTION

This is the extraordinary case in which a defendant admits—even promotes—its naked copying of another's creative works.  Defendants WowWee Group Limited, WowWee Canada, Inc., WowWee USA, Inc., and Gramps Goods, Inc. (collectively "WowWee") had an idea: copy Roblox Corporation's immensely popular digital figures, known as "avatars," make toys based on those figures, and use Roblox's popular brand to sell them to Roblox users.  And that is exactly what WowWee did.  It copied Roblox's Avatars to create a doll line it named "My Avastars."  It induced a software developer, Gamefam, to create a Roblox experience and corresponding Roblox Avatars, to make digital versions of the toys it wanted to sell.  It promoted the My Avastars dolls using the Roblox name and Roblox Avatars and included codes that it said could be redeemed for virtual items on Roblox, thereby suggesting a Roblox connection.  Indeed, WowWee's own Vice President *bragged*, over and over, that WowWee copied its dolls from Roblox Avatars—and numerous consumer comments confirm that consumers were indeed fooled.  The problem is that, in doing all of this, WowWee *inter alia* (a) breached numerous contractual commitments to Roblox; (b) induced Gamefam to breach *its* contractual commitments to Roblox; and (c) infringed Plaintiffs' intellectual property rights.  That is why Plaintiffs brought this suit.

In asking the Court to dismiss this case in its entirety, WowWee has done everything possible to avoid these core allegations of Plaintiffs' Amended Complaint.  And in so doing, WowWee both ignores the controlling standard for a motion to dismiss and misapplies black-letter law.  This Court should decline WowWee's invitation to dismiss a complaint that alleges more than enough facts to state a claim for each cause of action asserted.

## II.    STATEMENT OF ISSUE TO BE DECIDED

The issue to be decided is whether Defendants' Motion should be granted where Plaintiffs adequately pled claims for (a) copyright infringement, (b) violations of the Lanham Act, (c) violations of California's Unfair Competition and False Advertising laws, (d) breach of contract, and (e) intentional interference with contractual relations.

## III.    BACKGROUND

### A.    Roblox / Jazwares

1    Roblox is an online platform that hosts a digital world where users can both create virtual

2    games and experiences and play games and experiences created by other users.    Amended

3    Complaint ("AC") ¶ 27.  The Roblox Platform includes Roblox-provided graphics, interfaces, and

4    tools for users (dubbed developers or creators) to create online environments for other users.  *See*

5    AC ¶¶ 27–28.  Central to the Roblox experience are Roblox Avatars (sometimes called Classic or

6    Modified Classic Avatars)—the iconic, blocky digital manifestations of the millions of users who

7    visit Roblox every day.  AC ¶¶ 4–5.  Users can customize their avatars in endless ways within the

8    Roblox Platform, including choosing their avatars' clothing, body parts, facial expressions, gear,

9    and accessories.  AC ¶ 32.  Once logged into Roblox, users navigate their avatars through the over

10   34 million experiences that make up Roblox's digital world.  AC ¶¶ 28–33.

11   Roblox has grown exponentially since its founding in 2004.  Over 50 million users visit

12   Roblox daily to use and interact with Roblox's distinctive avatars.  AC ¶¶ 28, 47, 58.  As Roblox's

13   popularity skyrocketed, so too did third parties' attempts to profit off Roblox's reputation.  Key to

14   Roblox's success, however, is its refusal to compromise on quality or sacrifice its brand for an

15   easy dollar.  Roblox therefore carefully curated its brand strategy and chose to license the right to

16   manufacture figures based on Roblox's Avatars (the "Avatar Figurines") to only one company,

17   Jazwares, due to its high standards for quality and its compatibility with the Roblox brand.  AC

18   ¶¶ 9, 47–49.  Because of the Figurines' high quality and instant recognizability as Roblox Avatars,

19   millions are sold each year.  AC ¶ 50–51.  One such Avatar Figurine, together with the digital

20   avatar on which it is based—both registered with the U.S. Copyright Office—is Claire Dancefiend:

21

22

23

24

25

26

27

28   AC ¶¶ 31, 52 (reproducing additional registered Avatar Figurines).


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Roblox protects its investments in its intellectual property, as well as the investments of its developers and licensees like Jazwares, via its copyrights, trademarks, trade dress, and Terms of Use ("Terms").  To that end, Roblox has obtained copyright registrations for five digital Roblox Avatars relevant here—Cindy, Lindsey, Kenneth, Dennis, and Claire Dancefiend—and three Avatar Figurines—Claire Dancefiend, Brookhaven Customer, and Stylz Salon Stylist.  AC ¶¶ 55–56.  Roblox has also included in its Terms protections for the Roblox name and Roblox-associated content, while simultaneously allowing users and creators to deploy and benefit from the independent content they create within certain limits.  For instance, the Terms forbid the use of the Roblox name to promote physical products sold commercially.  AC Ex. 1(c) at 2.  And the Terms make clear that the "interfaces, graphics, [and] design" of Roblox's Platform belong to Roblox and using them without Roblox's express permission violates both the Terms and Roblox's intellectual property rights.  AC Ex. 1(a) § 10.  The Terms specifically prohibit using Roblox Avatars "on physical products or commercial content" and provide that Avatars "may not be tied to the development, distribution or sale of any products or services."  AC Ex. 1(c) at 2.  And to further protect its investments in its intellectual property, Roblox registered the copyright in many of the Avatars that it created or to which it holds an exclusive license.  *See* AC ¶¶ 55–56.

### B.    WowWee

WowWee is a toymaker that wanted to take advantage of Roblox's success and brand recognition.  Rather than comply with Roblox's Terms or seek a license to use its intellectual property, WowWee decided to create and promote a commercial product—the My Avastars doll line—that WowWee designed to look like Roblox Avatars and marketed as Roblox toys.  As WowWee would later tell consumers in promotional videos (AC ¶ 99):

#doll + #roblox = #myavastars

WowWee started by creating a Roblox account.  On July 28, 2021, Sydney Wiseman, WowWee's Vice President of Brand Development and Creative Strategy, created a Roblox account, which she linked to her WowWee email address.  AC ¶¶ 112–13.  She used that account to investigate and explore the Roblox Platform.  As she wrote on a promotional TikTok video that includes the Roblox Platform and Avatars: "I was looking at all the customization of roblox and I

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

was like 'wow **that would be a great doll line**.'"  AC ¶ 79.

WowWee then proceeded to make that doll line, copying Roblox's distinctive Avatars, complete with changeable facial expressions, clothing, and hair.  AC ¶¶ 80–81.  WowWee continued to release promotional videos that reinforced that WowWee's dolls are Roblox Avatars. In one, Ms. Wiseman again shows the Roblox Platform and explains: "I was playing roblox and as I was customizing my avatar I was inspired to create a doll line called my Avastars."  AC ¶ 84. In another, Ms. Wiseman shows Roblox Avatar faces and comments: "Roblox faces are so fun to customize[.]  What if we made a doll that could do the same?"  AC ¶ 87.

   

WowWee did not want to take any chances on whether consumers would recognize its new dolls as Roblox products.  So it made sure that the My Avastars dolls were both virtually identical to Roblox's own Avatar Figurines as well as near-exact copies of digital avatars available on Roblox.  WowWee accomplished the former goal simply by copying Roblox's Avatars and Avatar Figurines themselves, as the side-by-side comparison below demonstrates.  The toys in images 2, 4, and 6 are Roblox's Avatar Figurines; those in images 1, 3, and 5 are WowWee's My Avastars dolls.  *See* AC ¶ 11.



**1**      **2**      **3**      **4**      **5**      **6**


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

WowWee also ensured that its dolls would match avatars actually available on Roblox by convincing Roblox-developer Gamefam to create a Roblox experience—complete with digital Roblox Avatars—just for WowWee, called the My Avastars: RP experience. AC ¶¶ 69–70, 86, 91. WowWee used those digital avatars as models for its toys and advertised its toys' connection to the new Gamefam Roblox game, touting that the "best part" was that purchasers could "recreate" the dolls "*exactly*" in the "Roblox game my Avastars RP." AC ¶ 82.

WowWee has taken every opportunity to promote the dolls as Roblox-affiliated toys. WowWee has marketed that the dolls turn Roblox's "digital avatars into real life fashion stars" and, accordingly, allow consumers to bring their dolls to life online on Roblox. AC ¶ 96. WowWee has also used social media to tie the dolls to Roblox. Using both the @my_avastars and Ms. Wiseman's TikTok accounts, WowWee promoted the dolls as #Roblox, and #RobloxGame, and told the world that its dolls were "#newroblox." AC ¶¶ 97–99. Again, as the title of one of Ms. Wiseman's videos tells consumers: "#doll + #roblox = #myavastars." AC ¶ 99.

And when My Avastars' promotional videos generated criticisms that the dolls are Roblox knock-offs, or that WowWee is not allowed to sell Roblox codes to its users, Ms. Wiseman repeatedly trumpeted that the company is "working with top roblox developers" who "have ways of doing it"—thereby implying that Roblox sanctioned the dolls. AC ¶¶ 103–05.

Numerous comments on WowWee's promotional videos show that WowWee succeeded in confusing consumers. Those comments include: "Roblox but in real life," "is she from Roblox?" "bro its roblox irl?!?!?" "is this a Roblox toy????" and "IS THAT ROBLOX??" AC ¶ 108. And after WowWee's videos prompted some viewers to wonder whether Roblox would sue, others opined "I think they work with roblox." AC ¶ 15. The My Avastars dolls—and WowWee's promotion of them as a Roblox toy—have even caused consumers to view Roblox negatively, with one viewer responding to a WowWee TikTok video: "I am so upset what Roblox became I'm so glad I'm not playing anymore," while another said: "Not to be rude but these look cheaply made." AC ¶ 109. Other consumers, meanwhile, want to buy the My Avastars dolls specifically because of their perceived association with Roblox: one commenter on a video stated, "I love the avastars doll because i play roblox so I definitely will be purchasing." *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    On July 8, 2022, Roblox wrote to WowWee warning that its activities constituted

2  infringement of Roblox's intellectual property rights and tortious interference with Roblox's

3  contractual relationship with Gamefam and demanding that WowWee cease marketing and selling

4  the My Avastars dolls. AC ¶ 78. WowWee refused. *Id.*

5  **IV.    LEGAL STANDARD**

6    "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

7  legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela*

8  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss," then, "a

9  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

10  plausible on its face; that is, plaintiff must plead factual content that allows the court to draw the

11  reasonable inference that the defendant is liable." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

12  988, 1008 (9th Cir. 2018).[1]

13    "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited

14  to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). While

15  courts may consider material incorporated by reference into a complaint, incorporation by

16  reference occurs where "the plaintiff refers extensively to the document or the document forms the

17  basis of the plaintiff's claim." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

18  **V.    ARGUMENT**

19      **A.    Plaintiffs Have Stated a Claim for Copyright Infringement**

20    To state a claim for copyright infringement, a plaintiff must allege ownership of a valid

21  copyright and copying of the copyrighted work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*

22  *Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020). The crux of Roblox's copyright claim is that,

23  "[w]ithout authorization, Defendants modified the Roblox avatars and Avatar Figurines, as well

24  as the underlying Classic Avatar bases, to create the My Avastars dolls," and that the dolls thus

25  are infringing "derivative works of the Roblox avatars and Avatar Figurines, as well as the

26  underlying Classic Avatar bases." AC ¶ 150. WowWee seeks dismissal on two grounds: that

27  Roblox cannot claim infringement of many of the works at issue, and that the My Avastars dolls

28  ────────────────────

[1] Internal quotation marks, brackets, and citations omitted throughout unless otherwise noted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

are not substantially similar to Roblox's copyrighted works.  Both arguments fail.

### 1.    Roblox Is the Copyright Owner of the Works at Issue

WowWee argues that Roblox cannot assert infringement of: (1) the registered Brookhaven Customer and Stylz Salon Stylist Avatars; (2) the Claire Dance Dancefiend Avatar, along with all three registered Avatar Figurines; and (3) the Roblox Classic Avatar bases from which other avatars are derived.  In each instance, WowWee misunderstands black-letter law.[2]

#### a.    Roblox Is the Owner of the Brookhaven Customer and Stylz Salon Stylist Avatars

WowWee first argues that, because the Brookhaven and Stylz Avatars were initially "created by third parties" and Roblox is not the "registered owner," Roblox does not own the copyrights in those works.  Mot. to Dismiss ("Mot.") 7 (Dkt. No. 45).  Based on that contention, WowWee asserts that Roblox cannot sue for infringement of those digital avatars, and also cannot sue for infringement of the Avatar Figurines based on those avatars.  But under the Copyright Act, a copyright owner is the person or entity who, "with respect to any one of the exclusive rights comprised in a copyright," is "the owner of that particular right."  17 U.S.C. § 101.  Thus, contrary to WowWee's contention, a copyright owner is not necessarily the person who created the copyrighted work.  Nor must a party be a "registered owner" of a work to sue for infringement.  Rather, anyone to whom a copyrighted work is either transferred or exclusively licensed, in whole or in part, is a copyright owner for purposes of the Copyright Act and can sue for infringement of that work.  *See Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013).

Here, Roblox "owns *or has exclusive rights* to all rights, title, and interest in and to the Roblox Classic Avatars" and "the Roblox Avatar Figurines."  AC ¶ 145–46.[3]  Roblox thus owns the relevant copyrights in the Brookhaven and Stylz Avatars, as well as in the Avatar Figurines

---

[2] WowWee also argues that Plaintiffs cannot assert a claim that the My Avastars dolls infringed the copyright in the avatars from the "My Avastars: RP" game created by Gamefam.  Mot. 10.  But Plaintiffs have never asserted such a claim.  Rather, Plaintiffs pointed to the remarkable similarities between these digital avatars created by Gamefam—which indisputably were Roblox Avatars—and the My Avastars dolls to underscore the substantial similarity between the copyrighted Roblox Avatars and the My Avastars dolls.  AC ¶ 91.

[3] Emphasis added unless otherwise noted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    based on those avatars, and can sue for their infringement.  *See Righthaven LLC,* 716 F.3d at 1170.[4]

2                    b.      *Plaintiffs Can Amend Their Complaint to Add New Works*

3            WowWee next argues that Roblox cannot sue for infringement of the Claire Dancefiend,

4    Brookhaven, and Stylz Avatars and Figurines because Plaintiffs obtained copyright registrations

5    for those works after filing the initial complaint, but before filing the Amended Complaint.  Mot.

6    9.  But it is well established that a plaintiff may amend its complaint to allege infringement of

7    additional works, so long as those works are registered before amendment—as happened here.

8            Under the Copyright Act, a plaintiff cannot sue for infringement of a copyrighted work

9    until the work is registered with the Copyright Office.  17 U.S.C. § 411(a).  As a result, if a plaintiff

10   sues for infringement of a work that was not registered when the suit was filed, she cannot remedy

11   that failure by later registering the work and amending the complaint to allege registration.  *Fourth*

12   *Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 890–91 (2019).  In contrast,

13   where, as here, a plaintiff files suit based on particular copyrighted works that are registered at the

14   time the lawsuit is filed, the plaintiff can amend to add claims of infringement of *additional*

15   copyrighted works, even if those additional works were registered after the complaint was initially

16   filed but before the amendment.  *See, e.g., Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. 19-cv-

17   1765, 2020 WL 3032765, at *3 (C.D. Cal. Jan. 24, 2020).  That is because *Fourth Estate* "does

18   not preclude the amendment of an existing lawsuit to add a newly asserted claim for copyright

19   infringement as long as the copyright issued before the amendment."  *Lickerish Ltd. v. Maven*

20   *Coal., Inc.*, No. 20-cv-5621, 2021 WL 3494638, at *1 (C.D. Cal. Jan. 29, 2021).  In other words,

21   so long as the plaintiff does not bring a claim for infringement of a copyrighted work until that

22   particular work has been registered, the plaintiff has satisfied the registration requirement.  *See id.*

23   ———————————

24   [4] WowWee also disputes the allegation that Roblox registered the copyrights in the Brookhaven
     and Stylz Avatars.  Mot. 7.  But as explained in Roblox's Response to the Request for Judicial

25   Notice, the Copyright Office documents that WowWee cites do not address who submitted the
     registration applications (the "applicant").  In fact, it was *Roblox* who, as an exclusive licensee,

26   applied for the registrations at issue; it is entirely irrelevant that the copyright documents list third-
     party authors as the "copyright claimants."  *Id.*; *see* Compendium of U.S. Copyright Office

27   Practices §§ 402, 404 (2021) (the "applicant is the party who signs the certification and submits
     the application to the U.S. Copyright Office" and may be the "owner of all the exclusive rights in

28   the work" or "of one or more . . . of the exclusive rights in the work," whereas the claimant can be
     only "the author of the work" or the "owner who owns all the exclusive rights in the work").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

For example, in *Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, the plaintiff initially brought claims for infringement of several versions of its software (firmware).  No. 18-cv-5369, 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019).  The plaintiff then registered a new version of that firmware (the airOS 6.0 firmware), and the court permitted the plaintiff to amend its complaint to add a claim for infringement of that new version.  *Id.*  As the court there explained, "Ubiquiti's claim for infringement based on the airOS 6.0 firmware was not brought in its original complaint, and may be brought now. . . .  Ubiquiti did not bring a copyright infringement claim *as to the airOS 6.0 firmware* until it filed the amended complaint, which occurred . . . after its copyright for that firmware was registered.  So that claim was not prematurely filed."  *Id.*[5]

In contrast, the cases on which WowWee relies—*Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092, 2019 WL 2359228 (N.D. Cal. June 4, 2019), and *Kifle v. YouTube LLC*, No. 21-cv-01752, 2021 WL 1530942 (N.D. Cal. Apr. 19, 2021)—concerned plaintiffs bringing suit for infringement of a particular work before registering it.  As the Court in *Philips* explained when discussing *Izmo*, that case involved an "original pleading[] asserting premature causes of action for copyright infringement that the plaintiff[] . . . attempted to cure by amending [its] complaint[]," and did not "preclude the amendment of an existing lawsuit to add a newly asserted claim for copyright infringement as long as the copyright issued before the amendment."  2020 WL 3032765, at *3.

In the initial complaint, Plaintiffs alleged copyright infringement of only four digital avatars, Cindy, Lindsey, Kenneth, and Dennis, all of which were registered before Plaintiffs filed suit.  AC ¶ 148.  Only after registering the Claire Dancefiend, Brookhaven, and Stylz Avatars and Figurines did Plaintiffs amend the complaint to allege infringement of those works too.  AC ¶ 149.  Because each of the copyrighted works was registered before Plaintiffs asserted claims for their infringement, Plaintiffs satisfied the Copyright Act's registration requirement.

---

[5] WowWee also argues (at 7–8) that Plaintiffs cannot assert claims for infringement of Roblox's "base" Avatars—the models on which all other avatars are built, AC ¶¶ 30–31—because the Avatar bases were not separately registered.  But WowWee ignores the well-established "effective registration doctrine," under which registration of a derivative work effectively registers the underlying works on which the derivative is based so long as the owner of the derivative work also owns the copyright in the original work.  *AFL Telecomm. LLC v. SurplusEQ.com, Inc.*, No. 11-cv-1086, 2012 WL 1161607, at *2–3 (D. Ariz. Apr. 9, 2012).  In any event, the registration status of the Roblox Avatar bases is beside the point because WowWee has so clearly infringed Plaintiffs' digital Avatars and Avatar Figurines that are derived from those bases.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

**B.     Plaintiffs Have Sufficiently Alleged Substantial Similarity**

To plead actionable copying, a plaintiff must allege both that the defendant copied the works at issue and that the works are substantially similar. *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, No. 15-cv-04084, 2018 WL 1242053, at *3 (N.D. Cal. Mar. 8, 2018). When considering substantial similarity, courts apply a two-part test: (1) an "extrinsic test," which "is an objective comparison of specific expressive elements," and (2) an "intrinsic test," which asks "whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "At the pleading stage," however, "this Court considers only the extrinsic test." *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 966 (N.D. Cal. 2019).

Here, there exists no question that WowWee actually copied Roblox Avatars to create its dolls; WowWee itself has admitted as much repeatedly. *See supra*, at 3–5. WowWee (at 11–16) seeks to duck that reality by arguing that the My Avastars dolls are not substantially similar to the copyrighted works that WowWee admits it copied. But WowWee accomplished what it intended: to create Roblox Avatar dolls. As the side-by-side comparison below demonstrates, WowWee's dolls (images 1, 3, and 5) fit in perfectly with Roblox's own copyrighted Avatar Figurines (images 2, 4, and 6). That is because they are all based on the same underlying copyrighted works—Roblox digital Avatars. And as a result, they all share the same cylindrical heads, C-shaped hands, block-shaped legs, rounded arms, cartoon-like facial expressions, no nose, rectangular torsos, and trapezoidal legs that are narrower at the hip and wider at the feet:



**1**          **2**          **3**          **4**          **5**          **6**

AC ¶ 11. That is also why numerous commenters on WowWee's promotional videos immediately

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

recognized the My Avastars dolls as Roblox Avatars in doll form. *See supra*, at 5.

Courts have held that far less suffices to establish substantial similarity, particularly at the motion to dismiss stage. For instance, in *Blizzard*, 2018 WL 1242053, at *4, the court held that the following two representative videogame images, with far fewer similarities than the works here, evidenced sufficient similarity to warrant denial of a motion to dismiss:


"Illidan Stormrage" from World of Warcraft


Facebook ad for Soul Hunters

WowWee nevertheless offers several erroneous arguments as to why the works at issue are not substantially similar. First, WowWee argues that many of the features shared between its dolls and Roblox's works are "absurdly commonplace" and unprotectable. Mot. 12–14. To that end, WowWee cherry-picks individual elements of the infringed works, pointing to other dolls, toys, or video game characters that WowWee claims, for instance, "lack a nose," and arguing that this means each feature is unprotectable. Mot. 14 (ellipsis omitted). But courts have repeatedly rejected similar attempts "to isolate, focus only on certain aspects of [a plaintiff's] infringement allegations, and recast those allegations at a high degree of generality." *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*, No. 21-cv-06536, 2022 WL 580788, at *9 (N.D. Cal. Feb. 25, 2022); *see Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 456 n.5 (9th Cir. 2020) ("We are cautious not to overzealously decompose visual expression into its abstract, and thus unprotectable, units, because that would mean that any amount of taking by ComicMix would be permissible."). And even if WowWee were right that some similarities between the works would, standing alone, not be protectable, the Ninth Circuit has held that "even when individual elements are not protected—their original selection, coordination, and arrangement . . . may be protectible expression." *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020); *see also L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012), *abrogated on other*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    *grounds as recognized by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1198

2    (9th Cir. 2020).  Thus, while omitting a doll's nose might by itself not be protectable, when viewed

3    in combination with the other distinctive elements of Roblox Avatars—such as the cylindrical

4    heads, the c-shaped hands, and the blocky, tapering legs—this feature adds to the overall

5    substantial similarity of the works at issue.

6        WowWee's own cases reject its divide-and-conquer tactic.  For instance, WowWee (at 12)

7    relies on *Mattel, Inc. v. MGA Ent., Inc.* for the proposition that an "oversized head, protrusive lips,

8    and diminished nose […] are not original elements."  782 F. Supp. 2d 911, 948 (C.D. Cal. 2011).

9    But that same case held that there was a triable issue of fact on substantial similarity due to the

10   specific way that the human figures in the two works appeared: "For example, although the [dolls]

11   have very small, defined waists, both have a slightly protruding, rounded lower stomach.  Both

12   [dolls] also lack the roundness in the breast area that is common to many other fashion dolls with

13   exaggerated, idealized proportions."  *Id.* at 950.  So too here, where features such as the blocky,

14   narrowing legs shared by the Avatar Figurines and the My Avastars dolls stand in contrast to the

15   more realistic leg shape common to most dolls.[6]

16       WowWee next argues that, because the works at issue are "'humanoid' figures," they merit

17   protection against only "virtually identical copying."  Mot. 13.  But again, while the mere idea of

18   a human arm or head is not protectable, the particular expression of these general elements—

19   particularly when taken in combination and reflected in highly creative digital and sculptural

20   works—is protectable.  And courts routinely find actionable copying where two works resemble

21   each other more than they resemble the real-world subject of the work.  Indeed, the Seventh Circuit

22   held precisely that in finding that a defendant's stuffed pig and stuffed cow toys had likely

23   infringed "Beanie Babies" toys of those same animals because, *inter alia*, the defendant's "pig

24   [was] strikingly similar to Ty's pig but not to anything in the public domain—a real pig, for

---

[6]  WowWee's reliance (at 12) on works never mentioned in the Amended Complaint, from "Gumby dolls" to LEGOs, is also wholly improper.  *Norton v. LVNV Funding, LLC*, 396 F. Supp. 3d 901, 909 (N.D. Cal. 2019) ("As a general rule, a court may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion.").  Unsurprisingly, WowWee points to no case where a court on a motion to dismiss endorsed similar attempts to rely on unrelated works never mentioned in the complaint to argue the merits of a copyright claim.

1    example." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169–70 (7th Cir. 1997).  The same

2    is true here: The My Avastars dolls resemble the Avatar Figurines and Roblox Avatars far more

3    than they resemble any actual human being.

4        Similarly, in *LEGO A/S v. Best-Lock Construction Toys, Inc.*, on which WowWee relies

5    (at 13–14), the court noted that, while the basic ideas of "heads, necks, shoulders, and arms,"

6    "constitute unprotectable 'ideas' of the human forms in the abstract," "the cylindrical head and

7    square-shaped shoulders of a Lego minifigure, for examples, are not realistic anatomical

8    depictions, but plainly the product of artistic judgment." 404 F. Supp. 3d 583, 614–15 (D. Conn.

9    2019).  The court went on to conclude that, because the defendant's toys did "not merely share

10   features that are common to all figurines in the human form," but instead copied the plaintiff's

11   *expression* of those features, substantial similarity existed.  *Id.* at 615–16.  So too here.

12       Finally, WowWee points to purported differences between the works, such as that the

13   single My Avastars doll submitted by WowWee assertedly has a "larger head in proportion to its

14   body" than the registered digital Avatars, is a different size, and carries different accessories.  Mot.

15   15–16.  Notably, most of WowWee's comparisons refer solely to "the Registered [digital]

16   Avatars," and WowWee largely ignores the powerful resemblance between its dolls and the Avatar

17   *Figurines*. *Id.*  But in any event, "[i]t is enough that substantial parts were lifted; no plagiarist can

18   excuse the wrong by showing how much of his work he did not pirate."  *L.A. Printex Indus.*, 676

19   F.3d at 852 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)

20   (Hand, J.)).  As courts have explained, "some dissimilarities," like those at issue here, "do not

21   preclude a finding of infringement."  *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18

22   F.3d 502, 511 (7th Cir. 1994) (collecting cases showing that differences in "size," "color," "plush,"

23   "stuffing," "skin tone," and/or "facial dimensions" are not enough to negate substantial similarity

24   or "prove defendant had [an] original design").  WowWee is, of course, free to argue to a jury that,

25   under the subjective, intrinsic test, these dissimilarities create a sufficiently different overall look-

26   and-feel to defeat liability.  But such arguments fail at this stage given the "substantial parts [that]

27   were lifted" from the copyrighted works.  *See L.A. Printex Indus.*, 676 F.3d at 852.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    **C.      Plaintiffs Have Stated Claims for False Designation of Origin, Trademark**

2             **Infringement, and Trade Dress Infringement**

3             A plaintiff can assert a claim for false designation of origin under Section 43(a) of the

4    Lanham Act, 15 U.S.C. § 1125(a)(1), where the defendant uses words, symbols, or design to

5    confuse consumers as to the source or affiliation of its product. *See TSX Toys, Inc. v. 665, Inc.*,

6    No. 14-cv-02400, 2015 WL 12791406, at *3–4 (C.D. Cal. Apr. 24, 2015).  Confusion exists where

7    "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the

8    good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d

9    1127, 1129 (9th Cir. 1998).  Courts apply the so-called *Sleekcraft* factors to determine whether a

10   consumer might be confused: (1) strength of the mark; (2) proximity of the goods; (3) similarity

11   of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and

12   the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the

13   mark; and (8) likelihood of expansion of the product lines. *Molly Maid, Inc. v. Carlson*, No. 09-

14   cv-0737, 2010 WL 11507456, at *6 (C.D. Cal. Mar. 25, 2010) (citing *AMF Inc. v. Sleekcraft Boats*,

15   599 F.2d 341, 348–49 (9th Cir. 1979)).

16            Plaintiffs allege WowWee has created a likelihood of confusion about the origin of its My

17   Avastars dolls in two ways: (1) WowWee's unauthorized use of the Roblox name and registered

18   ROBLOX mark in marketing the My Avastars dolls, and (2) WowWee's use of the Roblox Avatar

19   trade dress in designing the dolls.  AC ¶¶ 173–87.  Tellingly, WowWee never addresses the

20   *Sleekcraft* factors, presumably because it knows such an effort would fail.  As *Sleekcraft*

21   contemplates, Plaintiffs alleged specific facts showing that their marks and trade dress are strong

22   and recognized by millions of Roblox users, that WowWee used highly similar trade dress and the

23   precise same "ROBLOX" mark, that WowWee sold competing avatar toys, and that WowWee

24   intentionally copied. *See supra*, at 3–5, 10–11.  Such allegations more than suffice at this

25   procedural stage. *See Bobrick Washroom Equip., Inc. v. Am. Specialties Inc.*, No. 10-cv-6938,

26   2010 WL 11462854, at *3 (C.D. Cal. Dec. 15, 2010) (allegations as to strength of mark, competing

27   sellers, and marks' similarity sufficed because "Plaintiff need not prove its case in its pleading").

28            Instead, WowWee asserts that a grab-bag of doctrines renders its use of the Roblox name

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1  and trade dress nonactionable.  These arguments, like those advanced by the defendant in *Bobrick*,

2  "amount to attacks on Plaintiff's alleged trade dress for being vague, insufficiently described,

3  invalid as generic, overbroad, or unlikely to create confusion."  *Id.*  And here, as in *Bobrick*,

4  "[t]hese arguments are not appropriate at the motion to dismiss stage of this action and are best

5  made at trial or, if there is no dispute as to material facts, on a motion for summary judgment."  *Id.*

6          **1.      Plaintiffs Have Successfully Pled That WowWee Confused Consumers**

7                  **Through Its Use of the Avatar Trade Dress**

8                  *a.      Plaintiffs Have Adequately Articulated Their Trade Dress*

9          WowWee argues that Plaintiffs have not alleged protectable trade dress.  From the

10  commonsense principle that a "plaintiff should clearly articulate its claimed trade dress to give a

11  defendant sufficient notice," *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. 15-cv-769,

12  2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015), WowWee manufactures a requirement that

13  Plaintiffs allege a "particular color or color combinations" or identify particular "facial features"

14  of their claimed trade dress. Mot. 16–17.  No such requirements exist.  Rather, as WowWee's own

15  cases make clear, "listing the elements of a trade dress and providing an image of a product bearing

16  the dress sufficiently identifies the trade dress over which plaintiff claims exclusive rights."

17  *Deckers*, 2015 WL 12731929, at *4.  Plaintiffs' inclusion of photographs of its Avatars and Avatar

18  Figurines, combined with the detailed description of the elements of its trade dress, AC ¶¶ 57, 95,

19  more than suffice to put Defendants on notice of Plaintiffs' trade dress.

20          WowWee's cited cases do not support its claims.  For example, WowWee contends (at 16)

21  that *Deckers* "grant[ed] [a] 12(b)(6) [motion] to dismiss claims for trade dress infringement

22  because the definition was 'too general to give the defendants notice of the boundaries of the

23  claims.'"  To the contrary, *Deckers* held that the allegations of trade dress *were* sufficiently

24  particular; it dismissed the trade dress claim on grounds not relevant here (functionality).  2015

25  WL 12731929, at *4 ("Plaintiff has described the . . . Trade Dress with sufficient particularity in

26  this case.").  The allegations in *Deckers* sufficed because the complaint included "five bullet points

27  of information describing" the trade dress elements, along with "three images" of the trade dress

28  that "further convey[ed] the collective appearance and placement of the[] elements."  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    WowWee's other cases involved complaints containing little to no detail regarding the

2    trade dress at issue.  In *Sleep Science Partners v. Lieberman*, for example, the plaintiff described

3    its trade dress as "the 'unique look and feel of [its] website, including its user interface, telephone

4    ordering system and television commercial,'" but failed to "clearly articulate[] which" components

5    of its website "constitute[d] its purported trade dress."  No. 09-cv-04200, 2010 WL 1881770, at

6    *2–3 (N.D. Cal. May 10, 2010) (quoting complaint).[7]  Here, in contrast, the Amended Complaint

7    includes photographs of the trade dress as well as a list of seven elements that comprise the trade

8    dress: (1) humanoid, blocky shape; (2) cylindrical heads; (3) C-shaped hands; (4) block-shaped

9    legs; (5) square or rounded arms; (6) cartoon-like facial expressions and lack of a nose; and (7) the

10   particularized combination of these elements.  AC ¶¶ 57, 95.  With this level of detail and the

11   inclusion of photographs, Plaintiffs have described the trade dress more definitely than in any of

12   the cases WowWee cites and have thus provided ample notice to WowWee.

13              *b.       Plaintiffs Have Adequately Pleaded Secondary Meaning*

14           WowWee also argues (at 18) that Plaintiffs have not pleaded secondary meaning—that is,

15   that the purchasing public associates the Roblox trade dress "with a single producer or source."

16   This argument does not withstand even passing scrutiny.  Secondary meaning ultimately "can be

17   established in many ways, including (but not limited to) direct consumer testimony"; "manner, and

18   length of use of a mark; amount and manner of advertising; amount of sales and number of

19   customers"; and "proof of intentional copying by the defendant."  *Filipino Yellow Pages, Inc. v.

20   Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).  But because "secondary meaning is

21   a question of fact," courts "have determined that secondary meaning need only be pled generally

22   for purposes of defeating a motion to dismiss."  *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 20-

23   cv-04556, 2021 WL 922074, at *4 (C.D. Cal. Jan. 7, 2021); *see id.* (collecting cases).  Here,

24   Plaintiffs have done much more, alleging numerous facts to demonstrate that these factors are

---

[7] *See also, e.g.*, *Denims v. Ram Imps., Inc.*, No. 20-cv-9254, 2020 WL 11884712, at *2 (C.D. Cal. Dec. 10, 2020) (plaintiff alleged trade dress consisted of "the design, color, shape, texture, and overall appearance of" clothing shown in photographs, but failed to "explain *which* designs, colors, shapes, or textures constitute the trade dress, or how these elements interact"); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (plaintiff simply alleged that the "product design and configuration" "employs a number of distinctive elements," without ever enumerating what those "distinctive elements" were).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

present and weigh in Roblox's favor.  *See Bobrick*, 2010 WL 11462854, at *3 (plaintiff adequately pled secondary meaning "mostly through conclusory statements," along with specific allegations regarding the amount it spent on advertising and number of units sold).

In addition to directly alleging that the "consuming public has come to associate [the] trade dress solely with Plaintiffs," Plaintiffs have specifically alleged that: (1) each of Roblox's 50 million daily users makes use of "their own Roblox avatar for use on the Roblox Platform"; (2) "[a]ll of these users have come to associate the Roblox trade dress exclusively with Roblox"; and (3) Jazwares has spent tens of millions of dollars in advertising expenditures promoting the Avatar Figurines.  AC ¶¶ 28, 51, 58, 181.  Additionally, Plaintiffs have alleged deliberate copying, which "the Ninth Circuit has held . . . is relevant to a determination of secondary meaning."  *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008); *id.* (collecting cases); *see* AC ¶ 185.  Finally, Plaintiffs have alleged that consumer comments on the WowWee videos, which at this stage is tantamount to "direct consumer testimony," *see Filipino Yellow Pages,* 198 F.3d at 1151, "make clear that consumers widely associate" the Roblox Avatar form with the Roblox brand, with comments such as "Roblox but in real life" and "is this a Roblox toy???"  AC ¶¶ 58, 108.  Taken together, these facts far exceed allegations courts have held sufficient to plead secondary meaning.[8]

**2.    Plaintiffs Have Successfully Pled That WowWee Confused Consumers Through Its Use of the ROBLOX Trademark**

As to WowWee's repeated use of the registered ROBLOX mark, WowWee's primary argument is that the use was somehow not "in commerce" and thus is not actionable.  Mot. 19–21. But the use of a trademark in advertising videos and on a sales website to attract customers is a paradigmatic use of a mark in commerce.  *See, e.g.*, *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 936 (S.D. Cal. 2013) ("use in commerce" based on "use of a trademark as a search engine keyword triggering the display of a competitor's advertisement"); *Mattel, Inc. v. MCA Recs., Inc.*,

---

[8] *See, e.g.*, *Mosaic Brands, Inc.*, 2021 WL 922074, at *4 (plaintiff sufficiently alleged facts regarding its advertising spend and number of products sold); *Dean v. Cortes*, No. 18-cv-02335, 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) (plaintiff sufficiently alleged secondary meaning where trade dress was sold since 2007, customers would "associate [the dress] with [plaintiff's] product," and defendant intended its "identical" products to cause confusion);

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1   296 F.3d 894, 903 (9th Cir. 2002) (use of mark in song title, along with sale of audio recordings,

2   qualified as a "commercial use"; "use in commerce" "refers to a use of a famous and distinctive

3   mark to sell goods other than those produced or authorized by the mark's owner").  Indeed, as

4   WowWee itself concedes (at 19), use in commerce includes use "in connection with the sale,

5   offering for sale, distribution or advertising of any goods or services." *Enea Embedded Tech., Inc.*

6   *v. Eneas Corp.*, No. 08-cv-1595, 2009 WL 648891, at *7 (D. Ariz. Mar. 11, 2009).

7           That is what Plaintiffs have alleged here: WowWee told consumers that the My Avastars

8   dolls were "NewRoblox" and promoted them as "#dolls + #Roblox" to "sell the My Avastars dolls

9   in interstate commerce."  AC ¶¶ 98–99, 174.  The Amended Complaint contains numerous

10  examples of WowWee's use of the Roblox name to advertise the My Avastars dolls to consumers.

11  These include WowWee:

12  • Repeatedly tagging advertising videos for the My Avastars dolls with "Roblox" and

13     "NewRoblox," and advertising that "#dolls + #Roblox=#myavastars."  AC ¶¶ 98–100, 156.

14  • Using the Roblox name across its sales website for the My Avastars dolls.  AC ¶ 176.

15  • Prominently advertising on its sales website that the My Avastars dolls were sold with a

16     code redeemable on Roblox (which was itself a violation of the Terms).  AC ¶ 97.

17  • Assuring consumers who wondered whether the dolls were endorsed by Roblox that it was

18     "working with top roblox developers."  AC ¶¶ 103–05.

19  • Featuring the Roblox name as prominently as the My Avastars brand in some advertising

20     videos (AC ¶ 99):



26          WowWee did this because it wished to "usurp and capitalize on the value of the ROBLOX

27  brand" and "confuse consumers into believing that" the My Avastars Dolls are "sponsored by, or

28  connected or affiliated with, Roblox."  AC ¶ 101.  And that effort succeeded: consumers

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1    commented "is this a Roblox toy????" and "I think they work with roblox" and commented that

2    they "definitely will be purchasing" "because i play roblox." *Supra*, at 5.

3         WowWee next contends that use of "hashtags with a post" is "insufficient to impose

4    trademark liability," and that its repeated use of #Roblox in social media advertising posts was

5    therefore permissible. Mot. 19. That is not the law. Courts routinely find that use of a plaintiff's

6    mark in a hashtag *is* actionable where, as here, "a reasonable person would be confused into

7    thinking" that the trademark owner had "endorsed or sponsored, or given its approval or

8    authorization for," the defendant's product. *Align Tech., Inc. v. Strauss Diamond Instruments,*

9    *Inc.*, No. 18-cv-06663, 2019 WL 1586776, at *10 (N.D. Cal. Apr. 12, 2019). There are thus

10   "numerous cases" where courts "have permitted claims of infringement based on uses of protected

11   marks in hashtags to go forward." *Khaled v. Bordenave*, No. 18-cv-5187, 2019 WL 1894321, at

12   *5 (S.D.N.Y. Apr. 29, 2019) (collecting cases).[9]

13        Finally, WowWee seeks to excuse its trademark infringement by claiming nominative fair

14   use. Mot. 20–21. "To establish that the use of a mark constitutes nominative fair use, a defendant

15   must prove . . . (1) the product or service in question must be one not readily identifiable without

16   use of the trademark; (2) only so much of the mark or marks may be used as is reasonably

17   necessary to identify the product or service; and (3) the user must do nothing that would, in

18   conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Gorski*

19   *v. The Gymboree Corp.*, No. 14-cv-01314, 2014 WL 3533324, at *6 (N.D. Cal. July 16, 2014)

20   (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). Here,

21   Plaintiffs' allegations refute any claim of nominative fair use. As detailed in the Amended

22   Complaint, WowWee intentionally and deliberately traded on Roblox's cachet to sell its own

23   products—through use of Roblox's trade dress and copyrighted avatars, through constant use of

24   the "Roblox" and "NewRoblox" hashtags, through assuring consumers that WowWee would not

25

26   [9] The sole case WowWee cites to the contrary, *AOP Ventures, Inc. v. Steam Distribution, LLC*,
     No. 15-cv-01586, 2016 WL 7336730 (C.D. Cal. Oct. 11, 2016), was vacated on reconsideration,
27   2016 WL 10586307 (C.D. Cal. Dec. 27, 2016). Moreover, unlike the defendant in *AOP Ventures*,
     WowWee did not just use the Roblox mark in hashtags—it also used it on its sales website, in
28   videos, and numerous other ways, leaving no doubt that WowWee was using the mark to advertise
     and sell the My Avastars dolls. *See* AC ¶¶ 96–107.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

get sued because they were "working with top roblox developers," and through the use of Roblox gameplay footage on its website and advertisements.  AC ¶¶ 96–107.  These are exactly the sort of allegations that regularly survive attempts to dismiss on the basis of nominative fair use.  *See Gorski*, 2014 WL 3533324, at *7 (collecting cases).  The same result is warranted here.

### D.    Plaintiffs Need Not Arbitrate Any Claims They Have Brought in This Suit

WowWee argues that the court should dismiss Plaintiffs' contract and interference claims because those claims must be arbitrated under Roblox's Terms of Use.  As an initial matter, the Ninth Circuit has made clear that dismissal on the basis of an arbitration clause is proper only where "the arbitration clause was broad enough to bar *all* of the plaintiff's claims since it required [defendant] to submit *all* claims to arbitration."  *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).[10]  Defendants concede (at 21–22) that the IP-related claims are not arbitrable.  *See also* AC Ex. 1(a), §16(d)(xii).  That alone refutes their request for dismissal here.

Second, and more fundamentally, in asserting that Plaintiffs must arbitrate their contract and interference claims, WowWee omits key provisions in Roblox's Terms.  Specifically, the Terms' arbitration provision states that, "*Except as explained below*, User and Roblox agree that any dispute arising under or relating to the Roblox [TOS] will be governed and resolved . . . for U.S. residents only, through binding arbitration and not through litigation."  AC Ex. 1(a) §16(a).  The Terms then specify a number of "Exceptions to . . . Arbitration Terms,"  including "claims for infringement of patent, copyright, trademark, or trade secret rights" and where a plaintiff is seeking "only injunctive relief."  *Id.* § 16(d)(xii).  To comply with that requirement, Plaintiffs specifically do *not* seek damages with respect to their contract and interference claims.  AC ¶¶ 198, 217 (stating that "Roblox is entitled to injunctive relief").  Those claims are therefore not arbitrable.

### E.    Plaintiffs' UCL and False Advertising Claims Should Proceed to Discovery

WowWee relegates its argument against Plaintiffs' California unfair competition and false advertising claims to a footnote, arguing they that are "substantially congruent" to the Lanham Act claims "and should be dismissed for the same reasons."  Mot. 21 n.14.  The argument is thus

---

[10] Indeed, the sole decision cited by WowWee in this section of its Motion did not even address dismissal, but instead granted a stay request.  Mot. 22.

LATHAM&WATKINS<sub></sub>LLP
ATTORNEYS AT LAW
SAN FRANCISCO

waived.  *See Cheever v. Huawei Device USA, Inc.*, No. 18-cv-06715, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived and need not be considered.").  The argument is also wrong.  While "Lanham Act claims may substantially overlap with [a plaintiff's] unfair competition claims, California unfair competition law applies more broadly."  *McGurr v. N. Face Apparel Corp*., No. 21-cv-00269, 2021 WL 4706984, at *5 (C.D. Cal. Aug. 27, 2021).  For instance, a "common law unfair competition claim differs from a Lanham Act claim in that California's common law unfair competition tort provides a remedy for wrongful exploitation of trade names and common law trademarks that are not otherwise entitled to legal protection and is therefore broader in scope."  *Rise Basketball Skill Dev., LLC v. K Mart Corp*., No. 16-cv-04895, 2017 WL 2775030, at *3 (N.D. Cal. June 27, 2017).  Additionally, courts have held that UCL claims may proceed under the "fraudulent" prong of that statute even while dismissing related Lanham Act claims.  *See McGurr*, 2021 WL 4706984, at *5.  And the UCL, "unlike the Lanham Act, simply does not contain the commercial advertising or promotion limitation on its face" that WowWee relies on to urge dismissal of Plaintiffs' Lanham Act claims.  *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1048 (C.D. Cal. 1998).

### F.    Plaintiffs Have Successfully Pleaded Breach of Contract

WowWee next takes aim at Plaintiffs' breach of contract claim but fails to reckon with the facts alleged or the actual provisions of the Roblox Terms.

WowWee argues that, even though its Vice President, Ms. Wiseman, created a Roblox account linked to a WowWee business email address and assented to Roblox's Terms, *WowWee* should not be bound.  WowWee ignores, however, that a company's agent has authority to "do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities."  *Avina v. Patenaude & Felix, APC*, No. 20-cv-0166, 2021 WL 5990037, at *13 (S.D. Cal. Dec. 17, 2021).  And it likewise ignores that an agent acting within the scope of its authority binds its principal.  Restatement (Third) Of Agency § 6.03 (Am. Law Inst. 2006).  That is what Plaintiffs have alleged here: Ms. Wiseman, a high-level WowWee employee, created a Roblox account connected to her WowWee business email address, and then openly used that account in

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

21

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

furtherance of her responsibilities at WowWee, including to both create and promote the very WowWee dolls at issue here. AC ¶¶ 112–14. While that alone would suffice, WowWee also ratified Ms. Wiseman's actions by, *inter alia*, having her promote the My Avastars dolls using the Roblox account. AC ¶ 114; *see Interinsurance Exch. v. State Bd. of Equalization*, 156 Cal. App. 3d 606, 614–15 (1984) (acquiescence of principal ratifies conduct). Ms. Wiseman, acting as WowWee's agent and officer, thus bound WowWee to Roblox's Terms. These allegations amply support the inference that Ms. Wiseman was acting within the scope of her duties as WowWee's agent in agreeing to Roblox's Terms—and thus bound WowWee with her assent.

Plaintiffs have also adequately pleaded that WowWee breached numerous provisions of Roblox's Terms in multiple respects, including the User Terms, Community Standards, and the Roblox Name and Community Usage Guidelines. *See* AC ¶¶ 117–22 (describing breaches). For example, the Amended Complaint states that WowWee violated the Terms by using the Roblox Avatars and name outside the Platform and in connection with its own products. The Terms specifically restrict use of Roblox Avatars, explaining that they may be used only "within the Platform." AC Ex. 1(a) § 10. And the Terms also prohibit the use of the Roblox name and brand identity, as well as Roblox Avatars, on "physical products or commercial content" or in connection with the "distribution or sale of any products or services." AC Ex. 1(c) at 2. WowWee violated each of these restrictions. *Supra*, at 3–5, 18.

Additionally, WowWee breached the Terms' prohibition on using products to "sell, either directly or as a bundle: items, exclusive features, or other in-experience enhancements" for the Roblox Platform. AC Ex. 1(b) ¶ 30. WowWee breached this term by marketing and selling its dolls with a code that it claimed could be redeemed "on the Roblox Platform for in-game clothing and other items." AC ¶ 130; *see* AC ¶ 122; AC ¶ 96 (showing advertisement for Roblox code).

WowWee insinuates (at 22–23) that the restrictions on its behavior were newly instituted when Roblox updated its Terms in June of 2022. First, this argument is irrelevant because, on July 6, 2022, WowWee assented to the June 2022 Terms and is therefore bound by them. AC ¶ 115. WowWee does not explain why any prior Terms affect the impermissibility of its continued manufacturing, selling, and advertising of the dolls and use of Roblox intellectual property. But

regardless, WowWee is wrong that the pre-June 2022 Terms permitted its actions, and discovery would demonstrate that a number of the key provisions, or slight variants thereof, have been in force for years.  For instance, discovery would demonstrate that as of 2020, Roblox's Name and Logo – Community Usage Guidelines prohibited the use of the Roblox name or logo to suggest that any product was endorsed by Roblox, and that as of May of 2021, the Terms defined Roblox's "IP" to include visual interfaces, graphics, and artwork, reserved all rights in that IP, and made clear that users were allowed to use Roblox for personal, entertainment use only.  The Terms also made clear that "[t]emplates may be made available to you," such as the Avatar bases, but "your use of a template does not give you any copyrights or other ownership rights in such templates." WowWee has failed to point to any flaw in Plaintiffs' breach of contract claim.

### G.    Plaintiffs Have Successfully Pleaded Intentional Interference

Plaintiffs have also adequately alleged each element of their intentional interference with contractual relations claim.[11]  WowWee first argues (at 23–24) that Plaintiffs have failed to allege facts "regarding WowWee's intent to disrupt" Roblox's contract with Gamefam.  Importantly, to satisfy this element a plaintiff need not allege "that a defendant acted with the *primary purpose* of disrupting the contract," but merely "the defendant's *knowledge* that the interference was certain or substantially certain to occur as a result of his or her action."  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).  Plaintiffs have done so.  On July 8, 2022, Roblox wrote to WowWee specifically to remind it of Gamefam's contractual obligations and of the violations detailed above. AC ¶ 128.  WowWee nonetheless continued to work with Gamefam specifically so that Gamefam would undertake actions that WowWee knew were expressly forbidden by the Terms—that is, the creation and use of Roblox Avatars "in connection with . . . off-platform physical merchandise," AC Ex. 1(a) § 1(b)(iii)(c), along with the creation of an experience in which a code offered off-platform could be redeemed, *see supra*, at 22.  *See generally* AC ¶¶ 130–33.  WowWee thus knew that its continued effort to induce Gamefam to violate Roblox's Terms was "certain or substantially

---

[11] *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

23

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI

1  certain" to cause a breach.  *Reeves*, 33 Cal. 4th at 1148; *see also* AC ¶ 127 (WowWee knew that

2  Gamefam, as a Roblox creator, had assented to the Terms even before receiving Roblox's letter).

3        WowWee also  asserts that Roblox "fails to allege that Gamefam breached its contract with

4  Roblox."  Mot. 24.  Plaintiffs' Amended Complaint, however, alleges just that: "by continuing to

5  market and sell the My Avastars dolls in partnership with Gamefam, WowWee has caused (and

6  continues to cause) Gamefam to breach multiple restrictions in the Roblox Terms of Use."  AC

7  ¶ 131; *see id.* (detailing breaches); AC ¶¶ 13, 128.  And while WowWee alleges that Gamefam's

8  game "was never released," and that Gamefam remains a "top developer on the Roblox platform,"

9  Mot. 24, those allegations appear nowhere in the Amended Complaint, are not properly before the

10  Court, and are entirely irrelevant to many of the alleged breaches.  And in any event, WowWee

11  offers no reason to conclude that, absent an injunction, the game will not be released in the future.

12        WowWee's argument (at 24) that Plaintiffs have failed to plead harm fares no better.

13  California law requires a plaintiff to allege only "that it suffered damages as a result of interference

14  by the defendant."  *Sebastian Int'l, Inc. v. Russolillo*, No. 00-cv-3476, 2005 WL 1323127, at *7

15  (C.D. Cal. Feb. 22, 2005).  Plaintiffs have done so, alleging that WowWee's inducement of

16  Gamefam's breach, which allowed WowWee to market and sell the My Avastars dolls as Roblox

17  dolls, caused both "lost revenue from sales of the Avatar Figurines as some purchasers [chose] to

18  buy the My Avastars dolls as a substitute for the Avatar Figurines," and a loss of potential licensing

19  rights for Roblox Avatars.  AC ¶ 198; *see also* AC ¶¶ 134–42.  These harms, which Plaintiffs

20  alleged stem from an induced breach, AC ¶ 198, support a claim under California law.  *See, e.g.*,

21  *CRST*, 479 F.3d at 1105 (harm alleged where defendant, who lured away the plaintiff's employees,

22  caused "resulting damage in the form of expended, unreimbursed, and hence, lost training costs,

23  and recruiting and advertising costs"); *ET Trading, Ltd v. ClearPlex Direct, LLC*, No. 15-cv-

24  00426, 2015 WL 913911, at *3 (N.D. Cal. Mar. 2, 2015) ("Plaintiff's inability to sell its existing

25  inventory and […] 'dramatic drop' in Plaintiff's sales and income" caused by induced breach was

26  an injury that was "monetarily compensable and c[ould] be remedied with damages").

27    **H.    The Amended Complaint Establishes Jazwares' Standing**

28        WowWee wrongly asserts (at 25) that Jazwares lacks standing as to all claims in the

1    Amended Complaint and thus must be dismissed from this case. As an initial matter, WowWee

2    cites no law whatsoever supporting its effort to question the standing of just one of multiple parties

3    at the motion-to-dismiss stage. That is for good reason: "In a suit with multiple plaintiffs, generally

4    only one plaintiff need have standing for the suit to proceed." *Mecinas v. Hobbs*, 30 F.4th 890,

5    897 (9th Cir. 2022).

6         In any event, WowWee is wrong that Jazwares lacks standing here. To take just one

7    example, "to have standing under section 43(a) [15 U.S.C. § 1125(a)], a plaintiff need only have a

8    commercial interest in the trademark and, in the case of a claim based on false advertising, must

9    also be a competitor of the alleged infringer." *Williams v. SBE Ent. Grp.*, No. 07-cv-7006, 2008

10   WL 11339999, at *1 (C.D. Cal. Nov. 10, 2008); *Lexmark Int'l, Inc. v. Static Control Components,*

11   *Inc.*, 572 U.S. 118, 134 (2014) ("[A] plaintiff suing under § 1125(a) ordinarily must show

12   economic or reputational injury flowing directly from the deception wrought by the defendant's

13   advertising; and that occurs when deception of consumers causes them to withhold trade from the

14   plaintiff."). Jazwares' position as the sole licensee of Roblox's intellectual property in its avatars

15   for the creation of avatar toys—which Jazwares uses to create the Avatar Figurines, AC ¶ 94—

16   confers standing to sue for false designation of origin, as do the allegations of Jazwares'

17   commercial interest in the trade dress, its status as WowWee's competitor, and the allegation that

18   WowWee has used the Roblox name to "divert consumers looking for Roblox toys away from

19   Jazwares." AC ¶¶ 9, 51, 94, 142, 176.[12]

20                                     *      *      *

21         Finally, if the Court is inclined to grant the motion to dismiss, Plaintiffs respectfully request

22   leave to amend the complaint. *See Mish v. TForce Freight, Inc.*, No. 21-cv-04094, 2021 WL

23   4592124, at *3 (N.D. Cal. Oct. 6, 2021) ("leave to amend should be freely granted").

24   **VI.    CONCLUSION**

25         For the foregoing reasons, WowWee's Motion to Dismiss should be denied.

26

27   _____

[12] Because WowWee seeks dismissal of Jazwares from this suit, it suffices for present purposes to
28   show that Jazwares has standing to assert at least one claim; WowWee offers no authority
     suggesting the Court must adjudicate Jazwares' standing on a claim-by-claim basis.

1    Dated:  November 9, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Andrew M. Gass
    Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
    Sarah M. Ray (Bar No. 229670)
    *sarah.ray@lw.com*
    Ivana Dukanovic (Bar No. 312937)
    *ivana.dukanovic@lw.com*
    505 Montgomery Street, Suite 2000
    San Francisco, California 94111
    Telephone:  +1.415.391.0600

    Elana Nightingale Dawson (*pro hac vice*)
    *elana.nightingaledawson@lw.com*
    Tyce R. Walters (*pro hac vice*)
    *tyce.walters@lw.com*
    555 Eleventh Street, NW, Suite 1000
    Washington, DC 20004
    Telephone: +1.202.637.2200

    *Attorneys for Plaintiffs Roblox Corporation
    and Jazwares, LLC*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:22-cv-04476-SI