Michael S. Elkin (admitted *pro hac vice*)
MElkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:      (212) 294-6700

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Cesie C. Alvarez (admitted *pro hac vice*)
CAlvarez@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:      (415) 591-1000

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:      (213) 615-1700

Michael D. Bednarek (admitted *pro hac vice*)
michael@bednareklegal.com
BEDNAREK LEGAL, PLLC
1100 N. Glebe Road, Suite 1010
Arlington, VA 22201
Telephone:      (202) 997-1665

Attorneys for Defendants
WOWWEE GROUP LIMITED, WOWWEE
CANADA, INC., WOWWEE USA, INC., and
GRAMPS GOODS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBLOX CORPORATION et al., | Case No. 3:22-cv-04476-SI |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |
| vs. | **Fed. R. Civ. P. 12(b)(6)** |
| WOWWEE GROUP LIMITED, et al., | Hearing: December 2, 2022 |
| Defendants. | Time: 10:00 a.m. |

1

2

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    THE FAC FAILS TO PLEAD A VALID COPYRIGHT
INFRINGEMENT CLAIM .......................................................................... 2

     A.    Plaintiffs Cannot Sue for Alleged Infringement of Unregistered
"Avatar Bases".................................................................................. 2

     B.    *Fourth Estate* Bars Plaintiffs' Claims for Late-Registered Works............. 3

     C.    WowWee's Accused Works Are Objectively Not Substantially
Similar to Plaintiffs' Alleged Works................................................ 4

III.   THE TRADE DRESS, TRADEMARK AND FALSE DESIGNATION
OF ORIGIN CLAIMS SHOULD BE DISMISSED ..................................... 7

     A.    Nominative Fair Use Applies Instead of *Sleekcraft* at This Stage.............. 7

     B.    Hashtags Outside of a Sale Offer Are Not Actionable ................................. 8

     C.    Plaintiffs' Trade Dress Definition Is Too Vague to Survive........................ 9

     D.    Plaintiffs Fail to Allege Secondary Meaning ................................................ 10

IV.   PLAINTIFFS' NON-IP CLAIMS ARE SUBJECT TO ARBITRATION.......... 11

VI.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS ............................... 12

VII.  PLAINTIFFS' INTENTIONAL INTERFERENCE CLAIM FAILS.................. 14

VIII.  JAZWARES LACKS STANDING........................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL Telecomms. LLC v. SurplusEQ.com, Inc.*,
   2012 WL 1161607 (D. Ariz. Apr. 9, 2012) .............................................................2

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
   2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ..........................................................9

*AOP Ventures, Inc. v. Steam Distrib., LLC*,
   2016 WL 10586307 (C.D. Cal. Dec. 27, 2016) ......................................................8, 9

*Avina v. Patenaude & Felix, APC*,
   2021 WL 5990037 (S.D. Cal. Dec. 17, 2021)..........................................................13

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   2018 WL 1242053 (N.D. Cal. Mar. 8, 2018)..........................................................5, 6

*Bowoto v. Chevron Corp.*,
   2007 WL 2349341 (N.D. Cal. Aug. 14, 2007) ........................................................12

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ..................................................................................8

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
   479 F.3d 1099 (9th Cir. 2007) ................................................................................14

*Cruz v. PacifiCare Health Sys., Inc.*,
   30 Cal. 4th 303 (2003) ............................................................................................11

*Cub Club Investment, LLC v. Apple Inc.*,
   2022 WL 469378 (N.D. Cal. Feb. 16, 2022) .............................................................7

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)................................................................................................15

*Davis v. Bank of Am., Nat. Ass'n*,
   2010 WL 4009892 (N.D. Cal. Oct. 13, 2010)..........................................................12

*Denims v. Ram Imps., Inc.*,
   2020 WL 11884712 (C.D. Cal. Dec. 10, 2020) .......................................................10

*Dr. Seuss Enterprises v. ComicMix LLC*,
   983 F.3d 443 (9th Cir. 2020) ....................................................................................6

*Eksouzian v. Albanese*,
   2015 WL 4720478 (C.D. Cal. Aug. 7, 2015).............................................................9

*Elkay Int'l Ltd. v. Color Image Apparel, Inc.*,
  2015 WL 13917733 (C.D. Cal. June 3, 2015) ...........................................................14

*ET Trading, Ltd v. ClearPlex Direct, LLC*,
  2015 WL 913911 (N.D. Cal. Mar. 2, 2015) (N.D. Cal. Mar. 2, 2015) ......................15

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) ..........................................................................................1, 2, 3, 4

*Gorski v. The Gymboree Corp.*,
  2014 WL 3533324 (N.D. Cal. July 16, 2014) ..............................................................8

*Hallstrom v. Tillamook Cnty.*,
  493 U.S. 20 (1989) ......................................................................................................4

*Hot Focus Inc. v. Best Accessory Grp. LLC*,
  2022 WL 3013032 (C.D. Cal. June 23, 2022) ............................................................10

*Int'l Order of Job's Daughters v. Lindeburg and Co.*,
  633 F.2d 912 (9th Cir. 1980), *cert. denied*, 452 U.S. 941 (1981)...........................12

*Izmo, Inc. v. Roadster, Inc.*,
  2019 WL 2359228 (N.D. Cal. June 4, 2019) ...........................................................3, 4

*Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*,
  2021 WL 62316 (D.N.J. Jan. 7, 2021) ........................................................................9

*Khaled v. Bordenave*,
  2019 WL 1894321 (S.D.N.Y. Apr. 29, 2019)..............................................................9

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
  676 F.3d 841 (9th Cir. 2012) ......................................................................................6

*LEGO v. Best-Lock*,
  404 F. Supp. 3d 583 (D. Conn. 2019) .........................................................................7

*Leyva v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ....................................................................................11

*Lickerish Ltd. v. Maven Coal., Inc.*,
  2021 WL 3494638 (C.D. Cal. Jan. 29, 2021) ..............................................................4

*Malibu Media, LLC v. Doe*,
  2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)................................................................3

*Moonbug Entertainment v. Babybus (Fujian) Network Tech. Co.*,
  2022 WL 580788 (N.D. Cal. Feb. 25, 2022) ...............................................................6

*Oracle Corp. v. SAP AG*,
  734 F. Supp. 2d 956 (N.D. Cal. 2010) .......................................................................12

iii

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
   527 F.3d 1218 (11th Cir. 2008) ...................................................................2

*Oskar Sys., LLC v. Club Speed, Inc.*,
   745 F. Supp. 2d 1155 (C.D. Cal. 2010) ......................................................2

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
   2020 WL 3032765 (C.D. Cal. Jan. 24, 2020) .............................................4

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
   2017 WL 2775030 (N.D. Cal. June 27, 2017)...........................................12

*Sanders v. Sodexo, Inc.*,
   2015 WL 4477697 (D. Nev. July 20, 2015) .............................................12

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ...................................................................11

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ...................................................................5

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ...................................................................11

*Synopsys, Inc. v. Atoptech, Inc.*,
   2016 WL 80549 (N.D. Cal. Jan. 7, 2016) ..................................................2

*Ty, Inc. v. GMA Accessories, Inc.*,
   132 F.3d 1167 (7th Cir. 1997) ...................................................................6

*UAB "Planner5D" v. Facebook, Inc.*,
   2020 WL 4260733 (N.D. Cal. July 24, 2020)............................................2

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
   2019 WL 6034116 (N.D. Ill. Nov. 14, 2019). ...........................................4

*Ultrapure Sys., Inc. v. Ham-Let Grp.*,
   921 F. Supp. 659 (N.D. Cal. 1996) ..........................................................15

*Weekley v. Guidant Corp.*,
   2005 WL 2348476 (E.D. Ark. Sept. 23, 2005).........................................3

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
   18 F.3d 502 (7th Cir. 1994) .......................................................................7

*Williams v. SBE Ent. Grp.*,
   2008 WL 11339999 (C.D. Cal. Nov. 10, 2008).......................................15

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

17 U.S.C. § 411(a) ...................................................................................................................3

17 U.S.C. § 501(b) .................................................................................................................15

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...........................................................................12

Lanham Act....................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 3 .....................................................................................................................3

Restatement (Third) of Agency (2006)...........................................................................12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

Plaintiffs' Opposition fails to rehabilitate their deficient and overreaching claims.

For their copyright claims, Plaintiffs acknowledge, as they must, that a preexisting registration is necessary to maintain a copyright claim but attempt to sidestep that requirement by asking the Court to presume that Plaintiffs' own copyrights they never registered and ignore Supreme Court and this Court's decisional law. Claims based on Plaintiff's so-called "Avatar Bases" cannot survive because those works are unregistered, and the so-called "effective registration doctrine" does not apply here. Similarly, *Fourth Estate* and this Court's case law preclude Plaintiffs attempt to evade the pre-suit registration requirement by adding late-registered works through amendment—particularly because here, Plaintiff's initial Complaint *actually alleged* infringement of the unregistered works, but just strategically omitted to specifically identify them. Finally, in a desperate effort to support their allegations of substantial similarity, Plaintiffs rely on manipulated graphics and mischaracterized, inapposite case law. The scope of protection for Plaintiffs' works is narrower than the unfettered scope that Plaintiffs' vague allegations attempt to stake out, and inspection of the works themselves plainly show that WowWee's dolls are not substantially similar to Plaintiffs' works at issue.

For their Lanham Act claims, Plaintiffs ignore caselaw that requires dismissal, and seek to divert attention with a premature *Sleekcraft* analysis, ignoring that the Ninth Circuit's nominative fair use test *replaces* the *Sleekcraft* analysis for purposes of a motion to dismiss. Nominative fair use plainly applies here: Plaintiffs' allegations show that WowWee's references to Roblox were just that: accurate references to Roblox, not suggestions that Roblox endorsed WowWee or was the source of WowWee's products. And Plaintiffs concede that their overly broad alleged trade dress fails to claim any particular color, facial features, size or other elements, rendering them impermissibly vague.

Plaintiffs attempt to confuse the issues on arbitration by suggesting that all issues must be subject to arbitration for any to be. That is not supported by the law. And WowWee's creation of its unique line of fashion dolls cannot lead to liability for Plaintiffs' other alleged business or contract claims.

Finally, Plaintiffs do not even attempt to argue that Jazwares has adequately alleged standing other then as to their Lanham Act false association claim, and there too the allegations are insufficient.

The FAC should be dismissed in its entirety.

## II.     THE FAC FAILS TO PLEAD A VALID COPYRIGHT INFRINGEMENT CLAIM

### A.     Plaintiffs Cannot Sue for Alleged Infringement of Unregistered "Avatar Bases"

Plaintiffs argue that they may assert claims for the unregistered "Avatar Bases"—ignoring *Fourth Estate*, which precludes any such claim for unregistered works. Plaintiffs also fail to address the *Oskar Systems* line of cases holding that a plaintiff may not bring suit for purported infringement of an unregistered "underlying" work "by belatedly characterizing the[ir] registered work as derivative of [it]." ECF 45 Defendants' Motion to Dismiss ("Mot.") (quoting *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1164 (C.D. Cal. 2010)); *see UAB "Planner5D" v. Facebook, Inc.*, 2020 WL 4260733, at *4 (N.D. Cal. July 24, 2020) ("[plaintiff] cannot rely on the principle of derivative works to save the fact that its registration certificates do not identify any prior versions of the works on which the registered versions were based").

Instead, Plaintiffs argue that unregistered works can be imported *sub silentio* into this litigation because of a so-called "effective registration doctrine" that predates *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,* 139 S. Ct. 881 (2019). *See* ECF 51 (Plaintiffs' Opposition to Defendants' Motion to Dismiss) ("Opp.") at 9, n.5. This argument fails for at least two independent reasons.

First, a "[Plaintiff] cannot avail itself of the effective registration doctrine[ ] [if] its applications for registration of the derivative works fail to identify with sufficient specificity the unregistered preexisting works on which such derivative works are based." *Synopsys, Inc. v. Atoptech, Inc.*, 2016 WL 80549, at *1 (N.D. Cal. Jan. 7, 2016); *Oskar Sys.*, 745 F. Supp. 2d at 1163 ("Adopting [a different] rule would frustrate the purpose of copyright registration and open the door to fraud."); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229 (11th Cir. 2008) (rejecting claims for "unregistered preexisting works" where the "registration certificate d[id] not identify any [of them]"). Plaintiffs' registrations fail to do so. *See* Mot. 7:14-21.

Second, as Plaintiffs' cited case demonstrates, the doctrine is applicable only where follow-on works "share" *verbatim* material from an earlier version of a computer program, map, compilation of textual works or drawings, or the like. *AFL Telecomms. LLC v. SurplusEQ.com, Inc.*, 2012 WL 1161607, at *3 (D. Ariz. Apr. 9, 2012) (permitting claim based on unregistered prior version of software where "all versions share[d] substantial original, copyrightable content" and "some or all of the prior versions

1   … [we]re still part of the work"). Plaintiffs do not allege exact copying of any protectable elements of

2   the unregistered Avatar Bases, and even a cursory inspection of the asserted works plainly shows that

3   they could not plausibly do so. For these reasons, even if the so-called "effective registration" doctrine

4   remains good law in the wake of *Fourth Estate*, the unregistered Avatar Base figures would not come

5   close to qualifying for it. To the extent Plaintiffs' claims rest on purported copying of elements in those

6   two purported works, they must be dismissed.

7          **B.     *Fourth Estate* Bars Plaintiffs' Claims for Late-Registered Works**

8          Plaintiffs cite distinguishable out-of-circuit authority to argue that they can bring tardy claims

9   for works that were registered only after they "instituted" this "civil action." Opp. 8-9. Because their

10  arguments are flatly contrary to the Copyright Act's plain language, the Supreme Court's clear

11  instruction in *Fourth Estate*, and this Court's decisional law, Plaintiffs' claims based on those late-

12  registered works must be dismissed. Under 17 U.S.C. § 411(a), "no civil action for infringement" may

13  be "instituted" until "registration of the copyright claim has been made." As the Supreme Court has

14  explained, this means a copyright claimant may only "*commence* an infringement suit[ ] when the

15  Copyright Office registers a copyright[,]" and not before. *Fourth Estate*, 139 S. Ct. 881, 886 (2019)

16  (emphasis added). And this Court's *Izmo v. Roadster* decision has squarely held that "*Fourth Estate* bars

17  the addition of infringement claims relating to copyrighted material registered *after the commencement*

18  *of the lawsuit*." *Izmo*, 2019 WL 2359228, at *2 (emphasis added).[1] These authorities mandate dismissal

19  of the Late-Registered Works from this action. "A civil action is commenced [i.e. 'instituted'] by filing

20  a complaint with the court." Fed. R. Civ. P. 3. It is not, and cannot be, "commenced" or "instituted" by

21  an amended complaint. *See, e.g.*, *Weekley v. Guidant Corp.*, 2005 WL 2348476, *2 (E.D. Ark. Sept. 23,

22  2005) ("By definition, a civil action must already have been commenced before a pleading can be

23  amended."); *Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *3 (S.D.N.Y. Apr. 2, 2019) ("for

24  purposes of Section 411(a), an action is 'instituted' only once: when the plaintiff files the initial

25  complaint."); *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (same).

26  _____

27  [1] Plaintiffs fail to distinguish *Izmo*: instead of actually *quoting* the case, they create a misleading,
    inaccurate mash-up of a *different* court's summaries of unrelated portions of *Izmo* and *Fourth Estate*.
    *See* Opp. 9:13-17. The rule set forth in *Izmo*, which squarely addresses the scenario presented here,

28  precludes a plaintiff from adding late-registered works to an already-initiated civil action by amendment.

1    Plaintiffs cherry-pick out-of-district authority in an attempt to "route around" *Fourth Estate* and
2    *Izmo* with cases that are inconsistent with *Fourth Estate* and *Izmo*. *Ubiquiti Networks, Inc. v. Cambium*
3    *Networks, Inc.*, an unpublished one-page decision from an Illinois court, cites *Izmo* to "support" a rule
4    that is exactly the opposite of *Izmo*'s. 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019). *Philips v. KPI*
5    *Healthcare* (which relies on *Ubiquiti*) and *Lickerish v. Maven Coalition* (which relies on *Philips*) simply
6    compound the error. *Philips N. Am. LLC v. KPI Healthcare, Inc.*, 2020 WL 3032765, at *2 (C.D. Cal.
7    Jan. 24, 2020); *Lickerish Ltd. v. Maven Coal., Inc.*, 2021 WL 3494638, at *1 (C.D. Cal. Jan. 29, 2021).

8    Moreover, contrary to Plaintiffs' argument that these claims are not "premature" because
9    Plaintiffs strategically chose not to *specifically* identify those unregistered works, the initial Complaint
10   alleges infringement of *all* Plaintiffs' broadly-defined "Roblox avatars," including these. ECF 36
11   (Plaintiffs' First Amended Complaint) ("FAC" ¶¶ 4, 29, 30 (defining "Roblox avatars"); *id.* ¶¶ 146-150
12   (alleging infringement of "Roblox avatars"). Plaintiffs' attempt to bring these untimely claims now is
13   pure gamesmanship: because the alleged infringement of their late-registered works predates the filing
14   of the original complaint, those claims could—and under *Fourth Estate*, must—have been pleaded at
15   that time. Crafting an unwarranted exception to § 411(a) and *Fourth Estate* to allow inclusion of late-
16   registered works would also sow confusion and invite other forms of gamesmanship, including (for
17   example) delaying pleading claims in order to use an initial filing date to evade the statute of limitations.[2]

18   The Court should reject Plaintiffs' attempt to replace the Copyright Act's plain language, the
19   Supreme Court's unambiguous interpretation of it, *and* this Court's bright-line rule, with an invented,
20   legally baseless "premature claims" test. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989)
21   (rejecting alternative reading where "a literal reading of the statute" plainly established "a mandatory,
22   not optional, condition precedent for suit."). Plaintiffs' claims must be dismissed to the extent they rely
23   on alleged infringement of the late-registered avatars or the Jazwares mini action figures.[3]

**C.    WowWee's Accused Works Are Objectively Not Substantially Similar to Plaintiffs' Alleged Works**

26   As an initial matter, Plaintiffs' insistence that WowWee "admitted" it "actually copied" Roblox's

---

[2] *Fourth Estate* specifically rejected arguments that the pre-suit registration requirement should be relaxed to avoid potential statute of limitations issues. *See* 139 S. Ct. at 891-92.
[3] As discussed at n.5, Plaintiffs appear to abandon any theory that WowWee copied Jazwares figurines.

digital avatars is nonsense. FAC ¶79. At most, Plaintiffs' allegations show only that WowWee's Ms. Wiseman was "inspired" by Roblox's games to realize that offering dolls with "customization" "would be a great doll line," and that it would be possible to "ma[k]e a doll" whose face would be "fun to customize[.]" Opp. 3:28-4:1, 4:4-8. Inspiration is not infringement. The idea of making a customizable doll is not protectable. And contrary to Plaintiffs' apparent theory of the case, copyright infringement is not a but-for test: allegations that WowWee had *access* to Roblox's asserted avatars[4] or invoked the Roblox platform does not lighten Plaintiffs' burden to show substantial similarity between the actual works at issue. *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1066 (9th Cir. 2020) (rejecting the notion that showing "a high degree of access" to allegedly infringed works warrants "a lower standard of proof of substantial similarity").

Plaintiffs' attempt to paper over fundamental flaws in their copyright claims do not withstand scrutiny. First, faced with the undeniable reality that their claimed digital *avatars* do not resemble WowWee's dolls, Plaintiffs pivot to misleading and manipulated visual comparisons of WowWee's dolls with the Jazwares mini action figures. *Compare* Mot. 16:4-8 *with* Opp. 10. Tellingly, Plaintiffs' side-by-side images are tiny on the pages and not to scale, in a vain attempt to make them seem "similar" merely because—like virtually every doll ever made—they all have arms, legs, bodies, heads, hair, and faces, in generally human proportions. Indeed, Plaintiffs concede that the *reason* WowWee's dolls "fit in" with the Jazwares mini action figures is "because … they all share the same" commonplace, obviously unprotectable features. Opp. 10:17-20.[5] Plaintiffs also seek to lower the bar for themselves by claiming—incorrectly—that in a completely unrelated case, just "two … images" from different videogames "evidenced sufficient similarity to warrant denial of a motion to dismiss." Opp. 11:3-11. Not so: the copyright claims in the *Blizzard* case encompassed a dozen videogames and untold numbers of "plausibly copyrighted characters, depictions of landmarks, … artwork, and musical compositions."

---

[4] Plaintiffs make only conclusory allegations of copying with respect to the Jazwares figurines.

[5] Plaintiffs appear to concede that WowWee's dolls and Jazwares figurines are similar "because they are all *based on* the same underlying copyrighted works[.]" Opp. 10:11-17 (emphasis added); *see* FAC ¶ 83 (alleging similarities "as a result" of WowWee's alleged copying of "Roblox's [digital] avatars"), ¶ 94 ("similarities" are due to Jazwares and WowWee having "created dolls of the same… avatars"). Because there can be no infringement absent actual copying, Plaintiffs' arguments imply that the Jazwares figurines (which were registered too late anyway) are irrelevant to Plaintiffs' copyright claims.

1  *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 2018 WL 1242053, at *4 (N.D. Cal. Mar. 8, 2018);

2  *see id.*, Dkt. Nos. 36-1 through 36-4 (filed Jan. 8, 2016). As the opinion plainly shows, Plaintiffs'

3  contention that the *Blizzard* case involved "far fewer similarities than the works here" is just wrong.

4  Plaintiffs do not dispute that the elements they claim are commonplace, but they attempt to

5  reframe the inquiry by raising up a straw man, arguing that the "original selection, coordination, and

6  arrangement" of unprotectable elements can create a "combination […] [of] distinctive elements" that

7  may be "protectable." Opp. 11:24-12:5. What is at issue here is the *scope* of such protection, not whether

8  protection exists at all. Opp. 12:16-20.[6] As common sense, common knowledge, and numerous

9  documents from the public record amply show, none of Plaintiffs' claimed elements are original or

10  protectable in the abstract—and there is nothing remotely original about combining *all* of them into a

11  humanoid figurine. *See, e.g.*, Mot. 14:1-20 (and exhibits cited there). Because of the generic quality of

12  Plaintiffs' claimed elements—whether considered separately, or as predictably combined under the

13  constraints of creating a "humanoid" figure—their works are entitled to only "thin" protection. They are

14  not entitled to broad protection that would preclude others from making "blocky" dolls with "cylindrical

15  heads" and noseless faces whose expressions are "cartoon-like" (whatever that means).

16  Attempting to support their straw man argument, Plaintiffs mistakenly claim that the Seventh

17  Circuit in *Ty* obviated the substantial similarity requirement by finding "actionable copying" whenever

18  two works "resemble each other more than they resemble the real-world subject of the work." *See* Opp.

19  12:20-13:3. *Ty* did no such thing. The case stands for the unremarkable proposition that where an alleged

20  copy resembles something else as much as it resembles the allegedly infringed work, even a "striking

21  similarity" between the two works will not suffice to support an inference that the *plaintiff's* work was

22  copied. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997) (explaining that if two

23  works are "strikingly similar … because both are copies of the same thing … there is no inference of

24

25  [6] Plaintiffs' cited cases are irrelevant for the same reasons. *Alfred v. Walt Disney* and *L.A. Printex Indus.,*

26  *Inc. v. Aeropostale, Inc.,* are merely anodyne statements of the legal standard. 821 F. App'x 727, 729
     (9th Cir. 2020); 676 F.3d 841, 849 (9th Cir. 2012). The defendant in *Moonbug Entertainment v. Babybus*

27  *(Fujian) Network Technology Co.* had argued that Plaintiffs' works were not "protectable in copyright"
     *at all.* 2022 WL 580788, at *9 (N.D. Cal. Feb. 25, 2022). And the snippet Plaintiffs quote from *Dr.*

28  *Seuss Enterprises v. ComicMix LLC* is self-evidently a throw-away *reductio ad absurdum* offered in
     dicta, not a response to any argument. 983 F.3d 443, 456 n.5 (9th Cir. 2020).

1    access to anything but the public domain[.]").

2      Ultimately, as Plaintiffs concede, what matters here is "the specific way" their generic doll

3    features "appear." Opp. 12:10. But that is precisely the point: beyond embodying a general notion (yet

4    distinct expression) of blocky dolls with (for example) "cartoon-like facial expressions [with] no nose,"

5    WowWee's dolls and Plaintiffs' alleged works do not "appear" substantially similar, particularly in light

6    of Plaintiffs' undeniably (and undisputedly) "thin" scope of protection. FAC ¶ 10. Plaintiffs cite *LEGO*

7    *v. Best-Lock*, which strongly supports WowWee's position: that court confirmed that "the basic features

8    at issue… constitute[d] unprotectable 'ideas' of the human form in the abstract[,]" and only found

9    infringement because the two minifigures at issue "contain[ed] virtually identical expressions of those

10   features" and the defendant's figures "virtually replicate[d] Lego's expression[.]"[7] 404 F. Supp. 3d 583,

11   614–15 (D. Conn. 2019); *See also* Opp. 13:4-11. "So too here," indeed. *See* Opp. 13:11.

12     Finally, Plaintiffs assert the meritless position that *differences* in works do not matter. *See* Opp.

13   13:12-27. Of course they do. Plaintiffs' argument, which again mischaracterizes an inapposite, out-of-

14   district case, ignores two obvious points: first, there are significant and substantial differences in "the

15   specific way" the dolls "appear"[8]; and second, these striking differences are in stark contrast to the

16   limited, vague, and largely unprotectable "similarities" that are *all* Plaintiffs plead. Opp. 12:9-15, FAC

17   ¶ 93 Even if substantial similarity "can" be shown in the face of "some dissimilarities," Opp. 13:20, that

18   is simply not the case where, as here, a plaintiff fails to meet its burden to plead more than a predictable

19   assemblage of generic elements. Particularly in light of Plaintiffs' thin scope of protection for the simple,

20   commonplace elements of their Lego-shaped, Lego-faced figures, the differences are dispositive.

## III. THE TRADE DRESS, TRADEMARK AND FALSE DESIGNATION OF ORIGIN CLAIMS SHOULD BE DISMISSED

### A. Nominative Fair Use Applies Instead of *Sleekcraft* at This Stage

24     Plaintiffs seek to inject an analysis under the *Sleekcraft* factors that WowWee did not rely on in

---

[7] Plaintiffs ignore the same arguments their counsel made in *Cub Club Investment, LLC v. Apple Inc.*, 2022 WL 469378, at *1 (N.D. Cal. Feb. 16, 2022).
[8] Plaintiffs mischaracterize *Wildlife Express v. Carol Wright Sales* to claim that even many differences cannot "negate" substantial similarity. Opp. 13:21-24. But they string together citations to three separate cases, each of which concerned only a small number of "minor or trivial variations." 18 F.3d 502, 511 (7th Cir. 1994). The works at issue in *Wildlife Express* showed "a remarkable resemblance" with only "minor" differences. *Id.* Here, there is no substantial similarity, and thus nothing to "negate."

1   its Motion because the defects in Plaintiffs' Lanham Act claims arise before even reaching the *Sleekcraft*

2   analysis. As stated in WowWee's Motion (Mot. 20:24-26), the nominative fair use test, applicable here,

3   *replaces* the *Sleekcraft* analysis. *See Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1150 (9th Cir. 2002)

4   (the nominative fair use factors *replaces* the traditional *Sleekcraft* factors for likelihood of confusion

5   where nominative fair use is at issue). In disputing the applicability of nominative fair use, Plaintiffs

6   avoid discussing its primary purpose: to protect fair speech that accurately refers to products or services.

7   In every instance alleged, WowWee references Roblox to accurately reference the Roblox platform—

8   not to suggest the My Avastars Fashion Dolls, which do not mention or reference Roblox on the

9   packaging or through any sales or other company websites, were sponsored by or affiliated with Roblox.

10  Symptomatic of Plaintiff's failure are their allegations that Ms. Wiseman, communicating on TikTok,

11  stated that she was working with "top Roblox developers"— a factual reference to Gamefam that

12  Plaintiffs allege is *true*. FAC ¶¶ 12-13, 69-71, 76-77.[9]

13       Plaintiffs cite only one case to support their argument that these sorts of cases "regularly survive

14  attempts to dismiss on the basis of nominative fair use"—*Gorski v. The Gymboree Corp*., 2014 WL

15  3533324, at *7 (N.D. Cal. July 16, 2014); Opp. 20:2-4. But there, defendant had reproduced plaintiff's

16  entire trademarked phrase "*LETTUCE TURNIP THE BEET*" on shirts, seeking to divert purchasers to

17  buy its "knock-off" clothing. *Id.* at *1. Here, Plaintiffs allege WowWee made accurate references to

18  Roblox, a use *Gorski* would permit. *See id.* at 6 (nominative fair use applies where reference is used "to

19  describe the plaintiff's product" and does not try to "appropriate… one product for a different one").

20  Plaintiffs do not plead plausible facts showing that WowWee was trying to "appropriate… one product

21  for different one": here, the My Avastars Fashion Dolls for Jazwares' mini-action figures. *Gorski* at *6.

22       **B.    Hashtags Outside of a Sale Offer Are Not Actionable**

23       *AOP Ventures* held that where the hashtag use is not alleged on advertisements or products, it is

24  not actionable under the Lanham Act. 2016 WL 7336730 (C.D. Cal. Oct. 11, 2016). Plaintiffs make a

25  procedural argument that *AOP* "was vacated on reconsideration," but the reconsideration order did not

26  disturb the ruling concerning hashtags. *See AOP Ventures, Inc. v. Steam Distrib., LLC*, 2016 WL

27

28  [9] The unauthenticated comments relied upon fail to establish actual confusion. Instead, one predicted that there would be a lawsuit and another provided an interpretation of the TOU. FAC ¶¶ 103, 105.

10586307 at *2 (C.D. Cal. Dec. 27, 2016) (reconsideration based on issues unrelated to hashtags). Plaintiffs also wrongly claim that *AOP* is the "sole case" supporting WowWee's position that hashtags are not actionable where they fall within the fair bounds of communication regarding trade, as opposed to constituting part of a proposed transaction of trade. Opp. 19, n9. However, *Eksouzian v. Albanese* also held that a hashtag is not actionable where, as here, it "is merely a functional tool to direct the location of Plaintiffs' promotion so that it is viewed by a group of consumers, not an actual trademark." 2015 WL 4720478 at *8 (C.D. Cal. Aug. 7, 2015) (explaining that "the hash symbol and the wording HASHTAG do not provide any source-indicating function because they merely facilitate categorization and searching within online social media[.]") Similarly, here WowWee used the Roblox hashtag "directionally" when it was initially planning to release an Experience on the Roblox platform with Gamefam using the My Avastars characters. *See id.*

Plaintiffs rely predominantly on *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *10 (N.D. Cal. Apr. 12, 2019), where the post containing the hashtag included a website link proposing a commercial transaction encouraging users to "shop now." *See* Opp. 19:5-9. WowWee never used the "Roblox" name in the context of offering products for sale. The Roblox name is not alleged to appear anywhere on packaging, and no website offering the My Avastars Fashion Dolls for sale are alleged to have referenced Roblox at all, let alone to propose transactions.[10] They were used for their functional purpose of "indexing," "cataloguing," and facilitating online searches.[11] *See Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, 2021 WL 62316, at *2 (D.N.J. Jan. 7, 2021) ("Hashtags allow people to easily follow topics they are interested in . . .").

### C. Plaintiffs' Trade Dress Definition Is Too Vague to Survive

Plaintiffs do not dispute that they fail to assert any particular color scheme or facial features of their vague and overly broadly defined "trade dress." *See* Opp. 15:9-16:12. Without these elements, their trade dress describes generic elements that have no protectible or discernible look and feel. Plaintiffs

---

[10] This case is further distinguishable as in *Align* the hashtags were used in networking sites or the company's professional accounts and here they were used on TikTok.

[11] Plaintiffs also rely on *Khaled v. Bordenave*, 2019 WL 1894321, at *5 (S.D.N.Y. Apr. 29, 2019), but *Khaled* does not address whether the hashtags at issue accompanied a sales link or other purchase offer and does not provide the same level of analysis as the cases confronting this issue in this District.

1  also fail to distinguish WowWee's cited cases beyond insisting that the plaintiff in *Denims v. Ram Imps.,*

2  *Inc.* "alleged trade dress consisted of 'the design, color, shape, texture, and overall appearance of'

3  clothing shown in photographs, but failed to 'explain which designs, colors, shapes, or textures

4  constitute the trade dress, or how these elements interact.'" Opp. 16, n.7 (citing *Denims v. Ram Imps.,*

5  *Inc.*, 2020 WL 11884712, at \*2 (C.D. Cal. Dec. 10, 2020). That is the point: Plaintiffs allege trade dress

6  without explaining "which designs, colors" or facial features constitute the trade dress. *Id.*

7      Plaintiffs also argue that they have an identifiable trade dress despite alleging that "over 50

8  million daily users" are on the Roblox platform and each are "personified as their customizable Roblox

9  avatars." FAC ¶¶ 58, 135. Plaintiffs try to argue that despite millions of iterations of these avatars, they

10  somehow have pled a distinct trade dress, when their overly broad definition accounts for an endless

11  number of customized avatars. Plaintiffs thus move away from the avatars and try to compare images of

12  the Jazwares mini action figures to the My Avastars Fashion Dolls in their opposition. But these images,

13  and the physical exhibits WowWee submitted, reveal how dissimilar Plaintiffs' claimed trade dress is

14  from the My Avastars Fashion Dolls. Plaintiffs have not, and cannot, allege that the public associates

15  WowWee's dolls with the Jazwares figures and, in turn, Roblox's alleged trade dress.

16      **D.     Plaintiffs Fail to Allege Secondary Meaning**

17      While secondary meaning is typically a question of fact, courts dismiss Lanham Act claims on

18  the pleadings for failure to adequately plead secondary meaning. Mot. 18:1-3; *see also Hot Focus Inc.*

19  *v. Best Accessory Grp. LLC*, 2022 WL 3013032, at \*7-8 (C.D. Cal. June 23, 2022) (dismissing trade

20  dress claim on the pleadings because plaintiff failed to adequately allege secondary meaning where it

21  "broadly" alleged that "consumers and other competitors have come to recognize and/or associate [its]

22  products as being Plaintiffs' products and packaging designs"). Beyond customization (not protectible

23  itself), Plaintiffs fail to link whatever is distinct about Roblox's products to "any feature or overall

24  design" of the My Avastars Fashion Dolls. *See Hot Focus*, 2022 WL 301302, at \*7. Trade dress acquires

25  secondary meaning "when the purchasing public associates ... the dress with a single producer or source

26  rather than with the product itself." *Id.* Where the claimed features are ubiquitous, it is not plausible that

27  Plaintiffs can claim to be the "sole source" of block figures or the other generic elements of its alleged

28  trade dress. Mot. 17:8-18:19.

## IV.   PLAINTIFFS' NON-IP CLAIMS ARE SUBJECT TO ARBITRATION

Plaintiffs' argument that their contract claims are not subject to arbitration because arbitration must apply to *all* claims in suit misstates the law. The case Plaintiffs rely on, *Sparling v. Hoffman Constr. Co.*, is inapposite because it analyzed whether the arbitration clause at issue in the case was broad enough to bar all claims; because it was, the lower court had properly dismissed all claims. 864 F.2d 635, 638 (9th Cir. 1988). But no court in this district has found that for some claims to be arbitrable, all must be. The opposite is true: it is within the Court's discretion to decide whether entering a stay to resolve the arbitrable claims is "efficient for its own docket and the fairest course for parties." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979) (court could stay non-arbitrable claims upon "assurances that [an] arbitration is proceeding with diligence and efficiency"); *see also Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003) (trial court has "discretion to stay proceedings on [severable] inarbitrable claims pending resolution of [their] arbitration").

Plaintiffs also argue that their contract claims cannot be arbitrated because the Roblox Terms of Use ("TOU") carves out claims seeking only injunctive relief, which they argue applies to their contract claims. Notwithstanding Plaintiffs' concession, their allegations are broad enough to encompass damages. *See* FAC ¶¶ 198, 217, 230 (alleging "lost revenue from sales of the Avatar Figurines"). And contract claims are not the only claims subject to arbitration. As WowWee noted, all non-intellectual property claims are arbitrable under the TOU, so if the intellectual property claims are dismissed, the arbitrable claims should proceed in arbitration. *See* Mot. 21-22. Federal law establishes a strong policy in favor of arbitration and requires that arbitration agreements, like Roblox's here, "be rigorously enforced." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). It is well within this Court's discretion to determine whether Plaintiffs' non-IP should be arbitrated if they survive.

## V.   THE UNFAIR COMPETITION AND FALSE ADVERTISING CLAIMS FAIL

Plaintiffs try to overcome their pleading failures on their unfair competition and false advertising claims by arguing that arguments made "only" in a footnote are "generally" deemed waived. But WowWee made its argument—that Plaintiffs' claims "fail on their face" for "failing to plead the basic elements of the claims"—in the body of its motion. Mot. 2:6-9. The footnote simply explained that because Plaintiffs' unfair competition and false advertising claims parallel their trademark claims, they

fail for the same reasons. *See* FAC 21, n. 14. Courts in this district finding footnoted arguments waived did so for other reasons or at the appellate stage. *See e.g., Sanders v. Sodexo, Inc*., 2015 WL 4477697, at *1 (D. Nev. July 20, 2015) (choosing not to consider footnoted argument that was "too inadequately developed for serious consideration"). Indeed, this Court routinely considers arguments in footnotes. *See e.g., Davis v. Bank of Am., Nat. Ass'n*, 2010 WL 4009892, at *6 (N.D. Cal. Oct. 13, 2010); *Bowoto v. Chevron Corp*., 2007 WL 2349341, at *3 (N.D. Cal. Aug. 14, 2007).[12]

Moreover, Plaintiffs do not plead protection over "common law trademarks" despite now arguing that the state law unfair competition claims are broader because they protect common law marks. Indeed, in the case Plaintiffs rely on, the plaintiff did not have a distinctive mark under the Lanham Act and had to rely on the broader protection of California's unfair competition law. *See Rise Basketball Skill Dev., LLC v. K Mart Corp*., 2017 WL 2775030, at *4 (N.D. Cal. June 27, 2017) (noting that although logo at issue might not constitute a valid mark under the Lanham Act, plaintiff had pleaded an unfair competition claim under California's common law). As such, the Ninth Circuit is clear that "[a]n action for unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the Lanham Act," and the test for both is "whether the public is likely to be deceived or confused by the similarity of the marks." *Int'l Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 916 (9th Cir. 1980). Plaintiffs do not address WowWee's substantive arguments on Plaintiffs' false advertising claim.

## VI.  PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS

Plaintiffs misapply the law of agency to the facts they plead. Here, as in *Oracle Corp. v. SAP AG,* a mere assertion that Ms. Wiseman was WowWee's employee when she opened her Roblox account does not suffice to bind WowWee to Robolox's TOU under the federal common law of agency. 734 F. Supp. 2d 956 (N.D. Cal. 2010). To adequately plead that Ms. Wiseman agreed to Roblox's TOU on behalf of WowWee, Plaintiffs must plead that she had actual authority to do so or that WowWee specifically ratified her creation of her Roblox account, her alleged agreement to be bound by the Roblox TOU, *and* her alleged subsequent agreement to materially different terms of the TOU. *See* Restatement

---

[12] Plaintiffs' Opposition also "relegates" arguments to footnotes. *See e.g.,* Opp. 7, n. 2; 9, n. 5.

1  (Third) of Agency, § 7.03 (2006). "The focal point for determining whether an agent acted with actual
2  authority is the agent's reasonable understanding at the time the agent takes action." *Id.* § 2.01 Comment
3  c. But the FAC merely alleges that Ms. Wiseman was "playing roblox" when she was "inspired to create"
4  the My Avastars Fashion Doll line. FAC ¶ 84. This is a far cry from alleging that she reasonably
5  understood she had created her Roblox account on behalf of the company, or that she understood she
6  had agreed to Roblox's TOU as WowWee's authorized agent and on its behalf. Rather than attempt to
7  support such a baseless theory, Plaintiffs argue for the first time that WowWee "ratified" Ms. Wiseman's
8  creation of a Roblox account when she "promote[d] the My Avastars dolls" *on TikTok*. Opp. 22:2-8.
9  The FAC manifestly fails to support this conclusion. A principal can "ratify" a third party's acts in one
10 of two ways: either by a "'knowing acceptance of the benefit'," or under a "'willful ignorance' theory"
11 where the principal "has 'ratified with awareness that … [its] knowledge [of material facts] was
12 lacking.'" *Avina v. Patenaude & Felix, APC*, 2021 WL 5990037, at *14 (S.D. Cal. Dec. 17, 2021)
13 (quoting Restatement § 4.01 cmts. d, b). The FAC fails to plead either. It is absurd to argue that Ms.
14 Wiseman's alleged activities *off* the Roblox platform plausibly support an inference that WowWee
15 (a) "ratified" her creation of a Roblox account in the first place, *and* (b) agreed to be bound by every
16 iteration of the Roblox TOU thereafter, *including* future unconscionable terms that did not exist and
17 were not then foreseeable.[13]

18      Plaintiffs also fail to plausibly allege any actual breach by WowWee. While they argue that
19 WowWee breached Roblox's TOU when it sold dolls with a code that was eventually intended to be
20 redeemable on Roblox (FAC ¶ 130, Opp. 22:19-23), they fail to allege that the codes were ever
21 utilized—nor could they do so, since the My Avastars: RP experience was never released, a fact
22 Plaintiffs do not dispute. The lack of plausible allegations dooms Plaintiffs' breach of contract claims.[14]

23

24

---

25 [13] Even if WowWee had been bound by a contemporaneous Roblox TOU—which it was not—the FAC
26 does not plead that WowWee is bound by Roblox's changes *after* the My Avastars doll had already been created. Because the FAC addresses only the inapplicable post-June 22, 2022 TOU, *ipso facto* it contains no plausible allegations that WowWee assented to or breached any relevant terms.
27 [14] For example, Plaintiffs claim breach because they allege WowWee used "the Roblox name" in connection with "the distribution or sale of any products" but allege no plausible facts in support of this
28 claim; and as discussed above, the use of the Roblox name was not in accordance with a sale.

## VII.   PLAINTIFFS' INTENTIONAL INTERFERENCE CLAIM FAILS

Plaintiffs argue that they adequately plead the intent and damages elements of this claim, while simply ignoring the key element: an "actual breach or disruption of the contractual relationship" between Roblox and Gamefam. In truth, Plaintiffs fail to plead any of these three required elements. *See CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007). With respect to intent, Plaintiffs argue WowWee "knew" it would interfere somehow with Gamefam's contract with Roblox after it received Roblox's July 8, 2022 demand letter. *See* FAC ¶ 78. They thus fail to support that WowWee had the requisite intent *before* July 8, 2022 and that Gamefam's relationship with Roblox was disrupted *after* that time. Instead, they allege absurdities: that WowWee "induced" Gamefam to "breach" a contract that *did not exist at the time*, or else that WowWee's unilateral *subsequent* acts retroactively "put Gamefam in breach" of those then-non-existent terms. Opp. 23-24; FAC ¶¶ 131-133. These vague allegations are plainly insufficient to support the claim. Plaintiffs' allegation that WowWee marketed its products by referring to "code[s] … for in-game [items]" (FAC ¶130) offers "no plausible allegations that could support an inference that [WowWee] … [had] an intentional 'design' to disrupt or interfere with any of [Roblox's] third party contracts." *See Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, 2015 WL 13917733, at *6 (C.D. Cal. June 3, 2015). Plaintiffs fatally fail to plead that any such codes were ever used or implemented *by Gamefam*. There is no merit to Plaintiffs' argument that WowWee's alleged marketing references to such codes "caused" Gamefam to violate terms prohibiting something that never occurred. Plaintiffs cannot evade their burden to allege a plausible factual basis for their claims by disingenuously omitting to make any supporting allegations at all, nor with baseless speculation that the game could conceivably "be released in the future." *See* Opp. 24:9-11.

As to damages, Plaintiffs fail to identify any concrete harm they suffered from Gamefam's alleged (but non-existent) breach, and as Plaintiffs acknowledge, Gamefam is still developing content on the Roblox platform. FAC ¶ 68. Plaintiffs' conclusory, content-free claims of unspecified "harm and injury," FAC ¶ 198, focus exclusively on WowWee's purported acts and plead no plausible causal link (or any link at all) between WowWee's unilateral acts and any alleged breach by Gamefam. Plaintiffs' cited cases are strikingly inapposite: in both, the plaintiff had pled concrete damages that were traceable to an identifiable breach. *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105

14

1    (9th Cir. 2007) (plaintiff adequately alleged "damage in the form of expended, unreimbursed... training
2    costs, and recruiting and advertising costs"). The Court in *ET Trading* did not find the damages
3    allegations sufficient for pleading purposes: it merely held that the *type* of damages alleged were
4    insufficient to justify a preliminary injunction because they were, in principle, "monetarily
5    compensable." *ET Trading, Ltd v. ClearPlex Direct, LLC*, 2015 WL 913911, at *3 (N.D. Cal. Mar. 2,
6    2015) (N.D. Cal. Mar. 2, 2015). Plaintiffs' vague allegations here are nothing alike.

7    **VIII.   JAZWARES LACKS STANDING**

8         Jazwares indisputably lacks standing to pursue copyright claims: Plaintiffs neither plead nor
9    argue the contrary. *See* FAC ¶¶ 152, 154. Jazwares lacks standing to bring a trademark infringement
10   claim because it does not plead an exclusive license. *Ultrapure Sys., Inc. v. Ham-Let Grp.*, 921 F. Supp.
11   659, 665 (N.D. Cal. 1996) (licensee lacks standing to bring an infringement action if license is non-
12   exclusive or licensor retains exclusive ownership of the mark); *see also* 17 U.S.C. § 501(b). Jazwares'
13   standing allegations with respect to Lanham Act Section 43 are conclusory and unpersuasive, and while
14   Plaintiffs argue that Jazwares need only plead a "commercial interest" and be a competitor to have
15   standing, the case they rely on involved an exclusive license, which Plaintiffs do not plead here. *See*
16   *Williams v. SBE Ent. Grp.*, 2008 WL 11339999, at *1 (C.D. Cal. Nov. 10, 2008). Contrary to Plaintiffs'
17   unsupported argument, that Jazwares may remain in the case for all claims if it only has standing as to
18   one, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v.*
19   *Cuno*, 547 U.S. 332, 335 (2006).

20                                        *        *        *

21         Plaintiffs' Opposition fails to rescue their claims; the FAC should be dismissed with prejudice.

22   Dated: November 23, 2022                    WINSTON & STRAWN LLP

23                                               By: */s/ Jennifer A. Golinveaux*

24                                               Jennifer A. Golinveaux (SBN: 203056)
25                                               JGolinveaux@winston.com
                                                 WINSTON & STRAWN LLP
26                                               101 California Street, 35th Floor
                                                 San Francisco, CA 94111-5840
27                                               Telephone:    (415) 591-1000
                                                 Facsimile:    (415) 591-1400

28                                               Michael S. Elkin (admitted *pro hac vice*)

                                                 15

MElkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:     (212) 294-6700
Facsimile:      (212) 294-4700

Cesie C. Alvarez (admitted *pro hac vice*)
CAlvarez@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:     (415) 591-1000
Facsimile:      (415) 591-1400

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543
Telephone:     (213) 615-1700
Facsimile:      (213) 615-1750

Michael D. Bednarek (admitted *pro hac vice*)
michael@bednareklegal.com
BEDNAREK LEGAL, PLLC
1100 N. Glebe Road, Suite 1010
Arlington, VA 22201
Telephone:     (202) 997-1665
Facsimile:      (703) 224-8001

Attorneys for Defendants
WOWWEE GROUP LIMITED, WOWWEE
CANADA, INC., WOWWEE USA, INC., and
GRAMPS GOOD, INC.