UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER ON MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Before the Court is defendants' motion to dismiss the First Amended Complaint (FAC) and compel arbitration and an accompanying request that the Court take judicial notice of 19 exhibits. Dkt. Nos. 45, 45-1. Plaintiffs oppose. Dkt. No. 51. The parties submitted two rounds of supplemental briefing at the Court's request. Dkt. Nos. 56, 57, 67, 68. A hearing was held on December 16, 2022. Dkt. No. 58. For the reasons explained below, defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

**A.    The Roblox Platform**

Plaintiff Roblox Corporation owns an online gaming platform known as the Roblox Platform, which it describes as a "digital world where users create virtual games and experiences and connect with other users." Dkt. No. 36 ¶ 27. While Roblox provides some content of its own, the Roblox platform also enables its users to "develop games, experiences, and virtual items" that

---

[1] For the purposes of a motion to dismiss, factual allegations in the FAC are assumed true. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

they and other users can then enjoy. *Id.* Users who develop experiences on the program are known as experience "developers" or "creators," and the content they create is known as "user-generated content" or "UGC." *Id.* ¶¶ 6, 32–33.

Roblox users interact with the platform through virtual characters known as "Avatars." *Id.* ¶ 4. At issue here are the "Classic Avatars," which Roblox describes as "humanoid figures with cylindrical heads, C-shaped hands, block-shaped bodies and legs, square or rounded arms, and cartoon-like facial expressions."[2] *Id.* ¶ 4. Roblox has designed some Classic Avatars but also allows users to customize their own by adjusting the "hairstyles, facial expressions, clothing, and accessories" of the Avatars. *Id.* ¶ 5. Roblox has authorized plaintiff Jazwares to manufacture "Avatar Figurines," real-world toys based on the digital Avatars. *Id.* ¶ 9.

Because the Roblox Platform is so reliant on user-generated content, Roblox protects its intellectual property by requiring its users to agree to its Terms of Use ("Terms"). *Id.* ¶¶ 34–46. A user must agree to the Terms when creating an account to access the Roblox Platform. *Id.* ¶¶ 36–38. The Terms include an agreement that continued use of the Roblox Platform after an update to the Terms of Use constitutes agreement to the new terms. *Id.* ¶ 39.

Among the Terms are agreements that users will not use Roblox content outside of the Roblox Platform, monetize Roblox content, or imply an association with Roblox for their businesses outside of the Roblox Platform. *Id.* ¶ 7.

### B.     My Avastars Dolls

Defendants Wowwee Group Limited, Wowwee Canada, Inc., and Wowwee USA, Inc. ("Wowwee defendants" or "Wowwee") manufacture, promote, and sell a line of dolls called "My Avastars," which plaintiffs allege were "copied directly from Roblox's Classic Avatars."[3] *Id.* ¶ 73.

---

[2] The blocky Classic Avatar model is not the only model of avatar available on the Roblox Platform; however, it is the only model at issue in this case. Other models are more realistic. *See* Dkt. No. 36 ¶ 30.

[3] The Complaint alleges there are four models of My Avastars dolls, but defendants have lodged five models as exhibits: "A_Vibethng," "Kawaiipie^^," "Hypergirrrrl_77," "Dreamer_3.0," and "Trackie_O." Dkt. Nos. 48, 54.

1    Like Roblox's Classic Avatars, the My Avastars dolls "are humanoid figures with cylindrical heads,
2    C-shaped hands, block-shaped bodies and legs, square arms, and cartoon-like facial expressions that
3    lack a nose." *Id.* ¶ 83.
4        Plaintiffs allege that defendants' own marketing shows defendants copied Roblox Avatars.
5    On July 28, 2021, WowWee's Vice President of Brand Development & Creative Strategy, Sydney
6    Wiseman, used her WowWee email address, sydney@wowwee.com, to create a Roblox user
7    account with the username sydwiseman. *Id.* ¶¶ 112–13. Wiseman agreed to the Terms of Use when
8    she created the account and agreed to updated Terms when she continued to log in as recently as
9    September 6, 2022. *Id.* ¶¶ 114–15. Plaintiffs argue she acted as defendants' agent when doing so.
10   *Id.* ¶ 203. Wiseman used her Roblox account to promote My Avastars dolls on social media,
11   including videos on her TikTok account @sydwiseman. *Id.* ¶¶ 79–83. One such video shows a
12   My Avastars doll directly on top of a tablet showing the Roblox Platform. *Id.* ¶ 84. In the video,
13   Wiseman narrates, "I was playing roblox and as I was customizing my avatar I was inspired to create
14   a doll line called my Avastars." *Id.* ¶ 84. The video shows doll accessories including a pink tank
15   top, purple shorts, and long green hair next to the doll, then shows the Roblox platform with an
16   avatar sporting a similar outfit including a pink tank top, purple shorts, and long green hair.
17   *Id.* ¶¶ 85–86. Plaintiffs allege that defendants admittedly copied Roblox' avatars for profit. *Id.*
18   ¶ 11. Plaintiffs also allege that defendants improperly marketed the My Avastars dolls with a "code"
19   that could be used in the Roblox platform. *Id.* ¶ 12. Plaintiffs allege defendants induced Gamefam,
20   one of Roblox's experience developers, to partner with defendants in their infringing activities. *Id.*
21   ¶¶ 12–13.

### C. Procedural History

Plaintiffs brought suit on August 2, 2022. Dkt. No. 1. Plaintiffs bring claims for copyright infringement, false advertising, trademark infringement, false association and false designation of origin, trade dress infringement, intentional interference with contractual relations, breach of contract, and false advertising and unfair competition under the California Business and Professional Code. *Id.* ¶¶ 218–230. On September 19, plaintiffs filed the FAC and added claims

1   based on the Claire Dancefiend Avatar and the Stylz Salon Stylist and the Brookhaven Customer
2   avatars and avatar figurines, which were registered after the initial complaint was filed.[4] *Id*.
3   Defendants moved to dismiss on October 19; defendants' motion also seeks to compel arbitration
4   of some claims, although it is not styled as a motion to compel arbitration. Dkt. No. 45. Plaintiffs
5   oppose. Dkt. No. 51. The parties submitted two rounds of supplemental briefing at the Court's
6   request. Dkt. Nos. 56, 57, 67, 68. A hearing was held on December 16, 2022. Dkt. No. 58.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Dismissal can be granted with or without leave to amend. Leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Under Section 4 of the Federal Arbitration Act (FAA), when a party makes a motion to

---

[4] While the original complaint references the avatar figurines, it does not explicitly bring claims based on those figurines. *See* Dkt. No. 1 ¶ 92.

4

compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The FAA requires courts to place arbitration agreements "upon the same footing as other contracts." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1643 (2020) (quoting *Volt Info. Sci., Inc. v. Bd. Of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). But the FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them.)" *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009). "State contact law controls whether parties agreed to arbitrate." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

## DISCUSSION

### A. Plaintiffs' Copyright Infringement Claim Is Adequately Pled.

To state a claim for copyright infringement, a plaintiff must show both that the plaintiff owns a valid copyright and that the defendant copied protected aspects of the work. *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir.). Defendants argue that plaintiffs have failed to adequately plead either prong. Dkt. No. 45 at 16–24.

#### 1. Plaintiffs Have Adequately Pled Ownership of a Valid Copyright.

As a preliminary matter, defendants do not challenge plaintiffs' copyright of four of the Avatars. Defendants take issue with Roblox's characterization of the Cindy, Lindsey, Kenneth, and Dennis Avatars as "Roblox-created." Dkt. No. 45 at 13 n. 3. But they admit that the Copyright Office records reflect that Roblox owns these works through written transfer agreement. *Id.* Thus, whether or not the works were made by a Roblox employee, as plaintiffs claim, Roblox nonetheless has adequately pled that it owns the rights to those works. *See* Dkt. No. 51-1 at 3. However, defendants challenge Roblox's rights to several other works.

5

United States District Court
Northern District of California

To have standing to sue for copyright infringement, a party must be the "legal or beneficial owner of an exclusive right under a copyright." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). The exclusive rights that can be held are listed in Section 106 of the Copyright Act and include the right to reproduce the work, distribute copies of it, and prepare derivative works based upon it. Id.; see 17 U.S.C. § 106.

Defendants argue that the FAC fails to plead ownership of a valid copyright for four reasons. First, defendants argue that the "Brookhaven Customer Avatar" and "Stylz Salon Stylist Avatar" were created and registered by third parties, not Roblox. Dkt. No. 45 at 16. Defendants further argue the "Brookhaven Customer Avatar Figurine" and "Stylz Salon Stylist Avatar Figurine" are derivative works and plaintiffs do not allege any new material added to those works, so plaintiffs' claims as to those two works must be dismissed. *Id.*

Defendants argue that plaintiffs cannot bring claims based on the Claire Dancefiend Avatar and Figurine, Brookhaven Customer Avatar and Figurine, and Stylz Salon Stylist Avatar and Figurine because those works were registered after plaintiffs filed the initial complaint but before they filed the FAC. Dkt. No. 45 at 18. The Copyright Act provides that "no civil action for infringement . . . shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). In *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court held that a copyright owner cannot sue for infringement until "registration . . . has been made." *Id.* at 888. Defendants argue that *Fourth Estate* bars plaintiffs from amending an action to include claims for works not registered before the filing of the initial complaint; plaintiffs argue that *Fourth Estate* does not prevent them from amending an existing lawsuit to add claims based on copyrights issued before the amendment. Dkt. No. 45 at 18; Dkt. No. 51 at 15.

District courts have split on this issue. *Compare Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) ("[P]ermitting amendment to cure a claimant's failure to register its copyright before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*.") *with Lickerish Ltd. v. Maven Coal., Inc.*, 2021 WL 3494638, at *1 (C.D. Cal. Jan. 29, 2021) (holding Ninth Circuit's policy favoring amendment permits amendment of an

6

existing lawsuit to add newly asserted claim for copyright infringement as long as the copyright issued before the amendment).

While this is a close issue, the Court agrees with other courts in this district that permitting plaintiffs to cure their failure to register the copyright before suing would undermine *Fourth Estate*. Another court in the Northern District has concluded that "[b]y tying the registration requirement to when a 'civil action' is 'instituted,' the plain language of § 411(a) refers to the beginning of a lawsuit, not the filing of an amended pleading." *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021). And as noted in *Izmo*, the Ninth Circuit "has rejected amendments of pleadings as a means to cure a claimant's failure to comply with administrative exhaustion requirements." *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (citing *McKinney v. Carey*, 311 F.3d 1198, 1200–01 (9th Cir. 2002). Because the Supreme Court in *Fourth Estate* treated the registration requirement as "akin to an administrative exhaustion requirement," amendment should not be permitted to cure failure to comply.[5] *Id.* (quoting *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019)).

Next, defendants argue that the "Avatar Bases" are not registered and cannot be the basis for claims. Dkt. No. 45 at 17. The "Avatar Bases" are the templates from which other avatars are customized on the Roblox platform. *See* Dkt. No. 36 ¶4. Defendants point out that the avatars Roblox *has* registered do not list the avatar bases as derivative works and, in any case, registering a derivative work does not give a plaintiff standing to sue on an underlying work. *Id.* The Copyright Office Public Catalog pages for the Cindy, Dennis, Lindsey, Kenneth, and Claire Dancefiend Avatars do not identify any pre-existing material. Dkt. Nos. 45-6 (Cindy Avatar), 45-7 (Dennis Avatar), 45-8 (Lindsey Avatar), 45-9 (Kenneth Avatar), 45-10 (Claire Dancefiend Avatar). *See* 17 U.S.C. § 409(9) (requiring application for copyright registration of derivative work to identify "any preexisting work or works that it is based on or incorporates"). Only the Stylz Salon Stylist Avatar

---

[5] Defendants also argue that the Brookhaven Customer Avatar and Stylz Salon Stylist Avatar were created and registered by third parties, not Roblox, and that Roblox has failed to plead facts making it plausible that Roblox owned or currently owns exclusive rights to those works. Dkt. No. 45 at 16; Dkt. No. 52-1 at 6. Because these late-registered works cannot be the basis for claims because they were registered too late, the Court does not reach this argument.

1    and Brookhaven Customer Avatar list as pre-existing material a "[p]reviously published avatar
2    body." Dkt. Nos. 45-12 (Stylz Salon Stylist Avatar), 45-14 (Brookhaven Customer Avatar).

3          Plaintiffs argue that the Avatar Bases are subject to the "effective registration doctrine,"
4    which holds that registration of a derivative work effectively registers the underlying works if the
5    works have the same owner. Dkt. No. 51 at 16. Because *Fourth Estate* precludes suit based on the
6    late-registered Stylz Salon Stylist Avatar and Brookhaven Customer Avatars, the applicability of
7    effective registration doctrine based on those avatars is questionable. But even putting aside *Fourth*
8    *Estate*, the "applications for registration of the derivative works fail to identify with sufficient
9    specificity the unregistered preexisting works on which such derivative works are based." *Synopsys,*
10   *Inc. v. Atoptech, Inc.*, No. C-13-2965 MMC, 2016 WL 80549, at *1 (N.D. Cal. Jan. 7, 2016). The
11   language "previously published avatar body" does not meaningfully identify the underlying work.
12   *See id.* Therefore the Court dismisses copyright claims based on the "Avatar Bases."

13         Fourth, defendants argue that plaintiffs do not own the "Gamefam My Avastars Avatar,"
14   which defendants assert was designed before Roblox amended its Terms of Service to give Roblox
15   all ownership of any user-generated character on the Roblox platform. *Id.* at 19. Defendants further
16   argue that this provision in the Terms of Service is unconscionable. *Id.* Plaintiffs do not actually
17   allege registration – by Gamefam or otherwise – of the "Gamefam My Avastars Avatar." *See* Dkt.
18   No. 36. Defendants' argument regarding this avatar is moot.

19         For the foregoing reasons, the claims based on the Cindy, Lindsey, Kenneth, and Dennis
20   Avatars are adequately pled. However, the claims based on the Stylz Salon Stylist, Brookhaven
21   Customer, and Claire Dancefiend Avatars and Figurines are dismissed because the claims are based
22   on late-registered works. Claims based on the Avatar Bases are dismissed as Roblox has not
23   sufficiently alleged that these works are copyrighted.

24

25       **2.**      **Plaintiffs Have Adequately Pled Substantial Similarity.**

26         To show that a defendant copied protected elements of a work, the plaintiff can establish
27   "that the infringer had access to plaintiff's copyrighted work and that the works at issue are
28   substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815,

United States District Court
Northern District of California

822 (9th Cir. 2002). The Ninth Circuit uses a two-part analysis to determine substantial similarity: an extrinsic test and an intrinsic test. *Id.* However, at the pleading stage the Court only considers the extrinsic test. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). The extrinsic test requires "objective comparison of specific expressive elements." *Cavalier*, 297 F.3d at 822. When applying the extrinsic test, the Court "must filter out and disregard the non-protectible elements." *Id.* However, "substantial similarity can be found in a combination of elements, even if those elements are individually unprotected." *Gray v. Hudson*, 28 F.4th 87, 101 (9th Cir. 2022).

Plaintiffs allege that the My Avastars dolls are substantially similar to Roblox's copyrighted avatars because both are "humanoid figures with cylindrical heads, C-shaped hands, block-shaped bodies and legs, square arms, and cartoon-like facial expressions that lack a nose."[6] Dkt. No. 36 ¶ 82. Defendants argue that plaintiffs fail to meet the extrinsic test because the features for which plaintiffs allege copyright protection are "almost absurdly commonplace," resulting in only "thin" protection against "virtually identical copying." Dkt. No. 45 at 21. Defendants point out that plaintiffs' claimed features are similar to LEGO features. *Id.* at 23.

Although this is a close issue, the Court denies defendants' motion to dismiss on this basis. While the features for which plaintiffs allege protection are similar to those of other toys, there are differences including the customizability of features of plaintiffs' avatars and the shape of the avatars' legs. The "original selection, coordination, and arrangement" of these features is protectible. *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020). And defendants' My Avastars figurines are "virtually identical" in shape to plaintiffs' avatars. *Interactive Network, Inc. v. NTN Commc'ns, Inc.*, 875 F. Supp. 1398, 1403 (N.D. Cal.). The Court finds that plaintiffs have sufficiently alleged substantial similarity.

**B.     Plaintiffs' Lanham Act Trade Dress Claim Is Adequately Pled.**

Defendants move to dismiss plaintiffs' trade dress claim. Dkt. No. 45 at 25. "In contrast to

---

[6] Because claims based on the late-registered Avatar Figurines are dismissed, the Court does not address similarity between those figurines and the My Avastars dolls.

trademark, 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combination, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). Plaintiffs claim their Avatars and Avatar Figurines "have a distinct overall look and feel stemming from at least their (1) humanoid, blocky shape; (2) cylindrical heads; (3) C-shaped hands; (4) block-shaped legs; (5) square or rounded arms; (6) cartoon-like facial expressions and lack of a nose; and (7) the particularized combination of these elements." Dkt. No. 36 ¶ 181. Plaintiffs allege this trade dress has acquired secondary meaning because the consuming public has come to associate it with plaintiffs, as shown by consumer comments on WowWee's social media marketing videos, which confused WowWee's products with those of plaintiffs. *Id.* ¶ 181. Defendants allege that plaintiffs have failed to clearly articulate their alleged trade dress or identify how the "generic" elements pled by plaintiffs create a particular visual impression. Dkt. No. 45 at 26. Defendants also argue that plaintiffs have failed to adequately plead that their trade dress has acquired secondary meaning. *Id.* Plaintiffs have adequately pled trade dress. In combination, plaintiffs have described a distinct trade dress. Further, plaintiffs have pled facts – namely, consumer confusion about whether defendants' products were associated with Roblox – that show plaintiffs' trade dress was distinctive to consumers and acquired secondary meaning.

## C. Plaintiffs' Lanham Act Claims for Trademark Infringement, False Designation of Origin, and False Advertising Are Adequately Pled.

Plaintiffs bring claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for trademark infringement, false advertising, and false designation of origin. Dkt. No. 36 ¶¶ 155–179. Plaintiffs allege that defendants used the ROBLOX mark and Roblox name to market and sell the My Avastars dolls. *Id.* ¶¶ 173–179. To adequately plead trademark infringement under 15 U.S.C. § 1114, "a plaintiff must plausibly allege that (1) plaintiff owns a registered trademark; (2) plaintiff's use of that mark began before the defendant's use; (3) the defendant's use is without the plaintiff's consent; and (4) the defendant's use is likely to cause confusion, or to cause mistake, or to deceive." *Gorski*

*v. The Gymboree Corp.*, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014). The elements for false designation of origin are the same, except that the plaintiff's trademark need not be registered. *Id.*

Defendants argue that any alleged use of the Roblox name qualifies as nominative fair use. Nominative fair use is a defense when a defendant "has used the plaintiff's mark 'to describe the *plaintiff's* product' for the purpose of, for example, comparison to the defendant's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). To establish nominative fair use, a defendant must prove that the plaintiff's product is "not readily identifiable without use of the trademark," that "only so much of the mark or marks [is] used as is reasonably necessary to identify the [plaintiff's] product or service;" and that the defendant has done "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."[7] *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

The FAC does not compel a finding that nominative fair use applies as a matter of law. Plaintiffs allege that defendants' use of the Roblox name has implied an association with Roblox and has confused consumers. Dkt. No. 36 ¶¶ 155–61. Plaintiffs support this conclusion by alleging specific facts. Plaintiffs allege that WowWee advertised the dolls would be sold with a code redeemable in a game on Roblox, used the hashtags #roblox and #newroblox to advertise the My Avastars dolls, and included the Roblox mark and interface in social media advertisements to promote confusion. *Id.* ¶¶ 96–100, 107. Plaintiffs further allege that WowWee responded to user confusion about "stealing the entire [R]oblox brand" or "having exclusive [Roblox] codes/items in their physical products" by claiming that WowWee was "working with top [R]oblox developers." *Id.* ¶¶ 103–07. And plaintiffs allege that consumers were in fact confused by the marketing and made comments suggesting that the makers "work with [R]oblox" or appeared to be "from Roblox." *Id.* ¶¶ 108–10. Plaintiffs' allegations are sufficient to state a plausible claim.

Defendants also argue that the use of hashtags cannot constitute infringement. Dkt. No. 45

---

[7] Plaintiffs argue that the Court should apply the test established by *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). Dkt. No. 51 at 21. However, the Ninth Circuit has made clear that the nominative fair use test replaces the *Sleekcraft* analysis when nominative fair use is raised as a defense. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002).

1    at 28.  Defendants cite *AOP Ventures, Inc. v. Steam Distrib., LLC*, 2016 WL 7336730, at *13 (C.D.
2    Cal. Oct. 11, 2016), *vacated on other grounds*, 2016 WL 10586307 (C.D. Cal. Dec. 27, 2016).  In
3    *AOP Ventures*, plaintiff, who had registered the mark DRIP CLUB, sought summary judgment
4    against defendants for using the hashtag #dripclub.  *Id.* at *12.  The court denied summary judgment,
5    citing a previous case in the same district that held that "hashtags are merely descriptive devices,
6    not trademarks" and the use of a hashtag was "merely a functional tool to direct the location of [a]
7    promotion so that it is viewed by a group of consumers, not an actual trademark."  *Id.* at *13 (quoting
8    *Eksouzian v. Albanese*, 2015 WL 4720478, at *8 (C.D. Cal. Aug. 7, 2015)).  Neither case involved
9    a blanket holding that use of a hashtag cannot constitute trademark infringement.  The order in *AOP*
10   *Ventures* merely denied summary judgment; it did not dismiss claims based on use of a hashtag.
11   *AOP Ventures*, 2016 WL 7336730, at *13.  And the order in *Eksouzian* was based on the premise
12   that the addition of a hashtag "to an otherwise unregistable mark typically cannot render it
13   registrable."  *Eksouzian*, 2015 WL 4720478, at *8 (quoting TRADEMARK MANUAL OF EXAMINING
14   PROCEDURE, ¶ 1202.18 (Wolters Kluwer eds., 2014), 2014 WL 5799282).  *Eksouzian* merely stands
15   for the proposition that adding a hashtag does not transform an otherwise unregistrable mark into a
16   registrable mark.  *Id.*  The Court finds that use of a hashtag can constitute trademark infringement
17   when the use otherwise meets the test for trademark infringement.
18       Defendants argue in a footnote that plaintiffs' unfair competition and false advertising claims
19   under California law are "substantially congruent" to the Lanham Act claims and should be
20   dismissed for the same reasons.  Dkt. No. 45 at 31 n.14.  For the same reason the motion to dismiss
21   is denied with respect to the Lanham Act claims, it is denied with respect to the "substantially
22   congruent" state law claims.  *See Acad. of Motion Picture Arts & Scis. v. Creative House*
23   *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("An action for unfair competition under
24   Cal.Bus. & Prof.Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement
25   claim under the Lanham Act.")

28   ///

**D.     Plaintiffs' Contract and Interference Claims Against U.S.-Resident Defendants Are Subject to Arbitration.**

Defendants seek to compel arbitration of the contract and interference claims based on an arbitration clause in Roblox's Terms.[8]  Dkt. No. 45 at 30; *see* Dkt. No. 36-1 at §16 (arbitration provision).  Plaintiffs argue the arbitration provision does not apply to the international defendants.  Dkt. No. 67.  Plaintiffs also argue that their claims are not subject to arbitration because Roblox only seeks injunctive relief for its contract and interference claims, and claims seeking only injunctive relief are excepted from the arbitration requirement provision.  Dkt. No. 51 at 27.  Defendants argue that the arbitration provision still applies because plaintiffs' "allegations are broad enough to encompass damages." Dkt. No. 52 at 17.

**1.     The arbitration clause only applies to the United States resident defendants.**

The Court first considers whether arbitration can be compelled as to the defendants who are not United States residents.[9]  Plaintiffs argue that the non-U.S.-resident defendants, WowWee Group Limited and WowWee Canada, Inc., are excluded from the arbitration provisions in the Roblox Terms of Use.  Dkt. No. 67 at 3.  The Terms provide:

> Except as explained below, User and Roblox agree that any dispute arising under or relating to the Roblox Terms or the Services ("Dispute") will be governed and resolved first through the Informal Dispute Resolution Requirements stated below, and only if those requirements are satisfied, then, ***for U.S. residents only***, through binding arbitration and not through litigation.

---

[8] Defendants do not seek arbitration of plaintiffs' intellectual property claims. Dkt. No. 45 at 30 (arguing that "non-IP claims arising under the Terms are subject to arbitration"); *see* Dkt. No. 36-1 at §16(d)(xii) (excepting "claims for infringement of patent, copyright, trademark, or trade secret rights" from arbitration provision).

[9] Roblox alleges defendants agreed to the Terms through their agent Sydney Wiseman. FAC ¶ 111.  Defendants do not concede that they agreed to the Terms of Use but argue that because the relevant claims are based on an alleged breach of the Terms, the arbitration clause in the Terms should apply.  Dkt. No. 41 at 31.  Under the doctrine of equitable estoppel, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (quoting *Jones v. Jacobson*, 195 Cal. App. 4th 1, 20, 125 Cal. Rptr. 3d 522, 538 (2011).  The Court need not determine whether defendants agreed to the Terms; even if they did not, equitable estoppel applies.

13

First Amended Complaint (FAC) Ex. 1(A) § 16(a) (emphasis added).  The Terms also provide:

> Arbitrable Disputes. Except as explained below, Roblox **and any User who is a United States resident** agree that any Dispute that has satisfied the Informal Dispute Resolution Requirements will be subject only to binding arbitration by a neutral arbitrator and may not be litigated. The arbitrator's decision will be final except for a limited right of appeal allowed by federal law. The arbitrator may award User damages, just like a court could, but only to the extent necessary to satisfy User's individual claim.

*Id.* at § 16(d)(i) (emphasis added).

Defendants argue that (1) the agreement does not *prohibit* the Court from referring foreign companies to arbitration, (2) the Court may refer the non-U.S. defendants to arbitration under an agency theory, and (3) in the alternative, the Court may refer the non-U.S. defendants to arbitration under a theory of equitable estoppel.  Dkt. No. 68.

The plain language of the arbitration clause requires arbitration only for United States residents.  This restriction is laid out twice, in sections 16(a) and 16(d)(i) of the Terms.  FAC Ex. 1(A) §§ 16(a), 16(d)(i).  Defendants are correct that the terms do not outright prohibit arbitration for non-U.S. residents.  *See* Dkt. No. 68.  But the question before the Court is not whether the parties could agree to arbitration; it is whether arbitration should be compelled under the Terms.  Because the language mandating arbitration applies to "U.S. residents only," the plain language of the contract does not support an order compelling arbitration for non-U.S. residents.

Defendants argue that the Court should look beyond the four corners of the contract and apply either agency theory or equitable estoppel to refer the international defendants to arbitration.  *See* Dkt. No. 68 at 6–10.  Courts turn to state contract law principles to determine whether an arbitration agreement can be enforced by or against a nonsignatory.  *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  "[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Id.* at 632.  But the issue here is not that the international defendants are nonsignatories; rather, it is that they are not covered by the scope of an agreement that applies to United States residents only.  Even if the international defendants signed the Terms of Use, the arbitration provisions plainly do not apply to them.  FAC Ex. 1(A) § 16(a).  Because the FAA requires courts

14

"to enforce, not override, the terms of the arbitration agreements before us," arbitration cannot be compelled where it would be outside the scope of the agreement. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018). Therefore the motion to compel arbitration is denied as to the non-United States resident defendants.

**2. The contract and interference claims against the United States resident defendants are subject to arbitration.**

Turning to the United States resident defendants, the Court must determine whether the contract and interference claims are subject to arbitration. Plaintiffs argue that because they seek only injunctive relief for these claims, the claims are excluded from arbitration. Dkt. No. 51 at 27. The clause listing exceptions to the arbitration provision reads:

> The following *claims and actions* are exempt from both the Informal Dispute Resolution Requirements and Arbitration Terms: (i) enforcement actions through a federal, state, or local agency if those actions are available; (ii) claims for infringement of patent, copyright, trademark, or trade secret rights; (iii) actions seeking only injunctive relief and no award of attorneys' fees or costs; and (iv) actions seeking remedies under the GDPR.

Dkt. No. 36-1 §16(d)(xii) (emphasis added). The first sentence distinguishes between claims and actions, and the items on the list are described as one or the other. *Id.* Item (ii) excludes certain claims, while the other items exclude certain actions. *Id.* The clause specifically exempts "actions seeking only injunctive relief," not claims seeking only injunctive relief. *Id.* (emphasis added). Thus, because the overall action in this case seeks non-injunctive relief, the exception does not apply, even though the claims in question seek only injunctive relief.

The Court sought additional briefing from the parties on this issue. Both parties agreed that "claim" and "action" carry distinct meanings, with "action" referring to an entire proceeding that may include multiple individual claims. Dkt. Nos. 56, 57. But plaintiffs argue the "action" referred to is the one before the arbitrator, rather than the action before this court. Dkt. No. 57 at 5. Plaintiffs' proposed interpretation does not make sense when reading the clause as a whole. Item (i) of the clause excludes "enforcement actions through a federal, state, or local agency if those actions are available." Dkt. No. 36-1 §16(d)(xii). The word "actions" in this context clearly refers to actions

15

outside Roblox's arbitration process. Plaintiffs give no reason "actions" should be interpreted one way in item (i) and another way in item (iii).

Because no exception to the arbitration provision applies, plaintiffs' sixth and seventh causes of action are subject to mandatory arbitration. *See* Dkt. No. 36 ¶¶ 188–217. While defendants do not style their motion as a motion to compel arbitration, their request that the Court "send [plaintiffs'] contract and interference claims to arbitration where they belong" is interpreted as a motion to compel arbitration, and that motion is granted. Dkt. No. 56 at 11.

### 3. Plaintiffs' contract and interference claims are stayed pending arbitration.

Defendants ask that if the claims against the international defendants are not arbitrable, the Court should at least stay proceedings against the international defendants pending the outcome of arbitration with the United States defendants. Dkt. No. 68. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Here, the non-intellectual property claims against the international defendants are the same as the claims against the United States defendants that are subject to arbitration. Proceedings are stayed as to those claims. However, because the intellectual property claims are distinct from the contract and interference claims, the intellectual property claims will not be stayed.

### E. Jazwares Lacks Standing for Most Claims.

Defendants argue that plaintiff Jazwares lacks standing to bring trademark or copyright claims because the FAC fails to allege that Jazwares is the owner or exclusive licensee of any copyrights or trademarks at issue in the case. Dkt. No. 45 at 34.

Plaintiffs first argue that there is no basis to dismiss only one plaintiff from a suit for lack of standing when the other plaintiff has standing. Dkt. No. 51 at 32. Plaintiffs cite *Mecina v. Hobbs*,

30 F.4th 890 (9th Cir. 2022), for the proposition that "[i]n a suit with multiple plaintiffs, generally only one plaintiff need have standing for the suit to proceed." *Id.* at 897. But individual plaintiffs can be dismissed even if a suit proceeds. *See*, *e.g.*, *Coble v. DeRosia*, 823 F. Supp. 2d 1048, 1051 (E.D. Cal. 2011) (dismissing individual plaintiff due to lack of standing). In cases like *Mecina* where plaintiffs seek only "injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022). But the plaintiffs in this case seek more than injunctive or declaratory relief. Dkt. No. 36 at 65–66. Generally, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 35 n. 6 (1996). Each plaintiff must "demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000), and "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Plaintiffs do not appear to argue that Jazwares has standing to bring copyright claims. *See* Dkt. No. 51 at 31–32. Jazwares does not have standing to bring copyright claims because it has failed to plead ownership of any relevant copyright. *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006), *overruled by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (noting ownership of valid copyright is required for copyright infringement claim).

However, Jazwares does have standing to sue for false advertising, false association, and false designation of origin under 15 U.S.C. § 1125(a), which provides for a right of action by "any person who believes that he or she is likely to be damaged by such act." There is no requirement that the harm be tied to a copyright or trademark owned by the plaintiff. *See id.* The Supreme Court has rejected the view that an action under this section "is available to anyone who can satisfy the minimum requirements of Article III." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Instead, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when the deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. "The 'paradigmatic' injury from sales advertising is 'diversion of sales to a direct

17

competitor." *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021). Jazwares has adequately pled injury due to customers associating the My Avastars dolls with Roblox, leading to lost sales of Jazwares' Avatar Figurines. Dkt. No. 36 ¶¶ 159–61. Jazwares has standing to bring state law claims for false advertising and unfair competition because those claims are "substantially congruent" to claims made under the Lanham Act. *ThermoLife Int'l*, 848 F. App'x at 709.

Jazwares is dismissed as plaintiff for all claims except the claims under 15 U.S.C. § 1125(a) and the California Business & Professional Code.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby orders as follows:

Defendants' motion to dismiss Jazwares' claims is **DENIED** with respect to the fourth, eighth, and ninth causes of action and is **GRANTED** with respect to all other causes of action.

With respect to Roblox's claims, defendants' motion to dismiss is **DENIED** with respect to the second, third, fourth, and fifth causes of action. Defendants' motion to dismiss the first cause of action is **DENIED** with respect to claims based off the Kenneth, Lindsey, Cindy, and Dennis avatars but is **GRANTED** with respect to claims based off the late-registered Avatars, Avatar Figurines, and Avatar Bases.

Defendants' request to compel arbitration of claims six and seven is **GRANTED** as to the U.S.-resident defendants and **DENIED** as to the international defendants. Proceedings are **STAYED** pending the outcome of arbitration as to claims six and seven only.

Dismissal is with leave to amend. If plaintiffs wish to amend their claims, they must do so by March 24, 2023.

**IT IS SO ORDERED**.

Dated: March 9, 2023

SUSAN ILLSTON
United States District Judge