1  LATHAM & WATKINS LLP
      Andrew M. Gass (Bar No. 259694)
2        *andrew.gass@lw.com*
      Sarah M. Ray (Bar No. 229670)
3        *sarah.ray@lw.com*
      Ivana Dukanovic (Bar No. 312937)
4        *ivana.dukanovi@lw.com*
   505 Montgomery Street, Suite 2000
5  San Francisco, California 94111
   Telephone:  +1.415.391.0600
6
      Elana Nightingale Dawson (*pro hac vice*)
7        *elana.nightingaledawson@lw.com*
      Tyce R. Walters (*pro hac vice*)
8        *tyce.walters@lw.com*
   555 Eleventh Street, NW, Suite 1000
9  Washington, DC 20004
   Telephone: +1.202.637.2200
10

11 *Attorneys for Plaintiffs Roblox
   Corporation and Jazwares, LLC*
12
   *Counsel continued on next page*
13

14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN FRANCISCO DIVISION**

17

18

19 | ROBLOX CORPORATION and | Case No. 3:22-cv-04476-SI |
   | JAZWARES, LLC, | |
20 | | |
   | Plaintiffs, | **STIPULATED [AND PROPOSED]** |
21 | v. | **ORDER RE: DISCOVERY OF** |
   | | **ELECTRONICALLY STORED** |
22 | WOWWEE GROUP LIMITED, WOWWEE | **INFORMATION FOR STANDARD** |
   | CANADA, INC., WOWWEE USA, INC., | **LITIGATION** |
23 | and GRAMPS GOODS, INC., | |
   | | |
24 | Defendants. | |

25

26

27

28

WINSTON & STRAWN LLP
Michael S. Elkin (admitted Pro Hac Vice)
MElkin@winston.com
200 Park Avenue
New York, NY  10166-4193
Telephone:     (212) 294-6700

Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Cesie C. Alvarez (admitted Pro Hac Vice)
CAlvarez@winston.com
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:     (415) 591-1000

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543
Telephone:     (213) 615-1700

BEDNAREK LEGAL, PLLC
Michael D. Bednarek (admitted Pro Hac Vice)
michael@bednareklegal.com
1100 N. Glebe Road, Suite 1010
Arlington, VA  22201
Telephone:     (202) 997-1665

*Attorneys for Defendants*
*WowWee GROUP LIMITED, WowWee*
*CANADA, INC., WowWee USA, INC., and*
*GRAMPS GOODS, INC.*

## 1.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Guidelines for the Discovery of ESI ("ESI Guidelines"), and any other applicable orders and rules. All disclosures and productions made pursuant to this Stipulated Order Governing Discovery of Electronically Stored Information ("ESI Protocol") are subject to any Protective Order or other Orders entered in this matter.

## 2.    COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3.    LIAISON

The parties have identified their respective liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each ESI Liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.  Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry.  If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

Notwithstanding this provision, confidentiality designations and any court-ordered protections regarding outside counsel shall govern the exchange of ESI.

**4.      PRESERVATION**

A.      **Preservation Obligations:**    The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI within their respective possession, custody, or control and subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1) will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree:

1.      In connection with their discussion of their respective document requests, the parties will meet and confer to exchange a proposed date range and list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR Head," "scientist," and "marketing manager";

2.      The parties shall add or remove custodians as reasonably necessary to comply with their preservation obligations under this Order and the Federal Rules of Civil Procedure;

3.      The parties will agree on the number of custodians per party for whom ESI will be preserved; the parties reserve the right to confer and revise the number of custodians per party for whom ESI will be preserved to the extent such revision is necessary in light of discovery and agreed upon by the parties;

4.      The parties reserve the right to go back in time for purposes of collection of ESI depending on the scope of relevant documents, which they are still investigating at this stage in the litigation.

B.      **ESI Not Reasonably Accessible:** If a Producing Party contends that any discoverable ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred

in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI), and the location of such ESI.  The parties shall negotiate in good faith concerning the production of any such ESI.  The data sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced unless and until the parties reach an agreement.

Notwithstanding the foregoing, except upon a showing of good cause, the following data sources and document types are not discoverable in this Litigation, and the parties shall have no obligation to preserve data contained in the following forms:

1.      Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

2.      Temporary data stored in a computer's random access memory (RAM), or other operating system files.

3.      Deleted, fragmented, unallocated space or other data only accessible by forensics.

4.      On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.      Server, system, or network logs.

6.      Data remaining from systems no longer in use that is unintelligible on systems in use.

7.      Ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems.

## 5.      SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.  In particular, if the parties choose to use TAR to remove documents from review without human review (i.e., not just for prioritization), then the parties must meet and confer to agree on process and validation.

The parties agree that for collecting and producing documents in response to a Fed. R. Civ.

P. 34 request, or earlier if appropriate, they will meet and confer as necessary about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.  Additional culling of file types based on file header information may include: Application Package File, Batch Files, Binary Disc Image, C++ File Formats, Configuration File, Compiled Dynamic Link Library, Event Log Files, Compiled Executable Files, Hypertext Cascading Stylesheet, Macintosh Resource Fork Files, Package Manager Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File, as well as backup files containing only the file types above specified.

The parties further agree that they will discuss and strive to agree upon appropriate data sources and custodians each party believes will possess responsive information, and propose search terms (if appropriate).  In the event that the Producing Party proposes to use search terms, it will identify the terms to be utilized; those terms will be subject to negotiation.  If a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions.  If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

## 6.     PRODUCTION FORMATS

The parties agree to produce documents in the format detailed on Appendix A: Production Format Protocol.

**7.     PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS**

A.     **Privilege Log.**

1.     Consistent with the Federal Rules of Civil Procedure, the parties agree to serve a privilege log providing information regarding all documents withheld or redacted under a claim of privilege and/or work product.  The parties will meet and confer regarding the contents and format of the privilege log, consistent with the initial agreement outline below in section 7.B.

2.     The parties agree that certain privileged communications or documents need not be included on a privilege log, including:

a.     Communications regarding litigation holds or preservation, collection, or review in this or any Litigation;

b.     Any communication or document that post-date the filing of this complaint with outside counsel and in-house counsel to the extent the communication is privileged communication related to this litigation; and

c.     Work product of counsel and parties.

3.     The parties agree to negotiate a reasonable time within which to exchange privilege logs, but no later than 45 days after a party's last production prior to the close of fact discovery.

B.     **Privilege Log Contents.**

1.     For each document withheld or redacted, the privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or

immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted. For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name).

C.     **Protocols for Logging Email Chains.**  Any email chain (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most email in the chain that is withheld or redacted.  The parties shall not be required to log identical copies of an email that is included in a chain that has been logged in accordance with this Paragraph.

D.     **Protocols for Logging "Families."**  Each member of a family (i.e., email attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.

E.     **Contesting Claim of Privilege or Work Product Protection.**  Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Disclosing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine.  If, after undertaking an appropriate meet-and-confer process, the parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Protected Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

**8.    PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI as appropriate.  The parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  The parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.  Production is anticipated to be conducted on a rolling basis with parties making reasonable efforts to expedite the process.  If either party feels production has been unreasonably delayed, the parties agree to confer via telephone to reach a mutually agreeable consensus prior to court involvement.

**9.    DOCUMENTS PROTECTED FROM DISCOVERY**

A.    Pursuant to Fed. R. Evid. 502(d) and the Stipulated Protective Order (Dkt. 73), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.  Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

B.    Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

C.    Activities undertaken in compliance with the duty to preserve information and at the direction of counsel are protected from discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A) and (B).

D.    Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**10.    NON-PARTY SUBPOENA**

A party that issues a non-party subpoena is responsible for producing any documents obtained under a subpoena to all other parties.

**11.    DATA PRIVACY**

Nothing in this Order is intended to prevent either party from complying with the requirements of any foreign country's data privacy laws.  The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery requests.

**12.    MODIFICATION**

A.     Should either party determine that compliance with the terms of this Protocol is impossible or unduly burdensome or otherwise determine that a modification of this Protocol is reasonably necessary, the parties shall meet and confer in good faith to resolve such issues and endeavor to modify this Protocol as necessary without the need for judicial intervention.

B.     If the parties decide to modify this ESI Protocol, they may agree to such modification in a writing signed by representatives of Plaintiff and the Defendants.  The parties may, but are not required, to also present a stipulated amended Protocol to the Court.

C.     If the parties are unable to reach resolution regarding any request for a modification to this Protocol, such request for modification of this ESI Protocol may be presented for judicial resolution.  No party may unilaterally seek to modify this ESI Protocol unless it first has conferred with the other party.

**13.    RESOLUTION OF DISPUTES**

A.     The parties agree to meet and confer in good faith regarding matters related to the production of Data not specifically set forth in Judge Illston's Standing Orders and this Protocol, related to discovery disputes, the interpretation of this Protocol, or any other discovery and ESI-related obligations of the parties thereunder.  The parties shall meet and confer to comply with and resolve any differences concerning compliance with this Protocol.  If a Producing Party cannot comply with any material aspect of this Protocol, such party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the Protocol is unreasonable

1  or not possible.

2      B.     If the parties are unable to reach resolution regarding any dispute concerning the

3  interpretation of this Protocol or compliance with same, such disputes may be presented for judicial

4  resolution consistent with section 3 of Judge Illston's Standing Orders.  No party may seek judicial

5  relief concerning this Protocol unless it first has conferred with the applicable Producing or

6  Requesting Party.

7      **IT IS SO STIPULATED** through Counsel of Record.

8  Dated:  April 20, 2023                LATHAM & WATKINS LLP

9                                        By: */s/ Andrew M. Gass*

10                                            Andrew M. Gass (Bar No. 259694)
                                             *andrew.gass@lw.com*

11                                            Sarah M. Ray (Bar No. 229670)
                                             *sarah.ray@lw.com*

12                                            Ivana Dukanovic (Bar No. 312937)
                                             *ivana.dukanovic@lw.com*

13                                        505 Montgomery Street, Suite 2000
                                          San Francisco, California 94111

14                                        Telephone:  +1.415.391.0600

15                                            Elana Nightingale Dawson (*pro hac vice*)
                                             *elana.nightingaledawson@lw.com*

16                                            Tyce R. Walters (*pro hac vice*)
                                             *tyce.walters@lw.com*

17                                        555 Eleventh Street, NW, Suite 1000
                                          Washington, DC 20004

18                                        Telephone: +1.202.637.2200

19                                        *Attorneys for Plaintiffs Roblox Corporation*

20                                        *and Jazwares, LLC*

21  Dated:  April 20, 2023                WINSTON & STRAWN LLP

22                                        By: */s/ Jennifer A. Golinveaux*

23                                        WINSTON & STRAWN LLP
                                          Michael S. Elkin (admitted Pro Hac Vice)

24                                        MElkin@winston.com
                                          200 Park Avenue

25                                        New York, NY  10166-4193
                                          Telephone:   (212) 294-6700

26
                                          Jennifer A. Golinveaux (SBN: 203056)

27                                        JGolinveaux@winston.com
                                          Cesie C. Alvarez (admitted Pro Hac Vice)

28                                        CAlvarez@winston.com

9                                                                 ESI PROTOCOL

101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:   (415) 591-1000

Erin Ranahan (SBN: 235286)
ERanahan@winston.com
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071-1543
Telephone:   (213) 615-1700

BEDNAREK LEGAL, PLLC
Michael D. Bednarek (admitted Pro Hac Vice)
michael@bednareklegal.com
1100 N. Glebe Road, Suite 1010
Arlington, VA  22201
Telephone:   (202) 997-1665

*Attorneys for Defendants*
*WowWee GROUP LIMITED, WowWee*
*CANADA, INC., WowWee USA, INC., and*
*GRAMPS GOODS, INC.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION**

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  April 20, 2023

Respectfully submitted,

By: /s/ *Andrew M. Gass*
Andrew M. Gass
LATHAM & WATKINS LLP
*Attorney for Plaintiffs Roblox Corporation and and Jazwares, LLC*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

Hon.  Susan Illston
UNITED STATES DISTRICT JUDGE

**APPENDIX A**
**PRODUCTION FORMAT PROTOCOL**

# I. PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

1. **Load files.** Except where noted in section (L) below, all ESI is to be produced in electronic format, with file suitable for loading into a compatible litigation support review database. All productions will include both image and metadata load files, as described below in Paragraph III, Load File Format.

2. **Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Paragraph IV that can be extracted from a document shall be produced for that document. The parties are not obligated to populate manually any of the fields in Paragraph IV if such fields cannot be extracted from a document, with the exception of the CUSTODIAN, PRODVOLID, and TIMEZONE, which shall be populated by the Producing Party.

3. **System Files.** Common system and program files need not be processed, reviewed or produced. The Producing Party shall keep an inventory of the system files not being produced and the criteria *(e.g.,* non-human readable file, etc.) for not processing the files.

4. **Email, Meeting Notes, Etc.** Email, meeting notes, calendar items, contacts, and tasks shall be collected in a manner that maintains reliable metadata and structure. Whenever possible, these forms of ESI shall be collected from the Producing Party's servers and/or email stores. Metadata and "header fields" shall be extracted from email messages.

5. **De-Duplication.** ESI shall be de-duplicated globally across all custodians and data sources (both vertically or horizontally). Hard copy documents should not be de-duplicated. All custodians who were in possession of a de-duplicated document must be identified in the CUSTODIANS_ALL metadata field (*see* paragraph III). Exact duplicate documents shall only be identified based on individual document MD5 or SHA-1 hash values only. However, removal of duplicate documents shall be done at the family level (e.g., a standalone document shall not be removed if it has the exact duplicate as part of an email family.) All Blind Copyees (BCC) recipient names that would have been provided in the BCC metadata field but are now excluded because of de-duplication must be identified in the BCC metadata field (*see* paragraph III). As part of rolling productions of documents or other ESI, the Producing Party shall provide supplement load files upon request for specific documents only, which should include, to the extent different from the originally produced metadata, updated CUSTODIANS_ALL, FILEPATHS_ALL, and BCC metadata.

6. **Thread Suppression.** The parties may also use email thread suppression to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production.

7. **TIFFs.** Single-page Group IV TIFF images shall be provided using at least 300 DPI print setting. Each image shall have a unique file name, which is the Bates/control number of

the document.  Original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape).  TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document.  Documents containing color need not be produced initially in color.  However, if an original document contains color necessary to understand the meaning or content of the document, the Producing Party will honor reasonable requests for a color image of the document.

8.      **Microsoft "Auto" Feature and Macros.**  Microsoft Office applications, including Word, Excel and PowerPoint, may contain "auto" feature settings that would cause a document date or similar information within the document, file names, file paths, etc. to automatically update when processed.  If the Producing Party identifies "auto date," "auto file name," "auto file path," or similar features within the documents that would deliver inaccurate information for how the document was used in the ordinary course of business, a TIFF image branded with the words "Auto Date," "Auto File Name," "Auto File Path," or similar words that describe the "auto" feature shall be produced.

9.      **Embedded Objects.**  Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded.  Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds shall not be extracted as separate documents.

10.     **Hidden Text**.  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

11.     **Hyperlinked Files**: Hyperlinked files such as those indicated by utilizing Microsoft Office's "Share Documents Via Link" or Google Documents' link feature or other third-party document sharing platforms will be produced upon reasonable request.  Other links in email to non-file sources, such as a website or QR code destination need not be produced.

12.     **Compressed Files.**  Compression file types (*e.g.,*.CAB,.GZ,.TAR,.Z,.ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files.  The container file itself shall not be produced.

13.     **Text Files.**  For each document, a single text file shall be provided along with the image files and metadata.  The text file name shall be the same as the Bates/control number of the first page of the document.  Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file.  In these instances a text file created using Optical Character Recognition (OCR) will be produced in lieu of extracted text.

14.     **Redaction.**  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  ESI that does not render well (e.g., spreadsheets) or cannot be rendered in mage format (e.g., audio files) can be redacted in native format.  The Producing Party will provide searchable text for those portions of the document that have not been redacted.  A party may not make redactions based on an assertion that the data is not relevant.  The only redactions permitted are on the basis of privilege, which

should be marked as such, as well as sensitive personal identifiable information (e.g., social security numbers, taxpayer-identification numbers, driver's license numbers, passport numbers, financial-account numbers or other bank account information, or personal passcodes).   A Producing Party may also redact personal data related to medical or health issues of an individual. Such redactions should be identified as "Redacted – Personal Data" or with similar label on the document.

15.     **Native Files.**  Various types of files, including but not limited to spreadsheets, presentation documents, media files, documents with embedded media files, documents with "macros," etc., lose significant information and meaning when produced as an image.  Any files that are produced in native format shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format, as well as all extracted text and applicable metadata set forth in Paragraph IV.

16.     **Spreadsheets.**  Excel spreadsheets shall be produced as a native document file along with the extracted text and relevant metadata set forth in Paragraph IV for the entire spreadsheet, plus a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format.

17.     **Custodial Mobile Devices & Personal Communications Data**

a)  **Mobile Devices.**  For document custodians agreed on by the parties or ordered by the Court, the Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any mobile devices in the possession, custody, or control of the Producing Party.  Unless agreed otherwise, the following shall govern the review and production of unique, responsive, and non-privileged communications for mobile device-based data for the agreed or ordered document custodians with respect to mobile devices in the possession, custody, or control of the Producing Party.  If mobile device data is in scope, the parties have an obligation to notify these custodians and ensure that preservation has been implemented.  This may include changing preservation settings (e.g., iPhone messages to be set to be saved "Forever"; backing up down to the cloud; and/or preserving using industry standard forensic tools and processes.).

i) Prior to any culling of the mobile device (including iPads and tablets) or cell phone data, a Producing Party will disclose the following to the extent reasonably possible: (1) a list of cell phone number(s) used by the document custodian for work purposes, if any, (2) whether or not the Producing Party claims that a cell phone used by the document custodian for work purposes is not within its possession, custody, or control.

ii) A Producing Party will review the following sources of information on a cell phone used for work purposes, to the extent reasonably available, to identify unique, responsive, and discoverable information; the parties will discuss and will not unreasonably oppose methods of culling the following responsive information:

- **Text Messages:** All text messages and/or iMessages on the mobile device or cell phone device used for work purposes or contained in available

backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a Producing Party.  The parties will meet and confer regarding issues relating to the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data.   At a minimum, the Producing Party will provide metadata with the production that indicates the custodian, specific device, and messaging platform the document originated from.

18. **Enterprise Messaging and other communications tools:** The parties will disclose at the outset any use of enterprise messaging tools meant to replace email, such as Slack or MS Teams, including the type of subscription and retention settings in place.  The parties will meet and confer regarding issues relating the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data.

19. **Social Media Data**: If a document custodian confirms that he or she (1) used Social Media (e.g., Facebook, Instagram, TikTok, BeReal, etc.) for business purposes and (2) used that Social Media to communicate regarding a subject relevant to the litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws.  The parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data.

20. **Other ESI that is Impractical to Produce in Traditional Formats (aka, Structured Data).**  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats.  To the extent a response to discovery requires production of discoverable electronic information contained in a database, the parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV or SQL format).

21. **Endorsements**.  The Producing Party will brand all TIFF images in the lower right-hand corner with the corresponding Bates/control numbers, using a consistent font type and size.  The Bates number must not obscure any part of the underlying data.  The Producing Party will brand all TIFF images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the parties.

22. **Exception Report.**  The Producing Party shall compile and retain an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

a) **Password-Protected Files.**  To the extent any produced documents are password-protected, the Producing Party must either unlock the document prior to production or provide passwords in order to allow access by the Receiving Party.  If the Producing Party is unable to process a document because of unknown passwords or other encryption that cannot be cracked using reasonably standard means, the Producing Party shall retain a listing of such documents in an exception report.

## II.   PRODUCTION OF PHYSICALLY STORED INFORMATION (HARD COPY DOCUMENTS)

1.   **TIFFs**.  Hard copy paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI).  Each image shall have a unique file name, which is the Bates/control number of the document.  Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

2.   **Metadata Fields**.  The following information shall be produced for hard copy documents and provided in the data load file at the same time that the TIFF images and the OCR-acquired text files are produced.  Each metadata field shall be labeled as listed below:

| FIELD NAME | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|
| **PRODBEGBATES** | The production Bates number associated with the first page of a document. | ABC0000001 |
| **PRODENDBATES** | The production Bates number associated with last page of a document. | ABC0000003 |
| **PRODBEGATTACH** | The production Bates number associated with the first page of the parent document. | ABC0000001 |
| **PRODENDATTACH** | The production Bates number associated with the last page of the last attachment in the document family. | ABC0000008 |
| **PGCOUNT** | Total number of pages for a document. | 00006 |
| **CUSTODIAN** | The name of the primary person the files belong to.  This field should be populated as last name, first name. | Doe, John |
| **PRODVOLID** | Production volume name. | ABC_PROD001 |
| **TEXTLINK** | The path to the full extracted OR OCR text of the document.  Text files should be named per control number or Bates number if the document is produced. | \TEXT\ABC000001.txt |

3.   **OCR Acquired Text Files.**  When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed.  Any settings such as "auto-skewing," "auto-rotation," and the like should be turned on when documents are run through the process.

4.   **Database Load Files/Cross-Reference Files.**  Documents shall be provided with (a) a delimited metadata file (.dat or.txt) and (b) an image load file (.opt), as detailed in Paragraph IV.

5.   **Unitizing of Documents.**  In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).  In the case of an organized compilation of

separate documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields.   The parties will make their best efforts to unitize documents correctly.

## III.    REQUESTED LOAD FILE FORMAT FOR ESI

1.    **Delimited Text File:** A delimited text file (.DAT or.CSV) containing the fields listed in Paragraph III should be provided.  The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable:

Comma - ASCII character 20 ( )

Quote - ASCII character 254 (þ)

Newline - ASCII character 174 (®)

2.    **Image Cross-Reference File (Load File):** The Image cross-reference file (.OPT) is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:

ImageID, VolumeLabel, ImageFilePath, DocumentBreak, PageCount

ImageID: The unique designation used to identify an image.  This should be the Bates number of the document.

VolumeLabel: The name of the volume.

ImageFilePath: The full path to the image file.

DocumentBreak: If this field contains the letter "Y," then this is the first page of a document.  If this field is blank, then this page is not the first page of a document.
PageCount: Number of pages in the document.

Sample Data

CNTRL00000001, VOL001,\IMAGES001\CNTRL00000001.TIF, Y,,,1

CNTRL00000002, VOL001,\IMAGES001\CNTRL00000002.TIF, Y,,,2

CNTRL00000003, VOL001,\IMAGES001\CNTRL00000003.TIF,,,,

CNTRL00000004, VOL001,\IMAGES001\CNTRL00000004.TIF, Y,,,4

CNTRL00000005, VOL001,\IMAGES001\CNTRL00000005.TIF,,,,

CNTRL00000006, VOL001,\IMAGES001\CNTRL00000006.TIF,,,,

CNTRL00000007, VOL001,\IMAGES001\CNTRL00000007.TIF,,,

## IV.    REQUESTED METADATA FIELDS FOR ESI

| FIELD NAME | TYPE | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|---|
| PRODBEGBATES | All | The production Bates number associated with the first page of a document. | ABC00000001 |
| PRODENDBATES | All | The production Bates number associated with last page of a document. | ABC00000003 |
| PRODBEGATTACH | All | The production Bates number associated with the first page of the parent document. | ABC00000001 |
| PRODENDATTACH | All | The production Bates number associated with the last page of the last attachment in the document family. | ABC00000008 |
| PRODVOLID | All | Production volume name. | ABC-VOL-001 |
| PGCOUNT | All | Total number of pages for a document.  Slipsheets will indicate one (1) page. | 25 |
| CUSTODIAN | All | The name of the first-processed custodian or data source the files belong to.  For persons, this field should be populated as last name, first name. | Doe, John |
| CUSTODIANS_ALL | All | All custodians who were in possession of a de-duplicated document.  This field should be populated as last name, first name and separated by semicolons for additional Custodians. | Doe, John; Doe, Jane |
| RECORD_TYPE | All | The record typing indicating whether the document is an email, email attachment, email attachment (email) [for attachments that are emails], E-Doc, or E-Doc Attachment, Hard Copy, or similar designations. | Email |
| FILE_EXTENTION | All | The file extension of a document. | docx |
| FILE_NAME | All | The file name of a document. | Document_Name.xls |
| EMAIL_SUBJECT | Email | The subject of an email. | Re: resume |
| DOC_TITLE | E-Files | The extracted document title for a loose file or attachment. | Resume.docx |
| DOC_AUTHOR | E-Files | The author of a document from entered metadata. | John Doe |
| EMAIL_FROM | Email | The email address and name of the person sender in the FROM field of every email metadata. | John Doe <jdoe@acme.com> |
| EMAIL_TO | Email | The email addresses and names of the recipients in the TO field of the email.  Multiple email addresses and names should be separated by | Jane Smith <jsmith@acme.com |

| | | semicolons. | |
|---|---|---|---|
| EMAIL_CC | Email | The email addresses and names of the recipients in the CC field.  Multiple email addresses and names should be separated by semicolons. | Bob Johnson <bjohnson@acme.com>; Sally May <smay@acme.com> |
| EMAIL_BCC | Email | The email addresses and names of the recipients in the BCC field.  Multiple email addresses and names should be separated by semicolons. | John Doe <jdoe@acme.com> |
| DATESENT | Email | The date when an email was sent. | MM/DD/YYYY |
| DATESENT_TIME | Email | The time an email was sent. | HH: MM: SS |
| DATERECEIVED | Email | The date an email was received. | MM/DD/YYYY |
| DATERECEIVED_TIME | Email | The time an email was received. | HH: MM: SS |
| DATELASTMOD | E-Files | The date a document was last modified. | MM/DD/YYYY |
| DATELASTMOD_TIME | E-Files | The time the document was last modified. | HH: MM: SS |
| DATECREATED | E-Files | The date the document was created. | MM/DD/YYYY |
| DATECREATED_TIME | E-Files | The time the document was created. | HH: MM: SS |
| FILESIZE | All | The size of the file in kilobytes (KB) including embedded attachments. | 125256 |
| TIMEZONE | All | The time zone the document was processed in. | PST, CST, EST, etc. |
| FILEPATH | All | The original file path to the source location of the native file in original environment (e.g., local folder, network folder, email folder, or files and/or mail store, etc.).  The file path should be prepended with the Custodian name. | \Doe_Jane\My_docs\resume.docx |
| HASH | All | The MD5, SHA, or similar "de-duplication key" hash value assigned to a document during processing. | 9CE469B8DFAD1058C3B1E745001158EA |
| REDACTED | All | Identifies whether a document is redacted. | Yes or Blank |
| CONFIDENTIALITY | All | Identifies a document's confidentiality designation. | Highly Confidential |
| NATIVELINK | All | The relative path to a native copy of a document.  The native file should be named per the control number or Bates number, if the document is produced. | \NATIVES\001\ABC00000001.xlsx |

| TEXTLINK | All | The relative path to a text file containing extracted OR OCR text of the document.  The Text file should be named per the control number or Bates number, if the document is produced. | \TEXT\001\ABC000 00001.txt |
|---|---|---|---|