UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER ON MOTION TO DISMISS, TO COMPEL ARBITRATION, AND TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br>Re: Dkt. No. 80 |

Before the court is plaintiff Roblox Corporation's motion to dismiss a counterclaim, compel arbitration of another counterclaim, and stay any remaining counterclaims pending the outcome arbitration. Dkt. No. 80. Defendants oppose. Dkt. No. 90. Argument was held on June 9, 2024. For the reasons discussed below, the Court **GRANTS** the motion to compel arbitration and **STAYS** proceedings, including the motion to dismiss, with respect to the remaining counterclaims.

## BACKGROUND

Plaintiff Roblox Corporation owns an online gaming platform known as the Roblox Platform, which it describes as a "digital world where users create virtual games and experiences and connect with other users." Dkt. No. 36 ¶ 27. While Roblox provides some of the platform's playable content, the platform also enables its users to "develop games, experiences, and virtual items" that they and other users can then enjoy. *Id.* Roblox users interact with the platform through customizable virtual characters known as "Avatars." *Id.* ¶ 4. Like other content on the platform, avatars can be designed and customized by users. *Id.* ¶¶ 5–7. Users who develop content on the Roblox Platform are known as "developers." *Id.* ¶¶ 6, 32–33.

Roblox protects its intellectual property by requiring its users to agree to its Terms of Use

1    ("TOU"). *Id.* ¶¶ 34–46. A user must agree to the TOU when creating an account to access the
2    Roblox Platform. *Id.* ¶¶ 36–38. The TOU includes an agreement that continued use of the Roblox
3    Platform after an update to the TOU constitutes agreement to the new terms. *Id.* ¶ 39. The TOU
4    include agreements that users will not use Roblox content outside of the Roblox Platform, monetize
5    Roblox content, or imply an association with Roblox for their businesses outside of the Roblox
6    Platform. *Id.* ¶ 7. The TOU also includes an arbitration agreement, which applies to "any dispute
7    arising under or relating to the Roblox Terms or the Services." Dkt. No. 36-1, Ex. 1(a) to the
8    Complaint, at ¶ 16(a). Plaintiffs allege that WowWee Group Limited, WowWee Canada, Inc., and
9    WowWee USA, Inc. (collectively, "WowWee") agreed to Roblox's TOU, including the arbitration
10   agreement, through their agent Sydney Wiseman. Dkt. No. 36 ¶ 111.

11          The parties agree that defendants created a line of "My Avastars" dolls and partnered with
12   Gamefam to create a "My Avastars: RP" virtual tie-in experience on the Roblox platform. *Id.* ¶ 2;
13   Dkt. No. 74 at 31–32. Gamefam is a developer which has described itself as "the first and only
14   fully-dedicated, professional game publishing company on Roblox." *Id.* ¶ 68. Plaintiffs allege that
15   in partnering with Gamefam for the My Avastars project, defendants violated Roblox's TOU and
16   plaintiffs' intellectual property rights. Dkt. No. 36 ¶ 2.

17          Defendants argue that after learning about the planned "My Avastars" project, Roblox
18   improperly changed its TOU to expand its intellectual property rights and prevent My Avastars from
19   going forward. Dkt. No. 74 at 36. When that didn't work, Roblox threatened WowWee with legal
20   action and pressured Gamefam to pull out of the agreement. *Id.* at 37–38. Defendants allege that
21   Gamefam initially assured WowWee it would continue to work on the My Avastars project, but
22   changed course after a July 11, 2022 meeting with Roblox. *Id.* Defendants argue Roblox
23   "successfully induced Gamefam to renege on its partnership agreement" using "the leverage of . . .
24   the Roblox platform [Gamefam] depended on for the bulk of its business." *Id.* at 38. On October
25   19, 2022, defendants moved to dismiss several of plaintiffs' claims and moved to compel arbitration
26   of others. Dkt. No. 45. On March 9, 2023, this Court issued an order granting in part and denying
27   in part defendants' motion to dismiss and to compel arbitration. Dkt. No. 69.

28          On April 13, 2023, defendants filed an amended answer. Dkt. No. 74. The amended answer

includes two counterclaims against Roblox: one by WowWee Group Limited and WowWee Canada, Inc. (collectively, the "international defendants") for intentional interference with prospective economic advantage ("IIPEA"), and one by WowWee for intentional interference with contractual relations ("IICR").[1] *Id.* at 39–41. Roblox moves to dismiss the claim for IIPEA, to compel arbitration of WowWee USA's counterclaim for IICR, and to stay any remaining counterclaims pending the outcome of arbitration. Dkt. No. 80.

**LEGAL STANDARD**

Under Section 4 of the Federal Arbitration Act (FAA), when a party makes a motion to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is yes, the Court must enforce the agreement. *Id.*

**DISCUSSION**

**A.      Motion to Compel Arbitration**

The WowWee defendants bring a counterclaim against Roblox for intentional interference with contractual relations based on its alleged breach and disruption of WowWee's partnership with Gamefam. Dkt. No. 74 at 39–40. Roblox moves to compel arbitration of WowWee USA's IICR claim pursuant to the arbitration agreement in Roblox's TOU.[2] Dkt. No. 80 at 20.

The Court must determine "(1) whether a valid agreement to arbitrate exists and, if it does,

---

[1] The amended answer also included a counterclaim by defendant Gramps Goods, Inc., which Roblox also moved to dismiss. Dkt. No. 80 at 10. Gramps Goods has voluntarily dismissed the counterclaim. Dkt. No. 89.

[2] This Court previously held that the arbitration agreement does not apply to the international defendants. *See* Dkt. No. 69 at 13–15.

3

1  (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). For the purposes of this motion, the parties only dispute whether the agreement encompasses the dispute at issue.[3] WowWee argues that the arbitration agreement does not encompass the IICR claim because the claim "does not arise under or relate to the defined 'Roblox Terms' or 'Services.'" Dkt. No. 90 at 7. Roblox argues that the arbitration agreement encompasses the IICR counterclaim and, in any event, equitable estoppel requires arbitration because WowWee availed itself of the benefits of the TOU. Dkt. No. 80 at 20–31.

The arbitration agreement in the TOU applies to "any dispute arising under or relating to the Roblox Terms or the Services." Dkt. No. 36-1, Ex. 1(a) to the Complaint, at ¶ 16(a). "Roblox Terms" is defined as "the User Terms, the Creator Terms, the DevEx Terms, the Roblox Community Standards, the DMCA Guidelines and Policies and the Roblox TM Guidelines." Dkt. No. 36-1, Ex. 1(d) to the Complaint. "Services" is defined as "[c]ollectively, all of the various features and services, like websites, applications, forums and the Platform, which Roblox makes available to Users to allow Users to play, create and connect." *Id.*

The Ninth Circuit has repeatedly "held that the phrase 'arising under' in an arbitration agreement should be interpreted narrowly." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011). Such language "is intended to cover . . . only those [disputes] relating to the interpretation and performance of the contract itself." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). But the phrase "arising out of or relating to" is interpreted more broadly.[4] *Cape Flattery Ltd.*, 647 F.3d at 921. Here, the fact that the parties used the broader phrase "arising under or relating to" means the arbitration agreement is not limited to

---

[3] WowWee states in a footnote that it "does not concede" that Sydney Wiseman "acted as WowWee USA's agent, let alone that she agreed to Roblox's [Terms] on behalf of WowWee USA or any other Defendant." Dkt. No. 90 at 7 n.7. But "[a]rguments raised only in footnotes . . . are generally deemed waived." *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). At the motion hearing on June 9, 2023, WowWee stated that it was not disputing the validity of the agreement for the purposes of this motion.

[4] The Ninth Circuit treats "arising hereunder," "arising under," and "arising out of" as synonymous. *Cape Flattery Ltd.*, 647 F.3d at 922.

4

1    disputes relating to the interpretation and performance of the contract itself. *See id.* The arbitration
2    agreement in this case is even broader because it covers disputes arising under and relating to not
3    only the "Terms," but also the "Services." Dkt. No. 36-1, Ex. 1(d) to the Complaint.

4        WowWee contends that because the alleged tortious conduct "could have been accomplished
5    even if the Agreement did not exist," the agreement does not cover it. *Id.* at 9 (quoting *Aviation All.*
6    *Ins. Risk Retention Grp., Inc. v. Polaris Enter. Grp., Inc.*, 2017 WL 2799151, at *4 (D. Mont. June
7    27, 2017)). But the cases WowWee cites for this proposition all involve the narrower "arising
8    under" standard. *Aviation All. Ins. Risk Retention Group*, 2017 WL 2799151, at *3 (noting that
9    although arbitration clause used broad "arising out of or relating to" language, the termination of
10   the parties' agreement limited enforcement to "disputes arising under the contract"); *Wireless*
11   *Warehouse, Inc. v. Boost Mobile, LLC*, No. SACV 09-1436-MLG, 2010 WL 891329, at *5 (C.D.
12   Cal. Mar. 10, 2010) (interpreting arbitration clause for "All Disputes under this Agreement"). When
13   broader contractual language is used, "to require arbitration, a party's factual allegations need only
14   'touch matters' covered by the contract containing the arbitration clause." *In re TFT-LCD (Flat*
15   *Panel) Antitrust Litig.*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ) (internal punctuation
16   omitted) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). Nor does
17   WowWee's argument address the broader reach of an arbitration agreement that covers not only a
18   contract but the "Services" associated with that contract.

19       "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,
20   whether the problem at hand is the construction of the contract language itself or an allegation of
21   waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*
22   *Corp.*, 460 U.S. 1, 25 (1983). Here, however, there is little doubt. The arbitration agreement
23   encompasses disputes arising under and relating to the Services, which are defined to include the
24   Roblox platform itself. Dkt. No. 36-1, Ex. 1(d) to the Complaint. WowWee's IICR claim rests on
25   Roblox's alleged interference with an agreement between WowWee and Gamefam to create a tie-
26   in experience on the Roblox platform. WowWee's claim that Roblox interfered with a partnership
27   to create something on the Roblox platform certainly arises under or relates to that platform. The
28   claim therefore "relates to" the Services, including the Roblox platform, and is encompassed by the

United States District Court
Northern District of California

5

arbitration agreement.

The motion to compel arbitration is granted.[5]

**C.    Motion to Stay**

Roblox moves to stay all counterclaims pending resolution of the arbitration of WowWee USA's IICR counterclaim. The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "[I]t may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) (quoting *Moses H. Cone Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Here, the Court finds that considerations of economy and efficiency weigh in favor of a stay, and failure to grant a stay would prejudice Roblox's right to arbitration. *See id.* There is significant overlap between the facts giving rise to the IICR claims brought by the international defendants and the IICR claim brought by WowWee USA. *See* Dkt. No. 74 at 39–40. And the IIPEA claims require the same showing as the IICR claims, with an additional element. The Court finds that a stay of the IICR and IIPEA counterclaims is appropriate.

**CONCLUSION**

The motion to compel arbitration of WowWee USA's counterclaim for intentional interference with contractual relations is **GRANTED**. Proceedings are **STAYED** as to all remaining counterclaims pending the outcome of that arbitration. Accordingly, the Court does not

---

[5] Because the Court finds that arbitration of the IICR counterclaim is mandated by the agreement of the parties, it does not reach Roblox's alternative argument that equitable estoppel requires arbitration.

6

yet rule on the motion to dismiss the international defendants' counterclaim for intentional interference with prospective economic advantage.

**IT IS SO ORDERED**.

Dated: June 20, 2023

SUSAN ILLSTON
United States District Judge