UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>  Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER RE: DISCOVERY DISPUTES**<br>Re: Dkt. No. 129 |

Before the Court are numerous discovery disputes between the parties, filed on October 20, 2023 in a joint discovery letter. Dkt. No. 129. The Court has reviewed the relevant briefing and attachments, and rules as follows:

**I.    Roblox's Discovery Requests**

   **A.    Customer Correspondence**

This dispute concerns RFP Nos. 51, 52, and 53, in which Roblox requests "All communications with customers, potential customers, and retailers… regarding My Avastars Fashion Dolls and any related Products, including but not limited to Communications addressing Product complaints and returns"; "All Documents and Communications related to Customer reviews of My Avastars Fashion Dolls and any related Products"; and "All Communications related to complaints regarding My Avastars Fashion Dolls and any related Products, including but not limited to Customer complaints and Retailer complaints." Dkt. No. 129-6 at 9-11. Defendants argue that Roblox's requests for all communications that concern in any way My Avastars products (RFP 51), "customer reviews" (RFP 52), or generalized "complaints" about the products (RFP 53) are overbroad and go far beyond consumer confusion and promotion of the dolls. The Court agrees

with defendants that Roblox's request is overbroad. The Court orders defendants to produce all responsive non-privileged documents pertaining to communications with customers, potential customers, and retailers regarding My Avastars Fashion Dolls ("Dolls") that reflect complaints, returns, and reviews, to the extent they have not already been produced. Regarding RFP No. 52, defendants need not produce reviews that are publicly available.

### B. Marketing and Sales

**1. Target Market for Products.** This dispute concerns RFP No. 58, in which Roblox requests "All Documents and Communications related to the target market for My Avastars Fashion Dolls and any related products." Dkt. No. 129-6 at 14. Roblox argues that defendants improperly limited the request by agreeing to produce only documents "sufficient to identify the target market of My Avastars Fashion Dolls and research concerning such markets." Dkt. No. 129-6 at 14. Roblox argues the reasons for the target market and any changes to that market over time are relevant to the likelihood-of-confusion analysis. Defendants respond that they have already produced hundreds of marketing documents and thousands of pages of published and unpublished marketing related materials, encompassing thousands of emails and hundreds of gigabytes of data. The Court finds Roblox's request vague and overbroad. If Roblox continues to seek specific categories of documents related to the target market for the Dolls that have not yet been produced, Roblox must identify them.

**2. My Avastars Fashion Dolls' Design and Sale.** Roblox asserts that defendants have failed to produce "significant discovery" responsive to requests regarding the design, manufacture, and sale of the Dolls and have failed to produce any documents regarding the sale of a new series of Dolls and only a handful of documents related to their design. Defendants respond that they will search for and (if responsive) produce the "tooling" document Roblox refers to and will investigate whether responsive unproduced documents exist concerning updates to the My Avastars doll body with respect to the four new dolls. Roblox argues that all documents regarding the design of these new dolls should be produced, not just those pertaining to the doll

2

body. The Court agrees that defendants' limitation of updates to the My Avastars doll body excludes potentially relevant information. Defendants are ordered to produce all responsive non-privileged documents regarding the design, manufacture, and sale of the new series of Dolls, to the extent they have not already been produced. If further discovery disputes remain pertaining to documents and communications regarding the design, manufacture, and sale of the Dolls, Roblox must specify what these disputes are.

**3.  Social Media Marketing and Communications.** This lengthy dispute concerns RFP Nos. 64, 108, and 109, which Roblox argues defendants have "impermissibly narrowed or refused to respond to." Dkt. No. 129 at 3. In these RFPs, Roblox requests: "All Documents and Communications related to all Influencers who created content focused on Roblox with whom WowWee partners or has previously partnered, including but not limited to all agreements with such Influencers"; "Documents sufficient to identify all social media accounts used by Sydney Wiseman or other WowWee employees to discuss, market, promote, or advertise My Avastars Fashion Dolls, the My Avastars:RP Experience, the My Avastars Game, and any related Products"; and "All Documents and Things related to Sydney Wiseman's or other WowWee employees' use of social media accounts in connection with Your Products (including but not limited to videos and text posted by the @sydwiseman TikTok account and videos and text posted on all other social media accounts) to discuss, market, promote, or advertise My Avastars Fashion Dolls, the My Avastars:RP Experience, the My Avastars Game, and any related Products." Dkt. No, 129-6 at 18; Dkt. No. 129-7 at 26-27.

Roblox also asserts that defendants have refused to produce discovery related to the @sydwiseman TikTok account. Defendants argue that Ms. Wiseman's account is a personal account, WowWee does not use it to advertise or promote its products, does not dictate or control the content Ms. Wiseman posts, and does not pay Ms. Wiseman for its use. Roblox argues that it is irrelevant that this account is a personal account rather than a WowWee account, referring the Court to the ESI Stipulation governing this case at Dkt. No. 76.

The parties further dispute whether defendants are required to produce social media content

that is publicly available. Roblox argues that it has no way of identifying all responsive publicly available social media posts and that public availability is not a basis for withholding discovery. Defendants refuse to collect, review, and produce publicly available material that they argue is "equally available" to Roblox.

Regarding RFP No. 64, defendants claim they have produced contracts and communications with the social media influencers WowWee hired to promote My Avastars products. It is unclear what additional documentation Roblox claims has not been produced. If Roblox still believes RFP No. 64 has not been complied with, Roblox must specify what documentation they believe is being withheld.

Regarding RFP No. 108, the Court agrees with defendants that providing usernames for Sydney Wiseman and other WowWee employees' social media accounts used to discuss, market, promote, or advertise the listed products constitutes sufficient documentation to *identify* all such social media accounts.

Regarding RFP No. 109, the Court orders defendants to produce all responsive documents and communications from Ms. Wiseman's and other social media accounts used to discuss, market, promote, or advertise the My Avastars products, *to the extent they are not publicly available*. In other words, defendants must produce responsive social media posts that are no longer available online, posts that have been taken down, and non-public content. The Court agrees with defendants that Roblox can collect publicly available social media content, so long as defendants provide Roblox with the usernames or other identifying information for all accounts that may have responsive information.

The Court agrees with Roblox that the @sydwiseman TikTok account is covered by the production requests regardless of whether it is characterized as a personal or work account, to the extent this account was used for business purposes or to communicate about or promote the products at issue in this litigation.

Lastly, the Court finds the language "any related Products" in RFP Nos. 108 and 109 vague and overbroad. To the extent Roblox believes there are other related products, Roblox must identify them.

**4.     Advertising Generally.**  This dispute concerns RFP Nos. 66 and 110.

In RFP No. 66, Roblox requests "All Documents and Communications related to how Customers of My Avastars Fashion Dolls and any related Products heard of or otherwise became aware of those Products, including but not limited to internal or third-party studies, surveys, investigations, research, and/or analyses." Dkt. No. 129-6 at 18. Defendants assert that they are searching for copies of identified TV commercials and marketing briefs and will produce them if nonprivileged, responsive, and not already produced. To the extent defendants have not already done so, the Court orders defendants to produce all responsive nonprivileged documents related to how customers of My Avastars Fashion Dolls became aware of the dolls. Defendants also assert that Roblox has requested "everything related to the commercial." To the extent documents and communications related to the commercial at issue *are also related to how customers of the dolls became aware of the dolls*, this request is encompassed by the Court's order.

In RFP No. 110, Roblox requests "Documents sufficient to show your published advertising materials and advertising metrics (such as your marketing spend, number of impressions and interactions, number of conversions, and return on investment) for My Avastars Fashion Dolls, the My Avastars:RP Experience, My Squishy Little toys, Twilight Daycare Collectible Babies toys, Blox Babies toys, and any related Products." Dkt. No. 129-7 at 28. As an initial matter, defendants are ordered to produce all responsive non-privileged documents relating to published advertising and advertising metrics of the My Avastars Fashion Dolls and My Avastars:RP Experience. This includes TV commercials for the Dolls and briefs for marketing agencies to use to promote the Dolls that include relevant information, to the extent these documents have not yet been produced.

The parties disagree about to the extent to which defendants must produce marketing, advertising, and sales documents for unrelated product lines relevant to WowWee's affirmative defenses, specifically the My Squishy Little and Twilight Daycare Collectible Babies toys, which appeared in the Twilight Daycare experience. Defendants admit that the fact that Roblox did not object to WowWee's prior similar collaboration with Gamefam on unrelated product lines is relevant to WowWee's affirmative defenses, but argue that Roblox's request as to these unrelated

product lines is not proportional and they have produced relevant financial information concerning Twilight Daycare Collectible Babies toys. The Court finds the documents requested in this RFP—published advertising materials and advertising metrics—for My Squishy Little toys and Twilight Daycare Collectible Babies toys relevant and orders production of responsive non-privileged documents pertaining to these toys. The Blox Babies toys are not referenced in the amended complaint or amended answer; the Court is unclear on their relevance to this litigation and does not order such materials produced.

Lastly, the Court again finds the language "any related Products" in RFP Nos. 66 and 110 vague and overbroad; to the extent Roblox believes there are other related products falling within the scope of these RFPs, Roblox must identify them.

**5.  Keyword Search Terms for Products at Issue.** This dispute concerns an interrogatory (No. 9) and various RFPs (59, 60, and 61) where Roblox seeks discovery related to defendants' use of keyword search terms on websites and online platforms to advertise, market, or promote the Dolls and other products at issue. Roblox asserts this information is of "critical importance" to its Lanham Act claims. Dkt. No. 129 at 6. Defendants respond that the documents Roblox seeks concerning advertising keywords lack relevance to this case as Roblox does not allege confusion from any use of keywords. Additionally, defendants confirm that a third party, not WowWee makes decisions about what keywords to purchase. The Court agrees with Roblox that keyword search terms are relevant because Roblox's Lanham Act claims involve the marketing and sale of the Dolls online and allegations that defendants diverted consumers looking for Roblox toys toward the Dolls. *See* Dkt. No. 36 (Amended Compl.) ¶¶ 174, 176. The Court therefore orders defendants to respond to Interrogatory No. 9[1] and produce responsive nonprivileged documents within their possession regarding use of keyword search terms to advertise, market, or promote the Dolls, including briefs to third parties regarding the keyword search terms and files related to the

---

[1] In their response to Interrogatory No. 9, defendants object that Roblox has exceed the number of interrogatories permitted by the Federal Rules. *See* Dkt. No. 129-8 at 10. If responding to this interrogatory as ordered would exceed the permitted number, the Court allows it.

6

1   search terms received from the third parties referenced in this discovery letter brief.  *See* Dkt. No.
2   129 at 7.

4   **6.     Marketing and Sale of Roblox Digital Products (e.g., Codes).**  This dispute
5   concerns RFP No. 88, in which Roblox requests "All Documents and Communications regarding
6   WowWee's marketing and sale of digital products on the Roblox platform." Dkt. No. 129-7 at 12.
7   Roblox argues that defendants have put at issue Roblox's treatment of other WowWee products
8   allegedly marketed as coming with in-game codes for digital products on Roblox.  WowWee
9   responds that they have already provided thousands of pages of marketing documents concerning
10  the Dolls and "related products," including redemption codes.  Although the Court agrees that
11  WowWee has put other lines of toys beyond the Dolls at issue in their answer, the Court finds RFP
12  No. 88 vague and overbroad.  Roblox must specify what digital products it is referring to.

14  **7.     My Squishy Little Toys and Twilight Daycare Collectible Babies Toys.**
15  This dispute concerns various production requests relating to the My Squishy Little and Twilight
16  Daycare Collectible toys, the creation, sale, and advertising of which Roblox argues defendants have
17  put at issue through their answer.  *See* Dkt. No. 74 at 24-25.  Roblox argues discovery about these
18  toys is also relevant because it provides a benchmark for a reasonable royalty for defendants'
19  infringement.  The referred to RFPs (Nos. 54-55, 81-83, and 102) seek communications with
20  customers and retailers regarding My Squishy Little and Twilight Daycare Collectible toys,
21  including communications addressing product complaints and returns; documents "sufficient to
22  show the unit sales, revenues, costs, and profits," "business, marketing, competitive, and financial
23  strategy plans," and "pricing policies, approaches, changes, and/or strategies" for these toys; and
24  documents and communications related to Gamefam's involvement with these products. Dkt. Nos.
25  129-6 at 11-12, 129-7 at 8-10, 22.  Defendants respond that WowWee has not put at issue any
26  information concerning the My Squishy Little line of toys because these toys are a physical product
27  unrelated to the Roblox platform.  WowWee indicates it will produce the "relevant agreement" with
28  Gamefam concerning the arrangement with Gamefam to promote the My Squishy Little line of toys

United States District Court
Northern District of California

7

online. WowWee further asserts that they have produced relevant financial and sales information for the licensed Twilight Daycare Collectible toys as well as the relevant agreement with Gamefam.

Regarding RFP No. 102, WowWee asserts that it has produced or will produce the relevant agreements with Gamefam for both lines of toys. It is unclear if Roblox asserts these agreements are insufficient to comply with this RFP; if so, Roblox must specify what additional "documents and communications" related to Gamefam's involvement with these toy lines are requested.

The Court disagrees with defendants that they have not put at issue "any information" regarding the My Squishy Little line of toys because defendants reference the My Squishy Little toys in their answer in asserting that WowWee relied on Roblox's past behavior and course of conduct. *See* Dkt. No. 74 at 24. The Court agrees with Roblox that the creation, sale, and marketing of these toys as well as the Twilight Daycare Collectible toys is relevant to defendants' asserted defenses. The Court orders defendants to produce responsive non-privileged documents with respect to the My Squishy Little line of toys as requested in RFP Nos. 54-55 and 81-83 and RFP No. 102, to the extent they has not already done so.

Regarding the Twilight Daycare Collectible toys, the Court orders defendants to produce responsive nonprivileged communications with customers and retailers regarding these toys. *See* RFP Nos. 54-55. Regarding RFP Nos. 81-83, WowWee asserts they have produced relevant financial and sales information for the Twilight Daycare Collectible toys. If Roblox believes this production is insufficient, Roblox must specify what additional production is requested.

**8. Communications with Roblox/Jazwares.** This dispute relates to RFP No. 114, where Roblox requests "All communications with any current or former employees or contractors of Roblox or Jazwares." Dkt. No. 129-7 at 31. In response to defendants' contention that they have no way of knowing who works for Roblox and Jazwares, Roblox explains what information would address what is sought in this RFP. *See* Dkt. No. 129 at 8. Defendants dispute Roblox's theory of relevance and assert that to the extent such individuals were involved in the conception, design, development, or manufacturing of the Dolls, WowWee has produced responsive documents in response to other requests. However, defendants also indicate they are considering

8

Roblox's narrowing request and are willing to discuss a reasonable compromise. The Court thus finds that this dispute is not ripe. If the parties, after meeting and conferring, are unable to reach a compromise, they may return to the Court with this dispute.

### C. Damages

**1. Financial Information.** This dispute concerns RFP Nos. 84 and 85, where Roblox requests "All Documents and Communications supporting, substantiating, underlying, or otherwise relating to the data contained in [two Bates stamped documents], including but not limited to agreements, invoices, and receipts." Dkt. No. 129-7 at 10. The Bates stamped documents at issue are "two spreadsheets that detail the alleged sales, profits, and expenses for My Avastars Fashion Dolls." Dkt. No. 129 at 9. Roblox argues it is entitled to discovery on the underlying information in the spreadsheets so it can understand the spreadsheets and test their veracity. WowWee responds that the data in the spreadsheets was produced in reasonably useable form and that Roblox's demand is overbroad and not proportional to the needs of the case. WowWee further indicates it has designated 30(b)(6) witnesses to testify about these two documents. The Court agrees with WowWee that this request is overbroad. If additional documentation is still needed to understand the spreadsheets after the 30(b)(6) witness depositions, Roblox must specify what additional documentation is requested.

**2. WowWee's Intellectual Property and Prior Settlement Agreements.** This dispute concerns RFP Nos. 90, 91, 92, all related to defendants' intellectual-property license agreements and settlement of a previous intellectual-property lawsuit. In these RFPs, Roblox requests "All Documents and Communications reflecting final expert damages reports, damages-related court filings and orders, and settlement agreements related to WowWee's litigation with Gibson Guitar Corporation"; "All agreements, including but not limited to license agreements, granting any Defendant the right to use any third-party intellectual property"; and for each of defendants' intellectual-property licensing agreements, "Documents and Communications sufficient to show [] forecasted and actual financial results related to the agreement." Dkt. No. 129-

1   7 at 14-15. Roblox argues this discovery is directly relevant to its reasonable-royalty damages
2   theory. WowWee disagrees that expert, license, and settlement documents are relevant or
3   responsive. Roblox proposed at a meet and confer that it will accept final, executed licensing
4   agreements for WowWee's other toy lines. WowWee indicates it "will consider producing relevant
5   agreements in response to RFPs 91 and 92" but that the request for documents relating to "forecasted
6   and actual financial results" is overbroad.

7         The Court agrees with Roblox that past agreements are relevant to a reasonable-royalty
8   damages theory. The Court agrees with WowWee that in RFP Nos. 91 and 92, the request for
9   documentation of any third-party intellectual property agreement is vague and overbroad; Roblox
10  must specify what third parties and intellectual property or what categories thereof. The Court finds
11  that Roblox has done so in requesting final, executed licensing agreements for WowWee's other toy
12  lines. WowWee is thus ordered to produce these agreements. Additionally, the Court orders
13  WowWee to produce responsive nonprivileged actual financial results related to those agreements.
14  The Court agrees that forecasted financial results relating to those agreements is overbroad. Lastly,
15  the Court orders WowWee to produce responsive nonprivileged documents in response to RFP No.
16  90 (litigation with Gibson Guitar Company) because this request is potentially relevant and
17  reasonably specific.

18

19      **D.**    **Interrogatory No. 18**

20        In this disputed interrogatory, Roblox asks WowWee to "Identify in detail the factual basis
21  for each financial figure" contained in a Bates stamped document with "145 lines." Dkt. No. 129 at
22  10. WowWee argues that this interrogatory contains discrete subparts because it seeks a detailed
23  explanation of the factual basis for each of 145 financial figures in the document. The Court does
24  not have access to the referenced Bates stamped document and is consequently unable to determine
25  whether each financial figure is a discrete subpart. The parties are directed to provide the Court
26  with the referenced Bates stamped document to resolve this dispute.

27

28      **E.**    **Data Sources & Production Deficiencies**

For all disputes in this category, WowWee argues that Roblox's demands that WowWee produce documents from additional data sources "based on stray references to those sources during deposition" lack merit. Dkt. No. 129 at 11. Other than the Discord dispute, the disputes in this category are not tied to specific RFPs or interrogatories.

**1.     Text, Skype, Teams, and Chat Messaging.** This dispute concerns Skype and text messages that were allegedly referred to in responses to other production requests or during deposition testimony.

Regarding Skype messages, Roblox asserts that defendants produced emails indicating WowWee employees frequently communicate via Skype chat but have failed to produce any Skype chat messages. WowWee responds that Roblox's demand lacks merit. They assert that the cited document indicates that one of WowWee's former contractors appears to have communicated with another former contractor via Skype chat and WowWee has no access to those third-party documents. WowWee also asserts that contrary to Roblox's assertion, Andrew Yanofsky did not testify that he communicates via Skype chat, only that he "uses" Skype. The Court does not have access to the referenced documents and deposition testimony. If what WowWee asserts is true, the Court does not order any further production. If Roblox disagrees with WowWee's factual assertions, Roblox must provide the Court with the referenced discovery documents and deposition testimony for the Court's review.

Regarding text messages, Roblox asserts that Ms. Wiseman testified that she regularly texts family members, specifically Andrew Yanofsky and Michael Yanofsky, to discuss work, but defendants have not produced a single text message between just these three individuals. Specifically, Roblox refers to testimony from Andrew Yanofsky that it is possible the Dolls were discussed between these three individuals over a group text but the group chat was not checked for purposes of this lawsuit to see whether there are text messages related to the Dolls. WowWee responds that Roblox's complaint that Ms. Wiseman has not produced texts between just her and her family members does not establish that any responsive texts have been withheld and that WowWee has produced nearly 1,500 of Ms. Wiseman's responsive text messages. The Court orders

11

WowWee to determine whether the Dolls were discussed between Ms. Wiseman and the Yanofskys over a group chat that has not yet been checked, and if so, to produce the additional responsive text messages related to the Dolls.

Lastly, Roblox argues that when defendants did produce text messages, they did so improperly because they produced the messages with a single message/sentence per page, making it impossible for Roblox to determine what each message was responding to and whether messages were omitted. WowWee responds that Roblox's claim that defendants did not produce text messages as they are kept in the ordinary course of business is incorrect. The parties dispute whether the text messages were produced as they are kept in the ordinary course of business, but the Court does not have access to the relevant discovery documents and deposition testimony. Roblox is directed to provide the Court with the referenced documents and testimony if Roblox still requests the Court resolve this dispute. WowWee is directed to specify how text messages are kept in the ordinary course of business.

**2.  Asana Project Management.**  This dispute concerns the Asana project management platform, which defendants use to manage packaging workflow, including of the Dolls. According to Roblox, Ms. Wiseman approximated she has 40,000 unread emails from her Asana account but defendants have produced just three documents referencing Asana and no content from the Asana platform. WowWee responds that it has produced responsive email notifications from the Asana platform, which reproduce Asana notifications, as well as relevant versions of product packaging. WowWee argues that non-public discussions "about the minutiae of decisions that were never implemented lack relevance to this case." Dkt. No. 129 at 12. It is unclear to the Court based on the parties' briefing whether responsive requested documents related to the Asana platform have been produced. If WowWee believes it has produced all requested, responsive, documents, it should so indicate in a signed declaration. If Roblox believes that requested, responsive documents relating to the platform have not been produced it should refer the Court to the relevant production request(s), specify the relevance of Asana platform content, and indicate what platform content it is requesting.

**3.     Sydney Wiseman's Gmail Account.**  Roblox indicates that it demanded Ms. Wiseman's gmail account be included in WowWee's searches for responsive information after defendants produced a number of documents that included Ms. Wiseman's personal gmail address, but defendants refused. Roblox further indicates that Ms. Wiseman testified in her deposition that she uses her gmail account for work purposes. WowWee responds that Roblox's discussion confuses the differences between use of Google tools and Google email. WowWee indicates it has searched for and produced relevant documents from Ms. Wiseman's general Google account, but has repeatedly confirmed that Ms. Wiseman uses her official WowWee email for work purposes, not her personal Gmail email account. The Court cannot resolve this dispute based on the briefing. Both parties must provide the Court with the portions of deposition testimony they claim support their positions.[2] If WowWee believes it has produced all responsive nonprivileged documents regarding Ms. Wiseman's personal Google account, including Google email, it should so state in a signed declaration.

**4.     Discord.**  This dispute concerns RFP No. 104, where Roblox requests "All Communications on Discord about Roblox or with Gamefam." Dkt. No. 129-7 at 23. Roblox asserts that defendants have produced documents indicating that communications on Discord about Roblox or with Gamefam exist, yet defendants have failed to produce any Discord chat messages or records. WowWee responds that the Discord Roblox refers to was set up by a Gamefam representative for My Avastars, so the messages are not in WowWee's possession, custody, or control. The Court cannot resolve this dispute without reviewing the deposition testimony and discovery documents the parties cite to; the parties are directed to provide the Court with the documentation that supports their assertions. To the extent there are responsive documents in WowWee's possession, custody, or control, the Court finds this request overbroad; Roblox must specify what categories of

---

[2] Roblox quotes deposition testimony where Ms. Wiseman was asked "And you use your personal Google account for WowWee business" to which she responded "Yes, I do." Dkt. No. 129 at 11. It is unclear to the Court whether "personal Google account" includes personal email account or only other Google tools.

communications or communications with what individuals it requests, and a time frame.

## II. Defendants' Discovery Requests

### A. General Discovery Requests

**1. RFP No. 72.** This RFP seeks "All Agreements concerning Your ownership of the ROBLOX mark and the scope of Your rights, including any assignment or license agreements between You and any third party." Dkt. No. 129-2 at 7. WowWee asserts that Roblox only agrees to produce assignments and documents "sufficient to show" its "licensing practices" since 2016. Dkt. No. 129 at 12. Roblox responds that it has "agreed to produce all assignments concerning its ownership of the ROBLOX mark and the scope of its rights, including any assignment agreements between Roblox and any third party." *Id.* at 13. Roblox argues the request for "license agreements" is overbroad because of the "volume of agreements in which Roblox authorizes minor uses of its trademarks" but that Roblox remains willing to work with defendants to reach a compromise on this issue. *Id.*

The parties' assertions about what Roblox has agreed to are contradictory. The Court agrees with WowWee that the time limitation of 2016 is inappropriate, but it appears Roblox has agreed to produce assignment documents without this time limitation. Regarding license agreements, the Court orders WowWee to specify what categories of license agreements. If the parties remain unable to resolve this dispute, they may return to Court, but must jointly specify what Roblox has and has not agreed to produce.

**2. RFP Nos. 78, 80, 84, 87, 88.** These RFPs seek various documents regarding the alleged Roblox trade dress. Roblox asserts that it has responded to these RFPs in full from January 1, 2016 to the present and that defendants "have not identified any legal basis for why information responsive to these requests going back more than 7 years is relevant or a justification for the burden that is necessarily involved." Dkt. No. 129 at 13. WowWee appears to disagree that Roblox has responded to these RFPs in full from January 1, 2016, indicating that Roblox has refused to produce documents relating to other characters beyond those in this suit that Roblox claims embody the alleged trade dress. Defendants also argue that the 2016 time limitation is not warranted

14

United States District Court
Northern District of California

1  because Roblox alleges that the base avatars were created before 2016. The Court agrees with
2  WowWee that documents relating to other characters beyond those in this suit that Roblox claims
3  embody the alleged trade dress must be produced, if Roblox has not already done so. Regarding the
4  time limitation, the Court agrees with defendants that documents prior to 2016 are relevant to
5  Roblox's trade dress claims and orders plaintiffs to produce all responsive non-privileged
6  documents without limitation as to time.

8        **3.**     **RFP Nos. 102, 103, 104.** These RFPs seek various documents related to
9  agreements with third parties to license Roblox's alleged intellectual property. WowWee asserts
10 that Roblox refuses to produce its licenses with third parties except for those in connection with its
11 "physical products," and argues this limitation is inappropriate because Roblox's licensing practices
12 are directly relevant to the strength of Roblox's trade dress and the degree of control it asserts over
13 the use of its intellectual property. Roblox responds that it has disclosed to WowWee the types of
14 agreements that mention Roblox trademarks that it is withholding on the basis of overbreadth and
15 is continuing to confer with defendants on producing a representative sample of agreements Roblox
16 maintains are irrelevant to this suit. The Court finds this dispute not yet ripe, as Roblox indicates
17 the parties are continuing to confer. The Court agrees with WowWee that licenses related to digital
18 products are relevant, but does not have enough information before it to determine whether these
19 requests are overbroad. The parties are directed to meet and confer and to return to the Court if they
20 are unable to resolve this dispute.

22       **4.**     **Interrogatory No. 20.** In this interrogatory, WowWee asks Roblox to
23 "[d]escribe in detail any meetings that You had with Gamefam from July 1, 2022 through August
24 31, 2022, including the identities of the attendees, the topics and nature of the discussions, and any
25 related follow-up correspondence You had with Gamefam." Dkt. No. 129-1 at 11. The parties'
26 dispute specifically concerns a meeting between Roblox and Gamefam on July 11, 2023. WowWee
27 argues that Roblox's production of documents relating to this meeting only generally lists topics
28 and provides no detail as to what was discussed, and a more detailed response is necessary in light

15

of Roblox's failure to produce its communications with Gamefam outside of those involving outside counsel. Roblox responds that it has produced all responsive, non-privileged information in its possession, custody, or control regarding the July 11, 2023 meeting. The Court directs WowWee to specify what documents or categories of documents it believes Roblox has not yet produced. The Court also directs the parties to indicate under what production request the July 11, 2023 meeting falls given Interrogatory No. 20 requests information on meetings from July 1, 2022 through August 31, 2022.

### B.     Requests Related to Defendants' Affirmative Defenses

WowWee indicates the parties remain at impasse regarding the below categories of documents that it asserts are relevant to defendants' equitable defenses of license, acquiescence, waiver, estoppel, and unclean hands.

**1.     RFP Nos. 59, 62, 65, 66.** In these RFPs, WowWee requests (1) documents concerning or memorializing meetings or communications between Roblox and Gamefam from January 2022 (RFP No. 65) and (2) documents concerning Gamefam's compliance or non-compliance with Roblox's Terms of Use, recent disputes with Gamefam, recent meetings or communications with Gamefam, and communications with Gamefam concerning Roblox's Terms of Use. Dkt. No. 129-3 at 10, 15, 19-20. With respect to (1), WowWee asserts that Roblox only agreed to produce documents related to WowWee's relationship with Gamefam and that Roblox produced calendar items indicating it met with Gamefam about the My Avastars project before filing this lawsuit but refused to produce any related documents. With respect to (2), WowWee asserts that after meet and confer, Roblox limited production to responsive documents concerning the intellectual property asserted in this case and the "intellectual property provisions" in Roblox's Terms of Use.[3] WowWee argues these limitations are not justified given its affirmative defenses of

---

[3] Roblox indicates it has produced all non-privileged documents, located after a reasonable search, "related to (1) both Gamefam and the Roblox intellectual property asserted in this case, and (b) both Gamefam and the intellectual property provisions in Roblox's Terms of Use." Dkt. No. 129 at 15.

16

license and acquiescence alleged in its amended answer.

Roblox responds that WowWee's requests as written would "encompass nearly every piece of correspondence between Roblox and Gamefam across all time" and that requiring more than what Roblox has agreed to produce would be "unduly burdensome" given the fact that Gamefam is a major Roblox developer with 200 team members designing dozens of Roblox games and experiences. Dkt. No. 129 at 15-16. Roblox also asserts that it has produced "all correspondence with Gamefam that also concerned Roblox's intellectual property or the Roblox Gamefam experiences at issue in this litigation" and that it is not withholding "correspondence with Gamefam about Roblox redeemable code." Dkt. No. 129 at 16.

With respect to RFP No. 65, the Court orders Roblox to produce all responsive, non-privileged documents, *not* limited to documents related to WowWee's relationship with Gamefam. With respect to RFP No. 59 (documents and communications concerning Gamefam's compliance or noncompliance with Roblox's Terms of Use), the Court orders Roblox to produce all responsive, non-privileged documents. Regarding RFP No. 62 (documents and communications concerning disputes with Gamefam since January 1, 2019), the Court likewise orders Roblox to produce all responsive, non-privileged documents, noting that the request is limited in time. Lastly, the Court finds RFP No. 66 (requesting "All communications with Gamefam concerning the Roblox Terms of Use") overbroad. WowWee must specify what categories of communications it is seeking or specify a timeframe.

**2.     RFP No. 63.** In RFP No. 63, WowWee requests "All documents concerning any disputes or complaints You had concerning any other brand or product appearing on Roblox with respect to whether the brand or product violated the Roblox Terms of Use..." Dkt. No. 129-3 at 16. WowWee asserts that Roblox agreed to produce such documents concerning only WowWee products, namely My Avastars Fashion Dolls, Twilight Daycare Collectible Babies toys, and My Squishy Little Dumplings toys. WowWee argues a limitation to disputes or complaints concerning only physical toys is unjustified because some product lines were part of a branded integration available on the Roblox platform. WowWee also argues that Roblox's limitation to documents

17

related to "intellectual property asserted in this case and/or the intellectual property provisions of Roblox's Terms of Use" is designed to avoid production of documents relevant to WowWee's defenses, which are not limited to the intellectual property asserted in this case. Roblox responds that WowWee does not define "brand," every experience on Roblox is arguably a brand, and so understood, WowWee is seeking information about the entirety of the Roblox platform. The Court agrees with Roblox that this request is overbroad but agrees with WowWee that Roblox has narrowed the request to exclude potentially relevant documents. WowWee is directed to specify which brands or products or categories thereof and provide a timeframe for this request. If the parties are unable to resolve this dispute after WowWee narrows the request and the parties meet and confer, they may return to Court.

**3.    RFP No. 68.** In RFP No. 68, WowWee requests "All documents and communications concerning any dispute with a User or Creator concerning ownership of intellectual property in any User Generated Content… in connection with Roblox Terms or the Roblox Platform since January 1, 2021." Dkt. No. 129-3 at 23. Roblox indicates it has produced or will produce such documents to the extent they also relate to Roblox intellectual property, the intellectual property at issue in this action, and/or redeemable codes. It is unclear to the Court what additional documents WowWee believes are responsive to this request. WowWee is directed to specify what additional documents they believe are encompassed by this request. If the dispute remains after Roblox produces what it has indicated it will produce in Dkt. No. 129 at 17, the parties may return to the Court after meeting and conferring.

Defendants also seek a protective order on two 30(b)(6) topics in their joint discovery letter. *See* Dkt. No. 129 at 17-20. This request will be addressed by the Court in a separate order.

If either party believes that certain production requests encompass documents related only to dismissed claims, stayed claims, or claims that were sent to arbitration, and have no relevance to the remaining claims, the parties may file a joint letter with briefing specific to this issue.

If the parties require an extension of any deadlines in the discovery schedule in light of this order, they may stipulate to extended discovery deadlines.

**IT IS SO ORDERED**.

Dated: December 4, 2023

_____

SUSAN ILLSTON
United States District Judge