UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>    Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER RE: DISCOVERY PRIVILEGE DISPUTES AND ASSOCIATED ADMINISTRATIVE SEALING MOTION**<br><br>Re: Dkt. Nos. 185, 186 |

**I.   Discovery Disputes Concerning Privilege Designations by WowWee**

Before the Court is a joint discovery letter submitted by the parties in which Roblox Corporation ("Roblox") challenges attorney-client privilege designations for three categories of documents designated as privileged by WowWee Group Limited, et al. ("WowWee") in its privilege logs. Dkt. No. 185.

As an initial matter, the parties dispute whether Roblox's privilege challenges are untimely and thus waived. Roblox argues in a footnote that WowWee's contention that Roblox waived its privilege challenges is baseless. Dkt. No. 185 at 1 n.1. WowWee served a privilege log containing 36 entries on November 14, 2023. *See* Dkt. No. 146-3. On December 4, WowWee served a second supplemental privilege log with 146 entries after the Court ordered production of additional documents. *See* Dkt. No. 174-3. This "necessitated Roblox's December 19, 2023 outreach to WowWee and the parties' subsequent conferrals." Dkt. No. 185 at 1 n.1, 3. Roblox adds that fact discovery is ongoing in light of the Court's February 2, 2024 order requiring additional production. *See* Dkt. No. 184.

WowWee asserts that its November privilege logs listed entries for Vivian Arellano and Weber Shandwick ("Weber")/Interpublic Group ("Interpublic"). Dkt. No. 185 at 3-4. The parties refer to a November 1 and November 14 privilege log. WowWee contends that its service of a supplemental privilege log on December 4 "did not alter Roblox's deadline to challenge entries and issues on the previous logs." *Id.*

Under the Civil Local Rules, no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off. Civil L. R. 37-3. Under the pretrial scheduling order, the fact discovery cut-off in this case was November 8, 2023. *See* Dkt. No. 133. However, the Court has issued five substantive discovery orders since that date requiring substantial additional production by the parties. While there is an entry involving Weber and Interpublic on WowWee's November 14 supplemental privilege log, s*ee* Dkt. No. 146-3 at PL_032,[1] given the fact that the November 14 log contains 36 entries while the January privilege logs contain 153 entries, and given the fact that production is ongoing in light of the Court's most recent discovery order, the Court finds it appropriate to reach the privilege disputes presented by the parties. Each dispute is addressed in turn.

### A.     Early Light

This dispute concerns portions of emails to and/or from Ryan Wong and Wilson Ng, employees of non-party company Early Light, that include no attorneys. Dkt. No. 185 at 2. WowWee indicates that it "conducted a reasonable investigation and determined that Mr. Wong and Mr. Ng were acting as agents of Francis Choi, who is part owner [of] WowWee Hong Kong, at the relevant time and received the privileged communications pursuant to those roles." *Id.* at 5. WowWee does not contend that the emails at issue included attorneys.

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). "Under federal law, the attorney-client

---

[1] WowWee also asserts that two entries involving Vivian Arellano appear on WowWee's November 1 privilege log, which has not been filed on the docket. Dkt. No. 185 at 3 n.3.

2

privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009). The burden lies with the party claiming the privilege to prove each element of a "well-established eight-part test":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* at 607-08 (citations omitted). It is unclear why the emails at issue would be protected when no attorneys were included in the exchanges. The cases cited by WowWee in the joint letter brief do not involve communications solely between non-attorneys. WowWee is thus ordered to brief the Court on why these communications are protected under the attorney-client privilege by **March 6, 2024** and to submit the emails at issue to the Court for *in camera* review. *See In re Grand Jury Witnesses*, 695 F.2d 359, 362 (9th Cir. 1982) ("The proper procedure for asserting the attorney-client privilege as to particular documents . . . [is] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege"). Roblox may then file a response no later than March 13, 2024.

### B. Vivian Arellano

This dispute concerns emails with third-party Vivian Arellano, along with several attachments. Dkt. No. 185 at 2. Counsel is allegedly not included in these emails. *Id.* Arellano "was hired by WowWee (via its holding company for research and development, Echoer) as a design contractor and [was] involved in the design of the My Avastars dolls." *Id.* at 4. "Specific to the communications here, she assisted with preparation of materials to facilitate legal opinions from outside counsel and carried out design tasks on the My Avastars dolls pursuant to legal advice from outside counsel." *Id.* WowWee argues that her inclusion on the "privileged communications" thus falls within the "functional employee doctrine." *Id.*

The "functional employee doctrine" comes from *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994). There, the Eighth Circuit found that "when applying the attorney-client privilege to a

3

1 corporation or partnership, it is inappropriate to distinguish between those on the client's payroll
2 and those who are . . . employed as independent contractors." *Id.* at 937. The court focused on the
3 purpose of the attorney-client privilege, noting that it "rests on the need for the advocate and
4 counselor to know all that relates to the client's reasons for seeking representation if the professional
5 mission is to be carried out." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
6 The court reasoned that "[s]uch information will, in the vast majority of cases, be available from the
7 client or the client's employees, but there undoubtedly are situations . . . in which too narrow a
8 definition of 'representative of the client' will lead to attorneys not being able to confer
9 confidentially with nonemployees who, due to their relationship to the client, possess the very sort
10 of information that the privilege envisions flowing most freely." *Id.* at 938. The contractor at issue
11 in *Beiter* had "been involved on a daily basis with the principals of [the company] and on [the
12 company's] behalf in the unsuccessful development" that served as the basis for the litigation. *Id.*
13 He also worked out of the company's office and was paid a monthly fee and expenses, attended
14 meetings with corporate counsel either alone or with the manager, was represented by the
15 partnership's counsel during his deposition, and his primary responsibility was to secure tenants for
16 the real estate development in question. *Id.* at 933-34. He was, "for purposes of the privilege, the
17 functional equivalent of [the company's] employee" and the attorney-client privilege applied to
18 communications made by him to counsel on the company's behalf. *Id.* at 940.

19 The Ninth Circuit adopted the principles articulated in *Bieter* in *U.S. v. Graf*, 610 F.3d 1148,
20 1159 (9th Cir. 2010), finding that the attorney-client privilege applies to communications between
21 a "functional employee" of a company and the company's counsel. The court found that although
22 the defendant called himself an outside consultant, his role at the company was that of a "functional
23 employee." *Id.* at 1157, 1159. He "regularly communicated with insurance brokers and others on
24 behalf of [the company], marketed the company's insurance plans, managed its employees, and was
25 the company's voice in its communications with counsel." *Id.* at 1157. "More importantly, he was
26 the company's primary agent in its communications with corporate counsel." *Id.* at 1159. As one
27 "empowered to act on behalf of the corporation[,]" Graf's communications with corporate counsel
28 fell within the company's corporate attorney-client privilege. *Id.* at 1158-59.

4

Based on the limited facts before the Court, it does not appear that Arellano is WowWee's functional employee. WowWee cites a list of cases but does not explain how Arellano's relationship with WowWee is comparable to relationships between contractors and companies where courts found a "functional employee" relationship. However, given the limited nature of the information before the Court, the Court will permit further briefing on this issue. *See In re Napster Inc.*, 479 F.3d 1078, 1093 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (holding in the context of the crime-fraud exception that "in a civil case the party resisting an order to disclose materials alleged protected by the attorney-client privilege must be given the opportunity to present evidence and argument in support of its claim of privilege"). WowWee is ordered to brief the Court on how Arellano is a "functional employee" under the principles laid out in *Bieter*, *Graf* and *Upjohn* and submit the communications at issue for *in camera* review by **March 6, 2024**. Roblox may respond no later than March 13, 2024.

### C. Public Relations Communications

This dispute concerns privilege log entries involving members of the public relations ("PR") firms Weber and Interpublic.[2] WowWee "hired these firms to deal with the fallout of Roblox's interference with WowWee's relationship with Gamefam and Roblox's communications to WowWee's customers claiming that the My Avastars fashion dolls infringed Roblox's intellectual property, and they worked hand-in-hand with WowWee's outside counsel." Dkt. No. 185 at 5. "After Roblox sent its cease-and-desist letter to WowWee, and shortly before litigation was filed, WowWee's outside counsel directly engaged Weber to provide crisis PR support vis-à-vis this litigation." *Id.* "When this litigation was threatened, Dave Malacrida, WowWee's longtime in-house PR consultant, was utilized to consult with counsel regarding the legal implications of the litigation on retailer communications and strategy." *Id.* Malacrida "has been the public face of WowWee's PR for years, communicates on behalf of WowWee, and is known as WowWee's PR head." *Id.*

---

[2] "Weber is the PR offering within Interpublic. Certain Interpublic members assisted in the litigation response engagement as part of the Weber team." Dkt. No. 185 at 5 n.5.

WowWee contends that the firms' inclusion on the communications at issue does not break the attorney-client privilege because they were retained to work directly with WowWee's counsel to assist them in providing legal advice. *Id.* at 4-5 (citation omitted). WowWee contends that the privilege attaches to communications involving Malacrida because he was involved in the giving of legal advice or alternatively was a functional employee. *Id.* at 5 (citation omitted).

The Court cannot determine whether the communications at issue are privileged without reviewing the underlying documents, and thus orders WowWee to submit the documents for *in camera* review by **March 6, 2024**. WowWee must show that the third parties at issue were retained for the purpose of giving legal advice, not merely for the purpose of providing business advice. *See In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-cv-3709, 2006 WL 1699536, at *7 (N.D. Cal. June 16, 2006), *as clarified on recon.*, 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006); *see also Lights Out Holdings, LLC v. Nike, Inc.*, No. 14-cv-872, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015) (indicating that where the PR communications reflect the "provision of ordinary PR services, privilege will not attach" and privilege will attach only in the limited circumstances where disclosure was necessary for the parties' attorney to "render sound legal advice"). If WowWee provides additional briefing with the submission of documents for *in camera* review, Roblox may respond no later than March 13, 2024.

## II. Associated Administrative Sealing Motion

Roblox concurrently filed an administrative motion to consider whether another party's material should be sealed pursuant to Local Rule 79-5(f). Dkt. No. 186. Within seven days of the filing of a motion to consider whether another party's material should be sealed, the Designating Party (here WowWee) must file a statement and/or declaration that satisfies the requirements of Civil Local Rule 79-5(c)(1). Civil Local Rule 79-5(f)(3). A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party. *Id.* Defendants did not submit a statement as required under Local Rule 79-5(f)(3). The provisionally sealed documents at Dkt. No. 186, consisting of the parties' joint discovery letter brief and two versions of WowWee's privilege log, shall thus be unsealed and filed

1  publicly on the docket.  Roblox's administrative motion to consider whether another party's material
2  should be sealed is DENIED.

4  **IT IS SO ORDERED**.
5  Dated: February 27, 2024

_____
SUSAN ILLSTON
United States District Judge