LATHAM & WATKINS LLP
Andrew M. Gass (Bar No. 259694)
*andrew.gass@lw.com*
Sarah M. Ray (Bar No. 229670)
*sarah.ray@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
*elana.nightingaledawson@lw.com*
Carolyn M. Homer (Bar No. 286441)
*carolyn.homer@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison S. Blanco (Bar No. 287554)
*allison.blanco@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: +1.213.485.1234

*Attorneys for Plaintiff Roblox Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ROBLOX CORPORATION,

Plaintiff,

v.

WOWWEE GROUP LIMITED, WOWWEE CANADA, INC., WOWWEE USA, INC., and GRAMPS GOODS, INC.,

Defendants.

Case No. 3:22-cv-04476-SI

**ROBLOX CORPORATION'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID FRANKLYN**

Date: May 24, 2024
Time: 10:00 a.m.
Location: Courtroom 1, 17th Floor
Judge: Hon. Susan Y. Illston

**REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 24, 2024, at 10:00 a.m., or at such date and time as the Court may order, Plaintiff Roblox Corporation ("Roblox") will and hereby does move this Court for an order to exclude the expert reports and testimony of David Franklyn, an expert witness for Defendants WowWee Group Limited, WowWee Canada, Inc., WowWee USA, Inc., and Gramps Goods, Inc. (collectively, "WowWee"). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Allison S. Blanco, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

**RELIEF SOUGHT**

Roblox respectfully requests an order pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to exclude parts of David Franklyn's rebuttal opinions to Dr. Michel Tuan Pham's expert report and related testimony.

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....................1

II. BACKGROUND ....................1

- A. Mr. Franklyn's Background and Experience ....................1
- B. Dr. Pham's Marketing- and Consumer-Psychology-Based Opinions ....................2
- C. Mr. Franklyn's Legal Analyses and Opinions ....................4

III. LEGAL STANDARD ....................4

IV. ARGUMENT ....................5

- A. Mr. Franklyn's Rebuttal to Dr. Pham Should Be Excluded Because He Opines on Legal Standards and Conclusions ....................5
  - 1. Mr. Franklyn's Opinion that [REDACTED] Is an Improper Legal Opinion ....................6
  - 2. Mr. Franklyn's Opinion that [REDACTED] Is an Improper Legal Opinion ....................9
- B. Mr. Franklyn's Rebuttal to Dr. Pham Should Be Excluded Because He Is Not a Marketing Expert ....................11

V. CONCLUSION ....................12

## TABLE OF AUTHORITIES

### CASES

*AirWair Int'l Ltd. v. Pull & Bear Espana SA*,
No. 19-cv-07641-SI, 2021 WL 2914082 (N.D. Cal. July 12, 2021) .............................. *passim*

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11-cv-01846, 2012 WL 2571332 (N.D. Cal. June 30, 2012)..........................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).........................................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ..........................................................................................10

*Gable v. Nat'l Broad. Co.*,
727 F. Supp. 2d 815 (C.D. Cal. Feb. 22, 2010), *aff'd*, 438 F. App'x 587 (9th Cir. 2011) .........................................................................................................5, 7, 9

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ............................................................................................6

*Jaguar Land Rover Ltd. v. Bombardier Recreations Prods., Inc.*,
No. 16-cv-13386, 2019 WL 13032105 (E.D. Mich. Jan. 4, 2019) .....................................1, 11

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).........................................................................................................5

*Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ..............................................................................................5

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ............................................................................12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ...................................................................5, 7, 9, 11

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
20 F.4th 466 (9th Cir. 2021) ............................................................................................11

*P & P Imps. LLC v. Johnson Enters., LLC*,
46 F.4th 953 (9th Cir. 2022) ..............................................................................................8

*Sportvision, Inc. v. SportsMEDIA Tech. Corp.*,
No. 04-cv-03115, 2005 WL 8177792 (N.D. Cal. Apr. 12, 2005).....................................6, 7, 9

*Stillwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ..........................................................................................4

*Torres v. City of Santa Clara*, No. 5:13-cv-01475, 2014 WL 4145509 (N.D. Cal. Aug. 20, 2014) ....... 12

*United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000) ....... 5, 11, 12

*United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004) ....... 4

*United States v. Santini*, 656 F.3d 1075 (9th Cir. 2011) ....... 12

*United States v. Tamman*, 782 F.3d 543 (9th Cir. 2015) ....... 6

*Waters v. Notorious Media, LLC*, No. 21-cv-08623, 2022 WL 3446110 (Aug. 17, 2022), *amended*, 2023 WL 3436081 (C.D. Cal. May 11, 2023) ....... 8

**RULES**

Fed. R. Evid. 702 ....... 4, 5

**OTHER AUTHORITIES**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed. 2022) ....... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

David Franklyn, one of WowWee's experts, has gone beyond his realm of expertise to rebut the opinions of Roblox's marketing expert Michel Tuan Pham. Mr. Franklyn is a lawyer with no degree or formal education in marketing or psychology. Rather, as relevant here, his professional experience is focused on trademark surveys and legal academia. Neither qualifies him to criticize the reliability and rigor of Dr. Pham's methodologies and opinions, which are grounded in marketing and consumer psychology theories. Lacking expertise in marketing, Mr. Franklyn resorts to making legal arguments to attack Dr. Pham's opinions. Mr. Franklyn's core criticism is that [REDACTED] . Setting aside the fact that Dr. Pham does not opine otherwise, experts are not permitted to invade the province of this Court by instructing on what the law is. Nor may they usurp the roles of both this Court and the jury by reaching conclusions on the ultimate legal issues in this case.

Despite those well-established rules, this is not the first time Mr. Franklyn has attempted to evade them. Indeed, courts have previously precluded him from offering legal conclusions and have likewise prevented him from rebutting the opinions of marketing experts given his lack of relevant expertise. *See AirWair Int'l Ltd. v. Pull & Bear Espana SA*, No. 19-cv-07641-SI, 2021 WL 2914082, at *5–6 (N.D. Cal. July 12, 2021) (excluding Mr. Franklyn's opinions that "amount to legal conclusion"); *Jaguar Land Rover Ltd. v. Bombardier Recreations Prods., Inc.*, No. 16-cv-13386, 2019 WL 13032105, at *3 (E.D. Mich. Jan. 4, 2019) (excluding Mr. Franklyn's rebuttal testimony to a marketing expert because "the Court is not persuaded that Mr. Franklyn is a marketing and branding expert because of his experience teaching marketing courses"). The same result is warranted here.

## II. BACKGROUND

### A. Mr. Franklyn's Background and Experience

Mr. Franklyn is a rebuttal expert retained by WowWee. He submitted three reports in this case, one of which is styled as a rebuttal report to the expert report of Dr. Pham ("Rebuttal to Dr.

Pham"). Dr. Pham is Roblox's marketing expert. Dr. Pham has an undergraduate degree in economics and a Ph.D. in marketing. Ex. 5 at 1; Ex. 6 at 9:18–10:5.[1] He has been teaching business courses in marketing at Columbia University for nearly 30 years. Ex. 5 at 1; Ex. 6 at 9:13–17. He has published extensively on marketing and consumer psychology issues and has been retained as a marketing expert in numerous cases. Ex. 5 at 2–8, 25; Ex. 6 at 10:17–20. Mr. Franklyn, in contrast, has an undergraduate degree in History, Philosophy, and Religion and a Juris Doctor degree. Ex. 2 at 2. Unlike Dr. Pham, Mr. Franklyn has no expertise in marketing. He does not have any degree—or educational training—in marketing, economics, social sciences, mathematics, or statistics. Ex. 3 at 14:20–22, 15:5–10. After law school, Mr. Franklyn worked as a practicing attorney before becoming a law professor in 1999. Ex. 3 at 15:11–22; Ex. 2 at 1–2. From July 2018 to June 2021, he "taught business school at Golden Gate University . . . including several classes relating to marketing and surveys." Ex. 3 at 14:24–15:2. The rest of his career, outside of serving as an expert witness, has been spent as a law professor. Ex. 2 at 1–2.

### B. Dr. Pham's Marketing- and Consumer-Psychology-Based Opinions

Dr. Pham submitted an expert report ("Pham Report") that offers several opinions based on well-established theories in marketing and consumer psychology and a variety of real-world marketplace data about consumer behavior and perception. Mr. Franklyn purports to rebut the following three opinions offered by Dr. Pham.

First, Dr. Pham opines that Roblox's trade dress in the classic and neoclassic avatars is "distinctive" and "strongly associated with Roblox as a brand in the minds of relevant consumers." Ex. 4 (Pham Rpt.) ¶ 88. He explains that, "[f]rom a consumer psychology perspective, this question pertains to whether relevant consumers are likely to identify a stimulus featuring the asserted trade dress . . . as belonging to the brand category 'Roblox.'" *Id.* ¶ 70. Based on "well-established principles of consumer psychology," "the degree to which people are likely to use the characteristics of the stimulus to categorize it . . . as belonging to . . . a particular brand" depends on whether those attributes are "(a) observable, (b) typical of other members of the category in

---

[1] "Ex." refers to exhibits to the Declaration of Allison S. Blanco filed concurrently with this motion.

question, and (c) uncommon in alternative categories." *Id.* ¶¶ 36, 70, 88. Applying those standards, Dr. Pham concludes that, from a marketing- and consumer-psychology perspective, "there is strong evidence that Roblox's asserted avatar trade dress . . . is likely to be strongly associated with Roblox as a brand in relevant consumers' minds" and that the Roblox trade dress "has acquired secondary meaning." *Id.* ¶¶ 87–88; *see also* Ex. 6 at 186:5–24; 255:4–12; 257:2–18. He uses the term "secondary meaning" to mean that the set of attributes that form the Roblox trade dress have "acquired a certain level of recognition among a relevant set of consumers that point to a particular source," which is Roblox in this case. Ex. 6 at 17:7–23. He does not opine on whether that level of recognition establishes secondary meaning as a legal matter. *See* Pham Rpt. ¶¶ 70–88; Ex. 6 at 186:5–24, 255:4–12 (Dr. Pham testifying that he is "not offering a legal opinion").

Second, Dr. Pham opines that the My Avastars Fashion Dolls WowWee markets elicit substantial consumer association with the Roblox brand and are likely to cause some degree of consumer confusion that the dolls are from Roblox or affiliated with Roblox. Pham Rpt. ¶¶ 12, 89–113. To reach that conclusion, Dr. Pham collects data from two marketplace settings: Amazon reviews posted by purchasers of My Avastars Fashion Dolls, and TikTok comments posted by viewers of videos promoting My Avastars Fashion Dolls. *Id.* ¶¶ 98–111. He analyzes these reviews and comments for unprompted references to Roblox, which he concludes shows "significant consumer associations with Roblox in the marketplace, and some degree of consumer confusion about the relation between the My Avastars product and Roblox." *Id.* ¶ 113. Dr. Pham further analyzes "evidence of actual confusion" as reflected in the "multiple inquiries" Roblox received "from consumers who had purchased My Avastars dolls and attempted to redeem virtual codes that came with the dolls on the Roblox Platform." *Id.* ¶ 112.

Third, Dr. Pham opines that the sales and marketing of the My Avastars Fashion Dolls "is likely to harm Roblox by diluting the asserted avatar trade dress, causing an unwanted transfer of associations to the Roblox brand, and a partial loss of control of the Roblox brand identity." *Id.* ¶¶ 12, 114–28. Dr. Pham's opinion here is based on well-established theories in marketing about consumer perceptions of a brand, in particular the "associative network models of memory" that

marketing scholars often use to conceptualize consumer memory for brand-related information. *Id.* ¶¶ 21–32, 114–28.

**C. Mr. Franklyn's Legal Analyses and Opinions**

In his Rebuttal to Dr. Pham, Mr. Franklyn opines that [REDACTED] To support his opinions, Mr. Franklyn conducts two affirmative surveys—[REDACTED], which are not the subject of this motion. Unrelated to those surveys, and as detailed below, Mr. Franklyn invokes and analyzes several legal standards to offer legal conclusions regarding Dr. Pham's opinions.

First, Mr. Franklyn opines that [REDACTED] and "has no foundation in the relevant law." Ex. 1 (Franklyn Rpt.) at 5–6, 19–22, 30–34; Ex. 3 at 244:18–247:22, 252:1–17, 262:12–20. To support that conclusion, he relies on various sections of the *McCarthy on Trademarks and Unfair Competition* legal treatise. Franklyn Rpt. at 19–20, 31. Mr. Franklyn also opines that [REDACTED]. *See id.* at 12–13, 18–19, 33–34.

Second, Mr. Franklyn opines that [REDACTED] *Id.* at 7, 37, 44–50, 58. Here, too, he relies on the *McCarthy* treatise not only to reach his conclusion but also to opine on the "[REDACTED]." *Id.* at 46–47. And when asked at his deposition about a portion of these opinions, Mr. Franklyn responded by opining on what "[a] judge would say." Ex. 3 at 266:6–268:4.

**III. LEGAL STANDARD**

Federal Rule of Evidence 702 "embodies 'the twin concerns of "reliability" . . . and "helpfulness."'" *Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004)). Accordingly, "expert testimony . . .

is admissible only if it is both relevant and reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Expert testimony is permissible only "if [the expert's] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *see* Fed. R. Evid. 702(a). "To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (quoting Fed. R. Evid. 702). As the party proffering Mr. Franklyn's testimony, WowWee bears the burden of proving that Mr. Franklyn's testimony is admissible under Federal Rule of Evidence 702. *See Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## IV. ARGUMENT

The opinions of Mr. Franklyn described above should be excluded for two reasons. First, Mr. Franklyn's opinions include descriptions of legal standards as well as his own legal conclusions, both of which are impermissible as experts cannot invade the province of this Court to instruct on the legal standards or reach legal conclusions. Second, Mr. Franklyn lacks expertise in both marketing and consumer psychology, and is therefore not qualified to rebut Dr. Pham's opinions that are based on marketing- and consumer-psychology analyses.

### A. Mr. Franklyn's Rebuttal to Dr. Pham Should Be Excluded Because He Opines on Legal Standards and Conclusions

Mr. Franklyn seeks to rebut several of Dr. Pham's opinions by making legal arguments. In particular, Mr. Franklyn opines [redacted]. It is well established, however, that "an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. Feb. 22, 2010), *aff'd*, 438 F. App'x 587 (9th Cir. 2011); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give . . . an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the

court." (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004))); *AirWair Int'l Ltd. v. Pull & Bear Espana SA*, No. 19-cv-07641-SI, 2021 WL 2914082, at *5 (N.D. Cal. July 12, 2021) ("An expert cannot testify to a matter amounting to a legal conclusion." (quoting *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015))); *Sportvision, Inc. v. SportsMEDIA Tech. Corp.*, No. 04-cv-03115, 2005 WL 8177792, at *2 (N.D. Cal. Apr. 12, 2005) ("Federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case."). Indeed, this Court has previously prohibited Mr. Franklyn from offering opinions that "amount to legal conclusion." *AirWair*, 2021 WL 2914082 at *5. The same result is warranted here.

**1. Mr. Franklyn's Opinion that [REDACTED] [REDACTED] Is an Improper Legal Opinion**

Relying on "well-established principles of consumer psychology," Dr. Pham opines on whether relevant consumers are likely to identify a stimulus featuring the Roblox trade dress as belonging to the brand category "Roblox" by analyzing whether the trade dress is "(a) observable, (b) typical of other members of the category in question, and (c) uncommon in alternative categories." *See* Pham Rpt. ¶¶ 36, 70, 88. After studying the contents of a variety of marketplace and consumer-behavior data to determine whether avatars featuring the Roblox trade dress were commonly used by Roblox users, were prevalent in offline Roblox products, and were common in other gaming and virtual experiences platforms comparable to Roblox, Dr. Pham concludes, from a marketing- and consumer-psychology perspective, that "there is strong evidence that Roblox's asserted avatar trade dress . . . is likely to be strongly associated with Roblox as a brand in relevant consumers' minds" and that the Roblox trade dress "has acquired secondary meaning." *Id.* ¶¶ 70–88. Dr. Pham explained during his deposition that he used the phrase "secondary meaning" to mean that the attributes that form the Roblox trade dress have "acquired a certain level of recognition" among relevant consumers that would identify Roblox as the source, and that he is "not offering a legal opinion." Ex. 6 at 17:7–23, 186:5–24, 255:4–12.

Mr. Franklyn opines that [REDACTED] . *See* Franklyn Rpt. at 5–6, 19–22, 30–34; Ex. 3 at 244:18–247:22, 252:1–17, 262:12–20. In reaching this conclusion, Mr. Franklyn offers several legal opinions, discusses various legal standards, and opines on the ultimate question whether the evidence presented proves secondary meaning as a matter of law. Such opinions—and testimony—are categorically impermissible for an expert. *See Sportvision*, 2005 WL 8177792, at *3–4 (excluding expert for providing "an inadmissible legal conclusion" on whether secondary meaning is established); *Gable*, 727 F. Supp. 2d at 835–36 (precluding David Nimmer from testifying, in a copyright case, on what the law is and the legal conclusions he reached by applying the law to the facts); *AirWair*, 2021 WL 2914082 at *5 (excluding Mr. Franklyn for offering opinions that "amount to legal conclusion"); *Nationwide*, 523 F.3d at 1058 ("[A]n expert witness cannot give . . . an opinion on an ultimate issue of law.").

Mr. Franklyn's first set of excludable statements relate to his assertion that Dr. Pham's marketing- and consumer-psychology analysis "has no foundation in the relevant law." *See* Franklyn Rpt. at 5, 19. When asked to explain what he meant by that, Mr. Franklyn admitted that, even though he is "reluctant to give legal opinions," the answer is a legal one: "when I say it has no basis in the law, I've never seen a case, myself, that says if [] a design feature, [] meets these requirements, it is likely to have secondary meaning." Ex. 3 at 244:18–247:22.

Mr. Franklyn's second set of excludable statements relate to his assertion that Dr. Pham's "[REDACTED] ." *See* Franklyn Rpt. at 6, 20; Ex. 3 at 244:18–247:22. To reach that conclusion, he describes and relies on [REDACTED] Franklyn Rpt. at 20 (citing *McCarthy on Trademarks and Unfair Competition*). During his deposition, Mr. Franklyn reiterated his view that Dr. Pham's analysis is "not enough, under the law, to get to secondary meaning." Ex. 3 at 252:1–17. And, as in his report, he drew on his "knowledge of trade dress law" to explain the basis of his opinion. *Id.* at 262:12–20.

Mr. Franklyn's third set of excludable statements relate to his assertion that the specific factors Dr. Pham considered are [REDACTED]. *See* Franklyn Rpt. at 21–22, 30–32. Here, Mr. Franklyn is simply offering his view on whether a particular piece of evidence Dr. Pham considered is sufficient to "[REDACTED]." *Id.* at 22. He further opines that certain evidence Dr. Pham considered [REDACTED] *Id.* at 30–31.

Mr. Franklyn's final set of excludable statements relate to his legal conclusion that [REDACTED] *See id.* at 12–13, 18–19, 33–34. Mr. Franklyn cites to [REDACTED] *Id.* at 18. He then asserts that "[REDACTED] *Id.* at 34.

It bears noting that, notwithstanding Mr. Franklyn's repeated suggestions to the contrary, Dr. Pham does not offer any opinion on the legal question that Mr. Franklyn addresses: whether the evidence Dr. Pham analyzed and the conclusion he reached is sufficient to establish secondary meaning as a matter of law. And Roblox does not intend to argue that it is. That is because, as the case law makes clear, there are myriad types of evidence that can establish the existence of secondary meaning. *See, e.g., P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) ("[P]roof of copying strongly supports an inference of secondary meaning." (internal quotation marks and citation omitted)); *Waters v. Notorious Media, LLC*, No. 21-cv-08623, 2022 WL 3446110, at *6 (Aug. 17, 2022), *amended*, 2023 WL 3436081 (C.D. Cal. May 11, 2023) ("[P]laintiff may establish secondary meaning through direct and circumstantial evidence." (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:30 (5th ed. 2022))). Dr. Pham's opinions based on his marketing- and consumer-psychology expertise is just

one piece of evidence among many that go to the ultimate question the jury will be asked to decide—whether Roblox's trade dress has acquired secondary meaning as a matter of law.

**2. Mr. Franklyn's Opinion that [REDACTED] Is an Improper Legal Opinion**

Dr. Pham opines that WowWee's My Avastars Fashion Dolls elicit substantial consumer association with the Roblox brand and are likely to cause some degree of consumer confusion with Roblox as a source after analyzing three sets of marketplace data: (1) Amazon reviews posted by purchasers of My Avastars Fashion Dolls, (2) TikTok comments posted by viewers of videos promoting My Avastars Fashion Dolls, and (3) "evidence of actual confusion" as reflected in the "multiple inquiries" Roblox received from purchasers of My Avastars Fashions Dolls. *See* Pham Rpt. ¶¶ 12, 89–113. Further, relying on the "associative network models of memory" that marketing scholars often use to conceptualize consumer memory for brand-related information, Dr. Pham opines that the sales and marketing of the My Avastars Fashion Dolls "is likely to harm Roblox by diluting the asserted avatar trade dress, causing an unwanted transfer of associations to the Roblox brand, and a partial loss of control of the Roblox brand identity." *See id.* ¶¶ 12, 29, 114–29.

Mr. Franklyn opines that [REDACTED] *See* Franklyn Rpt. at 7, 37, 44–50, 58. To support this opinion, Mr. Franklyn again makes a series of excludable statements that constitute legal opinions, state the legal standards, and opine on the ultimate issue of whether the evidence presented proves likelihood of confusion as a matter of law. *See Sportvision*, 2005 WL 8177792, at *4 (excluding expert for rendering a legal opinion because the "determination of likelihood of confusion . . . is a legal conclusion"); *Gable*, 727 F. Supp. 2d at 835–36; *AirWair*, 2021 WL 2914082 at *5–6; *Nationwide*, 523 F.3d at 1058.

With respect to Dr. Pham's opinion regarding consumer association, Mr. Franklyn opines that [REDACTED]. *See* Franklyn Rpt. at 7, 37, 47. He asserts that "the Lanham Act doesn't create trademark infringement liability for

association." Ex. 3 at 200:5–9; *see also* Franklyn Rpt. at 37 ). He states that ."[2] Franklyn Rpt. at 7, 37. And he then cites ." *Id.* at 47.

With respect to Dr. Pham's opinion regarding harm to the Roblox brand (caused by, among other things, dilution of the Roblox trade dress), Mr. Franklyn opines *Id.* at 7, 44–47. Mr. Franklyn contends that, *Id.* at 45. He further opines that *Id.* at 46.

Mr. Franklyn's legal conclusion that is also excludable because it is irrelevant to the claims the jury will consider, as Roblox did not bring a dilution claim. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 2571332, at *4 (N.D. Cal. June 30, 2012) (excluding expert opinion because it "would not be relevant" to the claim at issue and "would be unduly prejudicial and confusing to the jury"); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (expert testimony must be "relevant to the task at hand" meaning that "it logically advances a material aspect of the proposing party's case").

With respect to Dr. Pham's opinion of possible confusion, Mr. Franklyn states that Franklyn Rpt. at

[2] Roblox does not have a claim based on dilution. Dr. Pham addressed the concept of dilution in connection with assessing the harm to Roblox from WowWee's conduct. *See* Pham Rpt. ¶¶ 114–28.

7. To support his conclusion, Mr. Franklyn again relies on a legal treatise on trademark law and several cases. *Id.* at 46–47. Mr. Franklyn also contends that the conclusions Dr. Pham reaches regarding "'possible confusion' [REDACTED] [REDACTED]" *Id.* at 50. And lest there was any doubt about whether Mr. Franklyn intends to improperly invade the province of the Court when offering these opinions, he confirmed as much at his deposition when he opined on what "[a] judge would say." Ex. 3 at 266:6–268:4. Such testimony is, of course, entirely improper for an expert. *See AirWair*, 2021 WL 2914082 at *5–6; *Nationwide*, 523 F.3d at 1058.

**B. Mr. Franklyn's Rebuttal to Dr. Pham Should Be Excluded Because He Is Not a Marketing Expert**

Mr. Franklyn is not qualified to assess the reliability and rigor of Dr. Pham's methodologies because he is not a marketing expert. "To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to [the] evidence or fact in issue." *Chang*, 207 F.3d at 1172. Mr. Franklyn is a law professor with no formal education, training, or experience in marketing, economics, or social sciences. Ex. 3 at 15:5–10. Mr. Franklyn's purported qualification and expertise in marketing arise from his experience in survey work and his three-year term at Golden Gate University, where he taught "several classes relating to marketing and surveys." Ex. 3 at 14:23–15:4, 108:19–25; Ex. 2 at 1. As one court has already recognized, neither is sufficient to make him a marketing expert or qualify him to rebut Dr. Pham's opinions. *See Jaguar*, 2019 WL 13032105, at *3 (excluding rebuttal testimony of Franklyn because "the Court is not persuaded that Mr. Franklyn is a marketing and branding expert because of his experience teaching marketing courses"); *see also Chang*, 207 F.3d at 1172–73 (expert witness who was qualified in one field was not qualified to render an opinion on a different field in which he had no training or experience).

Without the requisite "knowledge, skill, experience, training, or education" in marketing, Mr. Franklyn's rebuttal to Dr. Pham's marketing and consumer psychology analyses should be excluded. *See Jaguar*, 2019 WL 13032105, at *2–3; *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 478 (9th Cir. 2021) (excluding testimony of a rebuttal damages expert who was

not an economist and conceded that he was "unfamiliar" with the data presented by an economist expert that he was supposed to rebut); *Chang*, 207 F.3d at 1172–73 (excluding expert for lacking experience in determining "the fact at issue in this case" despite having experience in a different field); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (an expert "may not offer any opinion on any subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, experience, training, or education.'"); *Torres v. City of Santa Clara*, No. 13-cv-01475, 2014 WL 4145509, at *4 (N.D. Cal. Aug. 20, 2014) ("An expert in one field cannot express an opinion relying on data that requires expertise in another field." (quoting *United States v. Santini*, 656 F.3d 1075, 1078–79 (9th Cir. 2011))).

The three-pronged framework used by Dr. Pham to analyze whether consumers are likely to identify the Roblox trade dress as belonging to the brand category of Roblox is based on "well-established principles of consumer psychology." Pham Rpt. ¶¶ 36, 70, 88. Mr. Franklyn admitted during the deposition that he has no familiarity with this well-established framework. *See* Ex. 3 at 249:11–250:3 ("I've never seen anything like it."); 242:10–17 ("I have never heard of it before."). Yet he goes on to opine, without any basis, that Dr. Pham's three-pronged analysis must be "created out of whole cloth for this case." Franklyn Rpt. at 5, 19–20. All of Mr. Franklyn's opinions about Dr. Pham's use of the three-pronged framework and the conclusions Dr. Pham reaches thereunder should be excluded because they are beyond Mr. Franklyn's areas of expertise.

## V. CONCLUSION

For the reasons stated above, Roblox respectfully requests that the Court exclude Mr. Franklyn's opinions and testimony that [REDACTED] [REDACTED] to the extent that those opinions and testimony state legal standards and legal conclusions. Roblox further requests that the Court exclude Mr. Franklyn's opinions and testimony rebutting Dr. Pham's marketing-based methodologies and conclusions to the extent that they are beyond Mr. Franklyn's areas of expertise.

Dated: March 29, 2024

Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ *Sarah M. Ray*

Andrew M. Gass (Bar No. 259694)
*andrew.gass@lw.com*
Sarah M. Ray (Bar No. 229670)
*sarah.ray@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Elana Nightingale Dawson (*pro hac vice*)
*elana.nightingaledawson@lw.com*
Carolyn M. Homer (Bar No. 286441)
*carolyn.homer@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200

Allison S. Blanco (Bar No. 287554)
*allison.blanco@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234

*Attorneys for Plaintiff Roblox Corporation*