UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>    Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER RE: DISCOVERY PRIVILEGE DISPUTES AT DKT. NO. 185 AFTER SUBMISSION OF DOCUMENTS FOR *IN CAMERA* REVIEW**<br><br>Re: Dkt. Nos. 196, 197, 198, 205 |

On February 27, 2024, the Court issued an order regarding discovery disputes concerning privilege designations by defendants WowWee Group Limited, et al. ("WowWee"). Dkt. No. 194. Roblox Corporation ("Roblox") had challenged attorney-privilege designations for three categories of documents designated as privileged by WowWee, and the Court ordered WowWee to submit the documents for *in camera* review. WowWee submitted the contested documents for two of these categories and both parties have provided additional briefing.[1] Having reviewed the provided documents *in camera* along with the parties' briefing, the Court finds that the documents are not privileged and orders WowWee to produce these documents to Roblox.

**I.     Communications Copying or Authored by Vivian Arellano**

WowWee asserts that the submitted documents concerning Vivian Arellano are privileged under the functional employee doctrine. Dkt. No. 198 at 1.

WowWee, "a small, family-run toy company located in Canada," has a small in-house design team and from time-to-time "hires contract designers who function as the equivalent of WowWee's

---

[1] WowWee indicates that it will produce the two documents relating to Early Light in full. Dkt No. 198 at 1 n.1.

design employees." *Id.* at 1. Ms. Arellano was hired in May 2021 as a contract designer responsible for assisting WowWee's design team in "building out the initial concepts and designs of the My Avastars fashion dolls" due to her design skills. *Id.* at 1-2. Ms. Arellano reported directly to Sydney Wiseman, former Vice President of Brand Development & Creative Strategy. *Id.* at 1. Because Ms. Arellano lives in the United States, budgetary and legal restrictions necessitated she enter into a contract with Echoer, a holding company, rather than WowWee, although she did sign an NDA with WowWee. *Id.* at 2.[2]

WowWee explains that before it fully invests in building out a new toy line, certain legal clearances must be met. *Id.* at 2. Ms. Wiseman was the WowWee executive serving as the point person for the My Avastars project and she met with WowWee's outside counsel and relayed the legal advice received to the design staff tasked with implementing the legal feedback. *Id.* Ms. Arellano was "[k]ey among those designers." *Id.* Because the project was in its early stages, Ms. Arellano "was instrumental in developing early concept prototypes which were needed to facilitate outside counsel's legal review." *Id.* "Ms. Arellano was responsible for creating early iterations of the My Avastars fashion dolls, which necessarily included both creating design material relating to those iterations for legal review and implementing legal feedback on the actual design of the dolls." *Id.* at 3.

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The privilege protects confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations omitted). "Under federal law, the attorney-client privilege is strictly construed." *Id.* at 609. The burden lies with the party claiming the privilege to prove each element of a "well-established eight-part test":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made

---

[2] WowWee utilizes Echoer to fund "certain activities related to research and development which occur in the United States." *Id.* at 1.

>in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* at 607-08 (citations omitted).

WowWee argues that Ms. Arellano was a functional employee of WowWee "specifically within the context of seeking and propounding legal advice as it related to the early concepts and designs of the My Avastars fashion dolls." Dkt. No. 198 at 3. WowWee asserts that there are two situations reflected in the communications submitted for *in camera* review. First, "the email communications reflect Ms. Arellano gathering and compiling information to be used for legal review of the design of the My Avastars fashion dolls." Dkt. No. 198 at 2. Second, "the email communications between Ms. Arellano, Ms. Wiseman and others on the design team reflect specific instructions to Ms. Arellano to implement design elements pursuant to legal advice, in addition to specific documents which were created by Ms. Arellano at outside counsel's request." *Id.* "WowWee expected that Ms. Arellano would be privy to such advice, because it was her responsibility to implement outside counsel's instructions as it related to the design of the dolls." *Id.* at 2-3.

The Court has reviewed the documents submitted for *in camera* review, which consist of email communications and images presumably attached to those emails. The Court does not find any of the documents privileged. The Court need not determine whether Ms. Arellano was a functional employee of WowWee to make this determination; even if Ms. Arellano were a functional employee, the documents submitted do not reflect confidential communications between attorneys and clients made for the purpose of seeking legal advice. *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Legal advice is not sought or obtained in any of the communications submitted and none of the emails include counsel. All the cases WowWee cites in its additional briefing involve communications between functional employees and counsel or email exchanges between employees and counsel that functional employees were copied on. For example, in *Klein v. Meta Platforms, Inc.*, 2022 WL 767096, at *3 (N.D. Cal. Mar. 11, 2022), the plaintiffs argued that the disputed communications were not privileged because an individual who was not a Meta employee was included in the email exchange. Each of the communications at issue was authored by and/or

3

expressly directed to at least one of Meta's in house counsel. *Id.* at *2. WowWee has not met its burden of establishing the first two prongs of the eight-part test articulated in *Ruehle* with respect to the documents submitted relating to Ms. Arellano: that legal advice of any kind was sought from a professional legal adviser in their capacity as such. *See* 583 F.3d at 607.

WowWee is thus ordered to produce the following documents: PL_001, PL_003, PL_047, PL_048, PL_049, PL_050, PL_051, PL_052, PL_053.

## II. Documents Concerning Communications with Weber Shandwick, Interpublic Group, and Dave Malacrida

Weber Shandwick and its parent company, Interpublic Group, are public relations ("PR") firms that WowWee hired "to deal with the fallout of Roblox's interference with WowWee's relationship with Gamefam and Roblox's communications to WowWee's customers claiming that the My Avastars fashion dolls infringed Roblox's intellectual property, and they worked hand-in-hand with WowWee's outside counsel." Dkt. No. 198 at 6; Dkt. No. 204-1 ("Nightingale Decl.") Ex. A. WowWee's outside counsel Epstein Drangel engaged Weber Shandwick (and Interpublic Group) on WowWee's behalf to provide crises PR support in response to Roblox's threatened litigation. Nightingale Decl. Ex. A. Dave Malacrida is WowWee's "longtime in-house PR consultant" and "has been the public face of WowWee's PR for years." Dkt. No. 185 at 5. He "was utilized to consult with counsel regarding the legal implications of the litigation on retailer communications and strategies." *Id.*

WowWee asserts that the documents involving Weber Shandwick, Interpublic Group, and Dave Malacrida are privileged "because the parties were retained to assist outside counsel in rendering legal advice." Dkt. No. 198 at 5-6.

"The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal advice from the lawyer*." *Id.* at 566, n.3 (quoting *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original). WowWee must

1  show that the third parties at issue here were retained for the purpose of giving or assisting with
2  legal advice, not merely for the purpose of providing business advice.  *See In re CV Therapeutics,*
3  *Inc. Sec. Litig.*, No. 03-cv-3709, 2006 WL 1699536, at *7 (N.D. Cal. June 16, 2006), as clarified on
4  recon., 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006); *see also Lights Out Holdings, LLC v. Nike,*
5  *Inc.*, No. 14-cv-872, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015) (indicating that where the
6  PR communications reflect the "provision of ordinary PR services, privilege will not attach" and
7  privilege will attach only in the limited circumstances where disclosure was necessary for the
8  parties' attorney to "render sound legal advice").

9        The Court has reviewed all documents submitted for *in camera* review relating to Weber
10 Shandwick, Interpublic Group, and Dave Malacrida.[3]  These documents consist of a draft press
11 release, an engagement letter sent to Epstein Drangel LLP, WowWee's outside counsel, from Weber
12 Shandwick, and associated emails.[4]  The documents reflect that Weber Shandwick was retained at
13 least in part for the purpose of providing legal advice. Additionally, the communications at issue
14 discuss litigation-related issues and strategy, which Weber Shandwick would have needed to be
15 privy to in order to provide its PR services.  WowWee need not produce the documents related to
16 Weber Shandwick, Interpublic Group, and David Malacrida.

18 **III.   Associated Administrative Sealing Motions**

19       WowWee submitted an administrative motion to file certain documents under seal
20 associated with its brief. Dkt. No. 197.  This motion is GRANTED.  Roblox filed an administrative
21 motion to consider whether another party's material should be sealed pursuant to Local Rule 79-
22 5(f).  Dkt. No. 205.  WowWee filed a statement in response, indicating that it seeks to seal four of
23 the five documents. Dkt. No. 208.  This motion is thus GRANTED IN PART.  Dkt. No. 205-3 (Ex.

---

[3] All documents submitted in this category relate to Weber Shandwick. A smaller subset of these documents also relate to Interpublic Group and David Malacrida.

[4] PL_054 is the engagement letter sent to Epstein Drangel LLP from Weber Shandwick. WowWee logged this document on its supplemental privilege log served the same day that the documents were submitted for *in camera* review.

5

B) will be unsealed.  Dkt. Nos. 205-2, 205-4, 205-5 and 205-6 will remain under seal (highlighted portions of Roblox's response brief and Exs. C, D, and H).

**IT IS SO ORDERED**.

Dated: April 5, 2024

_____
SUSAN ILLSTON
United States District Judge