1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

ROBLOX CORPORATION,

Case No. 22-cv-04476-SI

8

Plaintiff,

9

v.

10

WOWWEE GROUP LIMITED, et al.,

11

Defendants.

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

Re: Dkt. No. 211

12
13

Before the Court is the motion for summary judgment filed by defendant WowWee Group

14

Ltd., et al. ("WowWee").  Dkt. No. 211.  Plaintiff Roblox Corporation ("Roblox") opposes.  Dkt.

15

No. 268.  WowWee moves for summary judgment on all of Roblox's claims that have not been

16

stayed.[1]  The Court heard oral argument on this motion on June 20, 2024.  For the reasons set forth

17

below, the Court hereby GRANTS IN PART AND DENIES IN PART WowWee's motion.

18

Because the parties and the Court are familiar with the facts of this case from prior motion

19

practice and extensive discovery disputes, the Court does not recite the case background here.

20
21

**LEGAL STANDARD**

22

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file,

23

and any affidavits show that there is no genuine dispute as to any material fact and that the movant

24

is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the

25

initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v.*

26
27

---

[1] Roblox's claims for intentional interference with contractual relations and breach of
contract with respect to the U.S. entity WowWee USA, Inc. were sent to arbitration and those claims
against WowWee Group Limited and WowWee Canada, Inc. are stayed pending the outcome of the
arbitration.  Dkt. No. 69.

28

United States District Court
Northern District of California

*Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. *See id.* The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is mandated against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citations omitted).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.    Copyright Infringement**

WowWee moves for summary judgment on Roblox's copyright infringement claim on two bases: (1) that Roblox does not own an exclusive right to the four registered works at issue, the

Cindy, Lindsey, Kenneth, and Dennis ("CLKD") avatars, and (2) that Roblox cannot establish that protectable elements of the unregistered avatar bases are included in the copyrighted works.  The Court examines each argument in turn.

### A.    Ownership of the Copyrighted Works

Roblox must be the "legal or beneficial owner of an exclusive right" to sue for copyright infringement.  *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (interpreting 17 U.S.C. § 501(b)).  "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 737 (1989).  In other words, the author is "the person to whom the work owes its origin and who superintended the whole work, the 'master mind.'"  *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233 (9th Cir. 2000) (citing *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)).  Ownership of a copyright "vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  An exception exists for "works made for hire," in which case "the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary."  *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010) (quoting 17 U.S.C. § 201(b)).  A "work made for hire" is "a work prepared by an employee within the scope of his or her employment."  17 U.S.C. § 101.

A "copyright registration creates a presumption of ownership."  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998).[2]  A copyright registration made within five years after first publication of a work constitutes "prima facie evidence . . . of the facts stated in the certificate."  17 U.S.C. § 410(c).  However, the "presumptive validity of the certificate may be rebutted and defeated on summary judgment."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).  The

---

[2] 17 U.S.C. § 411(b)(1) "saves a copyright registration from invalidity when its application contains errors unless the registrant *knowingly* transmitted inaccurate *material* facts to the Register of Copyrights."  *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1064 (9th Cir. 2022) (emphases in original).

United States District Court
Northern District of California

CLKD works' registrations filed with the U.S. Copyright Office list Jiangli Ge as the works' author, indicate the works are not works made for hire, and list Roblox as the copyright claimant, with a transfer statement "[b]y written agreement." Dkt. No. 220, Mtn. Exs. 26-29. Roblox asserts in its opposition that Roblox authored the CLKD works through its employee I-Wei Huang but inadvertently identified its modeling contractor, Ge, as the works' author on the copyright registrations. Dkt. No. 268 at 8-9. It is undisputed that Ge was an independent contractor and Huang was a Roblox employee.

Having considered the extensive evidence before the Court, and drawing all inferences in favor of the non-moving party, the Court concludes that Roblox has designated specific facts showing there is a genuine dispute of material fact concerning authorship of the CLKD works. For example, Huang's deposition testimony raises a dispute of fact about who created and superintended the works, and it is not clear as a matter of law that the CLKD works are "audiovisual works" as defined by the Copyright Act. *See* Dkt. No. 268, Opp. Ex. 18; 17 U.S.C. § 101. As a second example, Stephen Jobe, Roblox's 30(b)(6) witness on the topic of its copyright registrations, testified during his deposition that the original artist was not Ge. *See* Dkt. No. 268, Opp. Ex. 6 at 137-139.[3]

Roblox separately argues that even if Ge is found to be the author of the works, her ownership of the works transferred to Roblox. WowWee contends that the only express agreements between Roblox and Ge covered periods before or after Ge authored the works so none could have transferred Ge's copyright. Dkt. No. 211 at 7. "A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed . . . ." 17 U.S.C. § 204(a). The Court finds that the evidence Roblox points to raises a genuine dispute of material fact about whether services under the terms of the 2019 agreement between Ge and Roblox were completed before or after October 11, 2019. *See* Opp. Ex. 19. There is thus also a dispute of fact about whether ownership of the CLKD

---

[3] Due to the volume of evidence submitted and the fact that a significant portion of this evidence was filed under seal, when denying summary judgment, the Court only refers to a few examples of evidence that raises disputed facts throughout this order.

United States District Court
Northern District of California

1  works transferred to Roblox if Ge is found to be the author by a jury.

2      Summary judgment on Roblox's claim that the CLKD works were infringed is therefore

3  DENIED.

4

5      **B.      Protectable Elements of the Avatar Bases**

6      In its order on Roblox's motion for reconsideration of part of the Court's order on

7  WowWee's motion to dismiss, the Court permitted Roblox to claim that copyrightable elements of

8  the unregistered avatar bases that were included in the CLKD works were infringed.  Dkt. No. 131.

9  The basis for this was the Ninth Circuit's *Enterprise Management* decision, which held as a matter

10 of first impression that when "a copyright owner [] creates an original work (but does not register

11 it) and subsequently registers a derivative work based on that original work[,]" the "registration of

12 the derivative work also registers the included elements of the original work."  *Enterprise*

13 *Management Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056-57 (9th Cir. 2023).

14 In other words, "when a derivative work includes copyrightable elements of the unregistered

15 original work, the owner's registration of the derivative work also registers the included elements

16 of the original work."  *Id.* at 2057.  However, "registering the derivative work will not register

17 elements of the original work that were not included in the derivative work."  *Id.* at 1057 n.7.

18 WowWee contends that Roblox cannot establish that copyrightable elements of the unregistered

19 avatar bases were included in the CLKD works.

20     As an initial matter, the parties disagree about what avatar bases are at issue.  The operative

21 first amended complaint contains images of two "exemplar[]" avatar bases, "Blocky" and "Roblox

22 Girl."  Dkt. No. 36 ("FAC") ¶ 4.  Roblox contends that the avatar bases at issue also include "Roblox

23 Woman" who is pictured alongside "Blocky" and "Roblox Girl" in the opposition statement of facts

24 along with a fourth avatar, "Roblox Boy."  *See* Dkt. No. 268 at 2.  The Court finds the FAC less

25 than clear about the universe of avatar bases at issue, but finds that the FAC leaves open the

26 possibility of more avatar bases being at issue than the two pictured in the FAC.

27     WowWee contends that there is no evidence that the CLKD works or any of their elements

28 were copied from the avatar bases.  Dkt. No. 211 at 10-11.  A "derivative work" is a "work based

United States District Court
Northern District of California

upon one or more preexisting works . . . [in] any [] form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. "[A] work is not derivative unless it has been substantially copied from the prior work." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

WowWee points to two expert reports and deposition testimony in support of its contention that the CLKD works do not include elements of the avatar bases. Huang, Roblox's Avatar Character Lead, responded when asked if he understood "pretty old avatars that have been on the Roblox platform for quite a while" "to be recognized as avatar bases" responded: "I'm not sure what you mean by 'avatar bases'" and when asked if he had heard the term before: "I think internally we'd mean avatars [] that are not clothed." Dkt. No. 220, Mtn. Ex. 30 at 34:10-22.[4] David Sapienza, Roblox's Director of Product, testified that he doesn't "really use the term 'base'" and would call the "Classic Blocky avatar" a "visual." Mtn. Ex. 38 at 61:14-62:13. When asked what he did in connection with the conception, design and development of the CLKD works Huang responded: "I designed the characters." Mtn. Ex. 30 at 29:7-11. When discussing his work, Huang explained: "In my case, I'm concentrated mostly on characters. So I would design characters. So it's just ideas in my head I draw on paper, that would go through lots of iterations until the character is, you know, finalized and then we start production of it." *Id.* at 15:15-20. Stephen Jobe, a Roblox manager, testified with respect to the Cindy avatar that he did not recall providing Huang with specific reference materials that he should consider in the development of this work. Mtn. Ex. 40 at 32:13-25. He later testified that he could not recall what reference materials Huang used in connection with the development of the Cindy avatar. *Id.* at 34:11-18. With respect to the Lindsey avatar, Jobe testified that he didn't "recall specific direction in this one, just the same as the other two." *Id.* at 31:18-25.[5] WowWee's expert in online game design Ian Bogost opines while referencing Huang's deposition testimony that the avatar bases "are not really bases but specifically designed avatars in their own right, which just happen to be textured with a plain grey body appearance and a simple face." Mtn. Ex. 37 ¶ 102. WowWee also points to testimony from Jobe discussing similarities and

---

[4] All exhibits to WowWee's motion for summary judgment are at Dkt. No. 220; the Court cites these exhibits solely as Mtn. Exs. for the remainder of this order.

[5] Testimony about the "other two" avatars is not included in the exhibit.

United States District Court
Northern District of California

1    differences between the CLKD works and avatar bases (which Roblox also points to in its

2    opposition).  For example, Jobe testified that "we wanted Cindy and Kenneth to straddle the line

3    between many different designs that were important to Roblox, Woman being one of them, Blocky

4    being one of the others" and that the slightly thicker leg of Lindsey was an "important design

5    element" because it "was important to Lindsey and Dennis because they harken more back to Roblox

6    Classic."  Mtn. Ex. 40 at 84:5-10, 89:10-14.

7            Roblox points to deposition testimony and email correspondence in response.  In his

8    deposition, Huang testified that "[W]hen you think of Roblox, you think of a certain type of

9    character and we wanted them to have that, but just a more refined version because the original

10   versions were – we could do better than that.  So it's basically just updating them but not really

11   changing them."  Dkt. No. 268, Opp. Ex. 18 at 59:8-13.  When asked if Lindsey was an original

12   design at his deposition, Jobe testified that he wasn't the original designer so can't say for sure,

13   "[b]ut our concern, again, was looking at our own designs for reference" and "I know that when we

14   collaborated on the original design, our goal was to capture the essence of Roblox."  Dkt. No. 268,

15   Opp. Ex. 6 at 166:16-167:3.  He also testified when asked about the development of the CLKD

16   works:  "We wanted to create a series of lines that both hearken back to the most classic Roblox, and

17   Kenneth and Cindy represented an era between the very beginning and when Rthro line was created

18   that represented chunkier but a little bit more organic designs that we have hundreds of.  So we

19   hearken back to those designs and captured the most important details out of that."  *Id.* at 169:1-8.

20   Jobe also testified at length about the similarities and differences between the Roblox Woman avatar

21   base and the CLKD works.  *See* Dkt. No. 268, Opp. Ex. 12 at 79-87 (with some page omissions).

22   With respect to Cindy he testified that Roblox Woman and Cindy "have the least dissimilarities

23   between all of them.  The only difference is a minor change of silhouette between Woman and Cindy

24   . . . other than that, they share a lot of the same designs, actually, chamfered corners, apparent

25   segmentation of the lower torso."  *Id.* at 81:16-82:3.  In an email chain between Huang, Jobe, and

26   other Roblox personnel, Jobe wrote:  "I like the general direction for the blocky versions of the

27   'classic' designs."  Opp. Ex. 17.  Huang responded:  "I played around with some more basic body

28   shapes . . . I talked with Stephen in more detail . . . and came up with the attached.  I tried to keep

7

them feeling like the original blocky, but updating proportions to be a little more appealing." *Id.* Lastly, in email correspondence between Huang and Jobe, Jobe wrote: "We need to figure out what defines 'Roblox Classic' compared to the future system . . . overall we want to narrow the 'style' that is 'Roblox Classic.' Generally this should be derived from, but improving upon, our existing look for Classic." Opp. Ex. 73.

The Court finds that although the evidence Roblox points to suggests that the CLKD works may have "felt like" the avatar bases in some way, the evidence does not suggest that the CLKD works include "copyrightable elements" of the avatar bases or that the CLKD works were "substantially copied" from the avatar bases, making them derivative works. While a "combination of unprotectable elements may qualify for copyright protection," the issue here is not whether the avatar bases themselves qualify for copyright protection. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (emphasis removed).

Roblox has failed to show that there is a genuine dispute for trial about whether copyrightable elements of the avatar bases included in the CLKD derivative works were infringed. Summary judgment is thus GRANTED as to Roblox's copyright infringement claim involving the avatar bases.

## II.   Trade Dress Infringement

To sustain a trade dress infringement claim, Roblox must prove: "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). "Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Id.* at 1257 (citations and internal quotations marks omitted). In evaluating the elements of a trade dress claim, "it is crucial" that the Court "focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Id.* at 1259. WowWee contends that it is entitled to summary judgment on the

second and third elements.

In the operative complaint, Roblox defines the trade dress of its avatars as consisting of a combination of nonfunctional elements including: "(1) the humanoid, blocky shape of the avatars; (2) the cylindrical heads of the avatars; (3) the C-shaped hands of the avatars; (4) the block-shaped legs of the avatars; (5) the square or rounded arms of the avatars; (6) the cartoon-like, changeable facial expressions of the avatars and the lack of a nose; and (7) the particularized combination of these elements." FAC ¶ 57. The FAC alleges that two exemplar avatar bases (Blocky and Roblox Girl), the four registered avatars (Cindy, Lindsey, Kenneth and Dennis), and three licensed figurines are exemplars of its trade dress. *See id.* ¶¶ 4, 30-31, 52.[6]

### A.      Secondary Meaning

WowWee first contends that fact and expert discovery have revealed that Roblox's asserted trade dress is not consistently present across any of its products. Dkt. No. 211 at 13. WowWee points to the deposition testimony of Roblox's designated marketing expert Dr. (Michel) Tuan Pham and its rebuttal expert reports to Dr. Pham's report to argue that even where particular elements are arguably present, they are not stable or consistent between avatars. *See* Dkt. No. 211 at 15. Roblox responds that WowWee "invents a 'consistency' requirement out of whole cloth—and does not cite a single case to support this argument." Dkt. No. 268 at 16. Roblox also points to the following evidence in the record: slide decks created by WowWee about the My Avastars dolls and an email exchange between Vivian Arellano, Sydney Wiseman, and Adam Fairless of WowWee. *See* Dkt. No. 271, Opp. Ex. 28 at -26604-05, Ex. 32 at -29673, Ex. 43.[7] Having reviewed all the evidence in the record the parties point to in their briefing, the Court concludes that Roblox has raised a genuine dispute of material fact about whether its avatars have an identifiable trade dress.

WowWee does not cite legal authority from this Circuit indicating that Roblox's asserted

---

[6] At the October 20, 2023 hearing on Roblox's motion for reconsideration, Roblox's counsel asserted that a third avatar base, Roblox Woman, "has been part of this case since the very beginning." Mtn. Ex. 41 at 11:10-24.

[7] Page numbers of exhibits beginning with - refer to the bates numbering. The last three digits of the bates numbering are used throughout.

United States District Court
Northern District of California

1    trade dress must be consistent across its products, and the "Ninth Circuit has not yet adopted the

2    'consistent overall look' test for trade dress claims based upon a line of products." *Moroccanoil,*

3    *Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F. Supp. 3d 1203, 1223 (C.D. Cal. 2014).  Even if the

4    Ninth Circuit were to adopt this test, the standard "do[es] not require that the appearance of the

5    series or line of products . . . be identical," and a plaintiff is generally permitted to define a product

6    line "as it sees fit." *Rose Art Industries, Inc. v. Swanson*, 235 F.3d 165, 173 (3rd Cir. 2000).  The

7    issue is whether the trade dress "conveys a single and continuing commercial expression."  See *id.*

8    at 173 (citations omitted).  Even under this standard, Roblox has raised factual disputes that should

9    be resolved by a jury.

10        WowWee next contends that no reasonable jury could find that Roblox's asserted trade dress

11   has acquired secondary meaning.  Dkt. No. 211 at 15.  WowWee asserts that Roblox claims a

12   product configuration trade dress, which Roblox does not appear to contest.  "[A] product design

13   cannot be protected under § 43(a) without a showing of secondary meaning." *Wal-Mart Stores, Inc.*

14   *v. Samara Bros.*, 529 U.S. 205, 214 (2000).  A product's trade dress attains secondary meaning

15   "when the purchasing public associates the dress with a single producer or source rather than just

16   the product itself." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987);

17   *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) ("The basic

18   element of secondary meaning is . . . the mental association by a substantial segment of consumers

19   and potential consumers between the alleged mark and a single source of the product") (internal

20   quotations marks and citations omitted).  The single source can be anonymous. *P&P Imps. LLC v.*

21   *Johnson Enterprises, LLC*, 46 F.4th 953, 960 (9th Cir. 2022).  "Secondary meaning can be

22   established in a variety of ways, including direct consumer testimony; survey evidence; exclusivity,

23   manner, and length of use of mark; amount and manner of advertising; amount of sales and number

24   of customers; established place in the market; and proof of intentional copying by the defendant."

25   *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214 (9th Cir. 2023)

26   (citations and internal quotation marks omitted).  "Because of the intensely factual nature of the

27   secondary meaning inquiry, summary judgment is generally disfavored." *P&P Imps. LLC*, 46 F.4th

28   at 961 (citations and internal quotations marks omitted).

WowWee contends that the only "direct evidence" concerning secondary meaning is an "unrebutted" consumer survey conducted by its designated expert Professor Franklyn.  Dkt. No. 211 at 15; *see* Mtn. Ex. 44.  Roblox does not address this survey evidence, instead arguing that this survey evidence alone does not entitle WowWee to summary judgment in light of the other evidence probative of secondary meaning that it points to.  *See* Dkt. No. 268 at 19.  Although consumer surveys are persuasive evidence of secondary meaning, survey data is not a requirement and secondary meaning can be proven by circumstantial evidence.  *See* 5 McCarthy on Trademarks & Unfair Comp. § 32:190 (5th ed.); *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (indicating that "direct survey evidence of purchaser perception is not required").  If no surveys are presented at trial, WowWee may argue this point, but as discussed below, Roblox has raised a factual dispute regarding secondary meaning.

Roblox contends that there is both "direct and indirect evidence of WowWee's copying" and that additional evidence reinforces the existence of secondary meaning.  Dkt. No. 268 at 17-18.  "Proof of copying strongly suggests an inference of secondary meaning" because "competitors generally copy to realize upon a secondary meaning that is in existence."  *P&P Imps. LLC*, 46 F.4th at 961 (citations and internal quotation marks omitted).  The Court has reviewed the extensive evidence in the record the parties cite to and concludes that Roblox has designated specific facts showing there is a genuine issue for trial.  For example, on the issue of copying, Roblox has pointed to several WowWee slide decks and a "packaging brief" pertaining to the creation of the My Avastars dolls or describing the dolls.  *See* Dkt. No. 271, Opp. Exs. 28 at -26559, 30, 32 at -29673.  Roblox also points to evidence that could be seen to demonstrate the popularity of the Roblox platform and to show that Roblox avatars have been around for many years.  "Proof of substantial and continuous use of a mark in commerce for five years is prima facie evidence of secondary meaning."  *Jason Scott Collection*, 68 F.4th at 1216 (finding with respect to trade dress infringement that the district court properly considered that the plaintiff's pieces were continuously manufactured and sold since 2004 in finding secondary meaning).  As a final example, Roblox points to a WowWee slide deck that contains statements about Roblox and its avatars.  *See* Dkt. No. 271, Opp. Ex. 28 at -26605, -26577, -26636.  "[L]ongstanding and well-known presence" in a market can also

1    support a finding of secondary meaning.  *See Jason Scott Collection*, 68 F.4th at 1216.

2        Given the competing expert opinions on secondary meaning and the "intensely factual

3    nature" of the inquiry, combined with the extensive evidence in the record that could be probative

4    of secondary meaning, the Court concludes that the question of whether Roblox's asserted trade

5    dress has acquired secondary meaning should go to a jury.  Summary judgment on this basis is

6    therefore DENIED.

7

8        **B.    Likelihood of Consumer Confusion**

9        The test for likelihood of confusion is "whether there is a likelihood of confusion resulting

10   from the total effect of the defendant's product and package on the eye and mind of an ordinary

11   purchaser."  *First Brands Corp.*, 809 F.2d at 1383-84.  "To succeed, a plaintiff must show more

12   than simply a possibility of such confusion."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d

13   1190, 1209 (9th Cir. 2012).  The following factors are relevant in determining "whether confusion

14   between related goods is likely": "(1) strength of the mark; (2) proximity of the goods; (3) similarity

15   of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and

16   the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the

17   mark; and (8) likelihood of expansion of the product lines."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d

18   341, 348-49 (9th Cir. 1979).  "Likelihood of confusion in the trade dress context is evaluated by

19   reference to the same factors used in the ordinary trademark context."  *Vision Sports, Inc. v. Melville

20   Corp.*, 888 F.2d 609, 616 (9th Cir. 1989).  This "eight-factor analysis is pliant, illustrative rather

21   than exhaustive, and best understood as simply providing helpful guideposts."  *Rearden*, 683 F.3d

22   at 1210 (internal quotation marks and citations omitted).  "[A]ctual confusion is not necessary to a

23   finding of likelihood of confusion under the Lanham Act."  *Academy of Motion Picture Arts &

24   Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (citation omitted).

25   "Given the open-ended nature of this multi-prong inquiry" summary judgment on likelihood of

26   confusion grounds is "generally disfavored."  *Rearden LLC*, 683 F.3d at 1210.

27       WowWee contends that "Roblox did not come forward with a likelihood of confusion

28   survey, relying instead on a marketing expert who opined without any basis that confusion is

United States District Court
Northern District of California

'possible.'"  Dkt. No. 211 at 19.  WowWee's critiques of Dr. Pham's report and the methodology behind it are addressed in the order on the parties' *Daubert* motions.  Roblox contends that even if direct evidence of confusion were the sole relevant factor, WowWee's own market research showed a significant percentage of respondents associated the My Avastars dolls with Roblox.  *See* Dkt. No. 268 at 20; Dkt. No. 271, Opp. Exs. 28 at -26579, 46 at -26872, -26882.

While association is not the same thing as confusion, *see* 4 McCarthy on Trademarks and Unfair Competition § 23:9 (5th ed.), here Roblox also points to evidence that could go to the remaining *Sleekcraft* factors.  For example, as to "similarity of the marks," a rational trier of fact undertaking a visual comparison of Jazwares figurines and My Avastars dolls could find similarities.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) ("the greater the similarity between the two marks at issue, the greater the likelihood of confusion").  As a second example, Roblox points to evidence that could suggest similar marketing channels.  *See* Dkt. No. 272, Opp. Ex. 79; Dkt. No. 271, Opp. Ex. 46 at -26874-75, -26878.  "Convergent marketing channels increase the likelihood of confusion."  *Sleekcraft*, 599 F.2d at 353.  As a final example, Roblox points to a slide deck from WowWee and an email exchange between WowWee and Gamefam personnel concerning the relationship between My Avastars and Roblox that could go to the proximity of the goods or WowWee's intent.  *See* Dkt. No. 271, Opp. Ex. 28 at -26579; Dkt. No. 272, Opp. Ex. 78.

Because there are genuine disputes of material fact with respect to at least some of the *Sleekcraft* factors as well as the overall *Sleekcraft* inquiry, summary judgment on this basis is likewise DENIED.

### III.     Trademark Infringement, False Advertising, and Related Claims

####      A.      Trademark Infringement

Section 43 of the Lanham Act, "which prohibits any 'false designation of origin, or any false description or representation' in connection with any goods or services, precludes the use of another's distinctive trademark if it is likely to confuse the public as to the product's origin." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446,

1454 (9th Cir. 1991) (quoting 18 U.S.C. § 1225(a)).  Under § 1225(a), "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."  *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).  "Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir. 1983).  The *Sleekcraft* factors discussed under trade dress infringement are applied to determine whether a likelihood of confusion exists.[8]

In the FAC, Roblox alleges that WowWee "continued (and continue[s]) to use the ROBLOX Mark on [its] social media accounts and/or website to advertise the My Avastars dolls."  FAC ¶ 166.  Roblox also alleges under its false association and false designation of origin cause of action that WowWee has "used and continue[s] to use words, terms, names, and symbols, including 'Roblox,' '#Roblox,' 'NewRoblox,' and the ROBLOX Mark to market and sell the My Avastars dolls." *Id.* ¶ 174.  Roblox more specifically alleges that "WowWee advertised on the MyAvastars.com website that the My Avastars dolls were sold with a code redeemable on Roblox"; "WowWee used the ROBLOX Mark to advertise the My Avastars dolls in all of the videos posted to the @my_avastars TikTok account," for example, on the account WowWee "used the hashtags #roblox and #newroblox to advertise the My Avastars dolls"; Wiseman's TikTok videos made "similar use of the ROBLOX Mark," for example, one of her videos is titled "#doll + #roblox = #myavastars" and other videos "used the hashtag #roblox to further associate the dolls with the Roblox brand"; and WowWee used the ROBLOX Mark in the voice over and text of promotional TikTok videos, for example, in one video, Wiseman stated "Roblox's faces are so fun to customize.  What if we made a doll that could do the same?" *Id.* ¶¶ 97-100.

Roblox points to customer support inquiries as an example of indicators of actual consumer confusion.  *See* Dkt. No. 272, Opp. Ex. 80; Mtn. Ex. 46 at ECF 1022-38 (expert report with consumer comments and reviews attached).  Viewing this evidence in the light most favorable to the non-

---

[8] In the Ninth Circuit, claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994); *see also Rearden*, 683 F.3d at 1221.

United States District Court
Northern District of California

moving party, the Court cannot conclude that no rational trier of fact could find some evidence of actual confusion.  Roblox also points to record evidence regarding the other *Sleekcraft* factors.  For example, regarding WowWee's intent in selecting the mark, Roblox points to, among other things, a WowWee text and WowWee promotional posts on TikTok with a #roblox hashtag.  *See* Dkt. No. 270, Opp. Exs. 51-55.  WowWee contends that this evidence "merely shows that WowWee 'intended' its use of #Roblox to truthfully identify Roblox as the hosting platform for a planned online game."  Dkt. No. 301 at 12.  However, this is a factual dispute inappropriate for the Court to resolve on summary judgment.

Drawing all inferences in favor of Roblox, the Court finds that Roblox has pointed to some evidence in the record going to some of the *Sleekcraft* factors sufficient to raise disputes of material fact regarding likelihood of confusion that a jury should resolve.  Summary judgment on Roblox's trademark infringement claim is therefore DENIED.

### B. False Advertising

The elements of a Lanham Act false advertising claim are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  To demonstrate falsity, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the advertisement "has misled, confused, or deceived consumers."  *Id.* at 1139-40 (citations omitted).  Whether statements were false or misleading is measured at the time the statements were made.  *See Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (9th Cir. 2008).  "[I]ntent is not an element of a Lanham Act false advertising claim."  *POM Wonderful LLC v. Purely Juice, Inc.*, 362 Fed. Appx. 577, 579 (9th Cir. 2009).  WowWee contends that Roblox's claim fails on the essential

1   element of falsity and that Roblox cannot prove the second element.  Dkt. No. 301 at 13.

2          In the FAC, Roblox alleges that the following "false and misleading statements of fact" were

3   made "implying an association with Roblox": "comments to consumers in TikTok video

4   advertisements by WowWee's Vice President, on June 18 and 22, 2022, stating that WowWee was

5   not stealing Roblox's brand and would not get sued because WowWee was 'working with top roblox

6   developers'" and that WowWee "repeatedly used video of Roblox experiences in advertising the

7   My Avastars dolls, and likewise frequently mentioned Roblox in the text of advertising videos and

8   Internet hashtags."  FAC ¶¶ 156, 219.  Roblox also alleges that "Internet comments indicate that

9   consumers were actively deceived" into "believing that My Avastars dolls were associated with,

10  endorsed by, licensed by, or created in collaboration with Roblox."  *Id.* ¶ 159.

11         WowWee contends that at the time it used the Roblox hashtags, it intended to launch a game

12  on the Roblox platform, so "even if WowWee's advertisements did communicate these messages,

13  they could not have been misleading or confusing because they were accurate" at the time they were

14  made. Dkt. No. 211 at 24.  WowWee also asserts that it is undisputed that both videos were removed

15  from TikTok in 2022 before Roblox filed this lawsuit, at a time when WowWee was still planning

16  a My Avastars game to be launched on the Roblox platform.  Dkt. No. 211 at 23-24.  However, in

17  its motion to exclude the expert testimony of Dr. Bruce Isaacson, WowWee asserts that the two

18  videos Ms. Wiseman posted to TikTok in June 2022 were removed from the platform in September

19  2022.  *See* Dkt. No. 215 at 6; Dkt. No. 300 at 2.

20         In response, Roblox points to its expert report by Dr. Isaacson, discussed in the order on the

21  parties' *Daubert* motions.  The Court finds that Roblox has pointed to sufficient evidence—Dr.

22  Isaacson's report and internet comments—from which a rational trier of fact could infer that the first

23  and second elements of a false advertising claim have been met.

24         One of the messages Dr. Isaacson concluded was communicated by the two videos Ms.

25  Wiseman posted in June 2022 is: "This doll is made with permission from Roblox."  *See* Mtn. Ex.

26  46 ¶¶ 43, 165.  Using control videos, Dr. Isaacson found that the net measures of whether the videos

27  communicated this statement were 13.8% for one video and 13.1% for the other.  *Id.* ¶ 107.

28  WowWee contends that this does not indicate an actionable level of confusion or deception.  Dkt.

No. 215 at 10.  McCarthy on Trademarks and Unfair Competition indicates that courts "have found survey figures to be sufficient when they revealed that 15%, 20%, 21% to 34%, 'over 25%,' and 33% of respondents received a misleading message from the ad."  § 32:193 (5th ed.) (citations omitted).  The Ninth Circuit has found that less than 3% does not constitute proof that a significant portion of recipients were deceived.  *William H. Morris Co. v. Group W. Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).  The Court is unaware of case law unequivocally stating that percentages in the 13% range do not indicate an actionable level of confusion or deception.

Additionally, even if Roblox failed to establish that a "significant number of consumers were actually deceived," this would not necessarily be fatal because if the defendant "intentionally misled consumers, we would presume consumers were in fact deceived and [the defendant] would have the burden of demonstrating otherwise."  *Id.* at 258-59 (remanding to the district court to make an explicit finding as to whether the defendant acted with the intent to deceive).  Roblox contends that WowWee did intend to deceive because "WowWee left the ads up on TikTok until at least September 2022 . . . two months after Gamefam told WowWee that it would not continue with the My Avastars:RP experience . . . and thus knew that the statements in the video were false."  Dkt. No. 260 at 11.  WowWee contends it had no intent to deceive because WowWee was working with Gamefam to create the corresponding game when the videos were live.  Dkt. No. 300 at 6.  Whether WowWee intended to deceive is a factual dispute inappropriate for resolution on summary judgment.

WowWee's motion for summary judgment on Roblox's false advertising claims is DENIED.

## C.    Whether the Claims Are Moot

### 1.    Injunctive Relief

WowWee contends that even if Roblox could show that WowWee is liable for any of the trademark, false advertising, and related claims, injunctive relief is unavailable because WowWee voluntarily ceased use of the ROBLOX mark and removed all references to Roblox in its marketing and promotional materials after it received Roblox's cease-and-desist letter, and before Roblox filed the FAC, and this "*status quo* has prevailed for nearly two years now."  Dkt. No. 211 at 25; Dkt.

No. 301 at 14.  WowWee further asserts that there would be no reason for WowWee to reference Roblox "after Roblox's interference destroyed the planned game and ended WowWee's collaboration with Gamefam" and WowWee released its own HTML game with "no plans to release a game on the Roblox platform."  Dkt. No. 301 at 15.

WowWee points to the following evidence.  At her deposition, Jessica Kalichman of WowWee testified that after receiving Roblox's cease-and-desist letter, WowWee "paused all activations; therefore we told everyone to pause on any content they were either creating or meant to be uploading."  Mtn. Ex. 16 at 274:25-275:6.  She further testified that to her knowledge, there were no paid influencers that went live in July 2022 to ask to remove mentions of Roblox in content that had already been posted and that after the pause was lifted, "we no longer were activating a game on the Roblox platform; therefore, all mention of the My Avastars:RP game on Roblox was to be removed from all communications."  *Id.* at 275:16-276:6; *see also id.* at 286:16–288:1.  She further testified that WowWee instructed influencers that it continued to work with past August 2022 that they should not mention Roblox in their social media content.  *Id.* at 288:2-9.  Richard Yanofsky of WowWee asserts in a declaration accompanying WowWee's motion that after receiving the cease-and-desist letter from Roblox on July 7, 2022, "WowWee undertook an effort to remove any references to 'Roblox' in its social media, marketing materials, and advertising for the My Avastars dolls and also instructed third parties (such as social media 'influencers') not to reference Roblox in content relating to the My Avastars fashion dolls."  Dkt. No. 211-1 ¶ 4.  To his knowledge, WowWee "has not referenced 'Roblox' in any such marketing or advertising since July 20, 2022."  *Id.*  Yanofsky further declares that the packaging for the My Avastars dolls has never included the term "Roblox" and that while WowWee promoted and sold the My Avastars dolls in connection with a code redeemable in the My Avastars:RP game, WowWee never otherwise referenced "Roblox" in connection with the code.  *Id.* ¶ 3.  WowWee also points to a media statement in response to Roblox's lawsuit issued on August 3, 2022 in which it announces that following Roblox's cease-and-desist letter, WowWee "voluntarily disassociated My Avastars from Roblox."  Mtn. Ex. 20.

Roblox contends that its claim for injunctive relief is not moot because "a defendant cannot

automatically moot a case simply be ending its unlawful conduct once sued." Dkt. No. 268 at 24 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). In support of its position, WowWee points to *Luxul Tech. Inc. v. NectarLux, LLC*, where a court in this District found on summary judgment that the plaintiff's request for injunctive relief on a copyright infringement claim was moot where "the undisputed evidence show[ed] that [the plaintiff] had already removed and destroyed all allegedly infringing materials[.]" No. 14-cv-03656-LHK, 2016 WL 3345464, at *13 (N.D. Cal. June 16, 2016). The court noted that the defendant's website, "where the alleged infringement had occurred, was no longer available online." *Id.* at *13. Here, the undisputed evidence likewise shows that WowWee has stopped using the ROBLOX mark in its advertising and promotional materials.

In *Already*, the question before the Court on a motion to dismiss was "whether a covenant not to enforce a trademark against a competitor's existing products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid." 568 U.S. at 88. Nike had demanded that Already cease and desist its sale of certain shoes. *Id.* Already refused, and Nike filed suit alleging that the shoes infringed and diluted its trademark. *Id.* Already then filed a counterclaim contending that Nike's trademark was invalid. *Id.* Later, Nike issued a "Covenant Not to Sue." *Id.* at 88-89. The Court found the covenant sufficient to meet Nike's burden under the "voluntary cessation test." *Id.* at 93. Given "Nike's demonstration that the covenant encompasse[d] all of [Already's] allegedly unlawful conduct," the Court held that it was "incumbent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. When given the opportunity, Already "did not assert any intent to design or market a shoe that would expose it to any prospect of infringement liability." *Id.* at 95. Although the facts are not analogous, here Roblox has not pointed to any evidence or specific facts indicating that WowWee may add Roblox's name and mark back to its promotional materials. Roblox only asserts, without citation to the record, that WowWee "continues to sell the infringing dolls to the

market, including additional infringing dolls it released *this year*, and could add Roblox's name and mark back to WowWee's promotional posts tomorrow." Dkt. No. 268 at 25. The Court concludes that WowWee's has met its burden of showing that Roblox's request for injunctive relief as to its trademark infringement and false advertising claims is moot and thus GRANTS summary judgment on Roblox's request for injunctive relief as to these claims.

### 2. Damages

With respect to monetary damages, WowWee contends that Roblox has not come forward with "evidence of any actual damages suffered as a result of WowWee's historical references to Roblox" because Roblox's reasonable royalty theory relates solely to its copyright and trade dress infringement claims. Dkt. No. 211 at 25. Roblox's damages expert Blake Inglish testified at his deposition that his opinions about reasonable royalties relate to Roblox's claims for copyright and trade dress infringement. Mtn. Ex. 51 at 13:7-14:10. When asked if he was providing any opinion about damages as they relate to a false advertising claim, Mr. Inglish responded: "I believe, at least in my initial report, I identified some accused sales – kind of with the understanding that there could be a disgorgement of profits" and that as of the date of his deposition he didn't "really have any damage opinions" but "I think for false advertising that could change, obviously, if WowWee produces more sales between now and trial and then they become profitable." *Id.* at 13:11-25. Whether any proven actual damages would stem from WowWee's alleged use of the Roblox name or mark in its advertising and promotional materials is a question of fact inappropriate for resolution on summary judgment.

Roblox further contends that it is an open question whether the My Avastars dolls have been profitable such that Roblox is entitled to an award of damages for WowWee's unjust enrichment. Dkt. No. 268 at 25; Dkt. No. 260 at 13. WowWee's rebuttal damages expert Christian Tregillis calculated that WowWee earned negative profits on sales of My Avastars dolls from their launch after deduction of deductible expenses through October 24, 2023. Mtn. Ex. 52 ¶ 209. Roblox contends that WowWee has continued to sell the dolls since Mr. Tregillis calculated net profits and will presumably continue to do so through trial, and that it is entitled to cross-examine WowWee on

20

its "no profits" calculation.  Dkt. No. 268 at 25.  "The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement."  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015).  The burden then shifts to the "defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits."  *Id.*  To conclude here that Roblox will not be able to prove any gross revenue from the My Avastars dolls, or that any profits resulted from WowWee's use of the ROBLOX mark or Roblox name in its advertising and promotional materials, would require the Court to impermissibly draw inferences in favor of WowWee.  WowWee's damages argument therefore does not change the outcome of the Court's denial of summary judgment on Roblox's trademark infringement and false advertising claims.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES WowWee's motion for summary judgment on Roblox's copyright infringement claim concerning the registered works, trade dress infringement claim, trademark infringement claim, and the false advertising claims.  The Court GRANTS WowWee's motion for summary judgment on Roblox's claim that copyrightable elements of the avatar bases included in the derivative registered works were infringed and on Roblox's request for injunctive relief as to the trademark infringement and false advertising claims.

**IT IS SO ORDERED**.

Dated: September 3, 2024

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California