UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>WOWWEE GROUP LIMITED, et al.,<br><br>  Defendants. | Case No. 22-cv-04476-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ROBLOX'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 212 |

Before the Court is a motion for partial summary judgment filed by plaintiff Roblox Corporation ("Roblox"). Dkt. No. 212. Roblox moves for summary judgment on defendant WowWee Group Ltd., et al ("WowWee")'s affirmative defenses of express license (ninth defense), implied license (ninth defense), waiver (thirteenth defense), estoppel (thirteenth defense), acquiescence (ninth defense), unclean hands (eighth defense), copyright fair use (seventh defense), copyright misuse (sixth defense), and the scope of Roblox's Terms of Use (sixteenth and seventeenth defenses). *Id.* WowWee opposes. Dkt. No. 263.[1] The Court heard oral argument on this motion on June 20, 2024. For the reasons set forth below, the Court hereby GRANTS Roblox's motion for summary judgment on WowWee's affirmative defenses of implied license, waiver, acquiescence, unclean hands, and copyright misuse. The Court GRANTS IN PART AND DENIES

---

[1] WowWee withdrew its affirmative defense of copyright fair use (7th affirmative defense) in its opposition. Dkt. No. 263 at 25. WowWee "does not concede Roblox's arguments with respect to that defense, and reserves all rights." *Id.* WowWee also withdrew its affirmative defenses of vagueness or unascertainability of the Terms of Use ("TOU") and insufficiency of the TOU to transfer copyright ownership (16th and 17th affirmative defenses) as independent affirmative defenses to infringement and false advertising, but reserves the right to raise them with respect to the contract-based claims once the stay on those claims is lifted. *Id.* The Court consequently does not address these defenses in this order.

1  IN PART Roblox's motion for summary judgment on WowWee's affirmative defense of express
2  license. The Court DENIES Roblox's motion for summary judgment on WowWee's estoppel
3  defense.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. *See id.* The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is mandated against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citations omitted).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

2

from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# DISCUSSION

## I. Express License

WowWee's Amended Answer alleges that "Roblox's Terms of Use do not prohibit the activity Roblox alleges is wrongful in this case" and "Roblox's operative Terms of Use and prior statements permit the conduct and activities of WowWee at issue in this case." Dkt. No. 74 ¶ 9.

"When alleging the existence of an express license, the defendant has the initial burden to identify any license provision(s) that it believes excuses its infringement." *Niantic, Inc. v. Global++*, No. 19-cv-03425, 2020 WL 1548465, at *9 (N.D. Cal. Jan. 30, 2020) (internal quotations marks and citations omitted). "[I]n most of the cases addressing the defense of license, the issue [is] whether a license is held by the accused infringer" and "in such cases, evidence of a license is readily available to the alleged licensee, [and so] it is sensible to place upon that party the burden of coming forward with evidence of a license." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499, 2019 WL 6896145, at *2 (N.D. Cal. Dec. 18, 2019) (quoting *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)). When "the existence of a license is not in dispute, and only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007).

WowWee points to several provisions in Roblox's May 2021 Terms of Use ("TOU") that it contends permit its conduct at issue in this case. First, WowWee points to two provisions in section 2.A. of Roblox's May 18, 2021 Terms of Use ("TOU"). This provision addresses "[s]ome of the things you can do through the Service." Dkt. No. 218, Mtn. Ex. 23 at -061.[2] The "Service" is "[t]he

---

[2] Page numbers of exhibits beginning with - refer to the bates numbering. The last three digits of the bates numbering are used throughout.
All exhibits to Roblox's motion cited in this order are at Dkt. No. 218. Hereafter, the exhibits are cited solely as Mtn. Ex.

3

1  Platform [that] is part of a service offered by Roblox that allows users to develop games, connect
2  with other users to play games, and use content created by you and other users." *Id.* at -060. Section
3  2.A. of the TOU contains the definition of user-generated content ("UGC"):

> "UGC" means the following that you control, have the ability to license, have ownership of, will Provide (as defined below), or have Provided: (a) Content Services (as defined below) and (b) any modifications, changes, or derivative works by you or that you otherwise own or control of any of those types of data or works that are on, in, or used with the Service.

*Id.* at -061. "Content Services" is defined as:

> [A]ll types of content, including games (and all characters, assets, names and other items in the games), avatars and other characters, digital clothing and other digital assets for avatars and other characters, models (2D, 3D or otherwise), artwork, reviews, text, software, scripts, graphics, photos, images, sounds, music, videos, audiovisual combinations, interactive features, names, usernames, logos, Dev Services (as defined below), and other materials, works, items or content (standalone or in combination).

*Id.* "Provide" means "to create, modify, or generate through the Service, or upload, post, publish, or otherwise provide to, for, or through us, someone, or something on behalf of us or the Service." *Id.*

WowWee also points to section 2.A.(1), which is one of the things users "can do through the Service." *Id.* at -061-62. Specifically, subsection (1) indicates that users can "[c]reate, develop, modify, and contribute to Content Services." *Id.* at -062.

Roblox contends that these provisions all address what can be done on the Roblox platform, not what can be done off the platform. Dkt. No. 294 at 2, 4. Roblox also points to section 6.A.(1), which states that "[e]xcept as expressly authorized by us in these Terms, you may not make use of any IP contained in the Service unless you get separate permission from the owner." Mtn. Ex. 23 at -066. Roblox also points to section 6.B.(4) which states: "Templates may be made available to you . . . as a starting point for creating your UGC, however your use of a template does not give you any copyrights or ownership rights in such templates." *Id.* at -069.

WowWee next points to section 6.b.(3), which provides that "[f]or any UGC that you have ever Provided or that you will Provide (whether created solely by you or together with others) (a) between you and us or you and users, you retain all copyrights that you may hold in the UGC, and

4

(b) in consideration of using the Service . . . you grant us a perpetual, irrevocable, worldwide, non-exclusive, royalty-free right and license . . . ." *Id.* at -068. Roblox contends that this provision does not grant users any rights but merely "states that a user retains any rights that it already had in content provided to or created on the Roblox platform." Dkt. No. 294 at 4.

Lastly, WowWee points to the Roblox Name and Logo – Community Usage Guidelines, which are incorporated by reference into the TOU. Mtn. Ex. 23 at -061. These Guidelines pertain to "using the Roblox name and logo outside the platform." Mtn. Ex. 24 at -182. The Guidelines indicate under 1, "Allowable Usage," that "you may use the name 'Roblox' and the Roblox logo on or with any of the following items": "Digital extensions/plugins for use with Roblox"; "Complementary apps"; "Fan sites"; and "Hand-crafted products for personal use." *Id.* Under 4, "The Name 'Roblox'", the Guidelines state:

> Subject to the rules and restrictions related to advertisements and press releases you can use the name "Roblox" to promote you or your game(s) as long as the use doesn't confuse consumers or as the name of an app or any kind of merchandise or product. In other words, you can refer to "Roblox" as the name of our platform, and you can use the name to show your interest in or affection for our program.

*Id.* at -183. Roblox contends that 4 is one of several rules that must be followed when engaging in one of the four enumerated "Allowable Usage[s]" and is not an additional allowable use. Dkt. No. 294 at 4. The Court does not find this to be an unambiguous reading of the document. Under 6, "Additional Rules that Must be Followed," the Guidelines state:

> A. The use . . . cannot be associated with anything that is a knock off, violates the rights of others, creates brand confusion . . . or does not comply with applicable laws or our guidelines, terms, or rules. We reserve the right to decide (in our sole discretion) whether the use is acceptable.
>
> B. You may not use our name or logo in any manner that is likely to have an adverse effect on our company's reputation (as we may determine in our sole discretion). You may not use our name or logo in any way that suggests that you are affiliated with our company or in any way that suggests that our company sponsors or endorses your usage.

*Id.*

WowWee also points to record evidence beyond the May 2021 TOU, including a Roblox attachment to a January 26, 2022 email pertaining to Roblox's contract with Jazwares. *See* Dkt. No.

5

270, Opp. Ex. 34 at -857.[3] WowWee points to the "Piggy" line of toys as an example of Roblox creators selling off-platform merchandise incorporating their UGC without a license. Dkt. No. 263 at 10. Deposition testimony from Christian Bayley of Roblox indicates that a physical toy was sold in connection with the Piggy experience on Roblox and the product was not approved by Roblox. *See* Opp. Ex. 23 at 265:8-15. Roblox took no action against the physical products around use of the Roblox name and violation of Roblox's terms of service around codes, but according to Bayley, "the Piggy form factor is a creature, and it's stylized, so it doesn't fall under our definition of 'humanoid Classic Avatar.'" *Id.* at 265:21-25.

WowWee and Gamefam announced the launch of the My Avastars dolls on June 21, 2022. Opp. Ex. 17. On June 23, 2022, Roblox updated its TOU. *See* Opp. Ex. 21. The updated TOU includes the following provision regarding "Rights to UGC": "Except for Modified Classic Avatars . . . for any UGC that Creator has ever created or will create and makes available through [Roblox] . . . Creator retains all copyrights that Creator may hold in the UGC, (excluding any Roblox IP that may be contained within")." Opp. Ex. 21 at -641. A June 15, 2022 email update from Roblox's VP of Global Marketing on "NEW Roblox IP guidelines and the evolution of licensing" states: "We are launching new and clear rules on how our IP (name, logo, avatar usage, etc.) can be used by others. The goal is to protect our brand while ensuring that devs have complete clarity on what they can and cannot do." Opp. Ex. 39 at -310. If further states: "We are also strictly limiting Roblox IP use on physical products for commercial use and are evolving licensing from toys and dev merch. . ." *Id.* Under "[g]uidelines specific to physical products and evolution of Roblox Licensing" the email further states: "We are also minimizing the use of Roblox IP in commercial products as we don't want to be seen as endorsing the sale of physical products . . ." including that "[t]he 'classic' Roblox form factors of R6 and some select R15 will also not be permitted on physical products as they are universally recognized as Roblox . . ." *Id.* at -311. Although this evidence suggests that the June 2022 TOU changed IP rights as between Roblox and users / developers, the changes in the terms of use do not support a finding that the May 2021 TOU contained an express license for WowWee's

---

[3] All exhibits to WowWee's opposition are at Dkt. No. 270. Hereafter, the exhibits are cited solely as Opp. Ex.

1  creation of the My Avastars dolls.

2        Having carefully read the TOU and considered all cited evidence, the Court concludes that
3  the TOU in effect when the My Avastars dolls were launched do not clearly prohibit the creation of
4  the dolls. However, the TOU also do not expressly permit WowWee's creation of the dolls. Richard
5  Yanofsky of WowWee testified at his deposition that he did not reach out to Roblox to inquire about
6  obtaining a license for the My Avastars dolls. Mtn. Ex. 31 at 298:18-23. Because this is an
7  affirmative defense and WowWee has not pointed to a provision in the May 2021 TOU that would
8  clearly excuse its copyright and trade dress infringement (if found by a jury), the Court GRANTS
9  summary judgment on this defense as to the copyright and trade dress infringement claims.
10  However, as to the trademark infringement and false advertising claims, the Court finds that
11  WowWee has raised a genuine dispute of material fact as to whether WowWee's complained of use
12  of the Roblox name and mark was expressly permitted under the May 2021 TOU. Summary
13  judgment on this defense as to those claims is therefore DENIED.

## II.    Implied License

Roblox argues that under Ninth Circuit law, an implied license is granted in the copyright context when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-55 (9th Cir. 2008) (citation omitted). WowWee contends that Roblox is wrong that WowWee must meet this strict three-part test to establish an implied license in the copyright context. Dkt. No 263 at 12. There is case law that supports WowWee's position that the three-part test of *Gagnon* is sufficient but not necessary. *See Interscope Recs. v. Time Warner, Inc.*, No. CV 10-1662 SVW (PJWx), No. 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010) ("While it is undoubtedly true that most cases in which an implied license is found satisfy the three-part-test . . . an implied license test is not precluded in other circumstances" and "as with any implied-in-fact contract, the issue depends upon the objective manifestation of consent under the totality of the circumstances"); *Montwillo v. Tull*, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008) ("Nonexclusive

1  licenses can be implied from conduct").

2    WowWee relies on two cases, neither of which support the finding of an implied license on

3  these facts. In *Field v. Google Inc.*, the court asserted that "[c]onsent to use the copyrighted work

4  need not be manifested verbally and may be inferred based on silence where the copyright holder

5  knows of the use and encourages it." 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006). The court held

6  in relevant part:

> Field concedes he was aware of these industry standard mechanisms, and knew that the presence of a "no archive" meta-tag on the pages of his Web site would have informed Google not to display "Cached" links to his pages. Despite this knowledge, Field chose not to include the no-archive meta-tag on the pages of his site. He did so, knowing that Google would interpret the absence of the meta-tag as permission to allow access to the pages via "Cached" links. Thus, with knowledge of how Google would use the copyrighted works he placed on those pages, and with knowledge that he could prevent such use, Field instead made a conscious decision to permit it. His conduct is reasonably interpreted as the grant of a license to Google for that use.

*Id.* In *Mindys Cosmetics, Inc. v. Dakar*, the court found that the actions of the parties revealed the existence of an implied license where the plaintiff was "well aware" that the defendant was using her name to promote skincare products, and "acquiesced to such use." No. CV 08-4459 SVW (RZx), 2009 WL 10669480, at *4 (C.D. Cal. July 14, 2009). "Furthermore, [the plaintiff and defendant] shared the common goal of maximizing the sale of the skincare products for their mutual benefit." *Id.*

  WowWee contends that the "record shows that Roblox knew of the My Avastars project through numerous discussions with Gamefam, yet took no action to stop the project." Dkt. No. 263 at 13. One of the documents WowWee points to is a December 2, 2021 text message chain between Joseph Ferencz of Gamefam and Sydney Wiseman of WowWee. *See* Opp. Ex. 11 at -807. WowWee also points to deposition testimony of Ricardo Briceno of Gamefam. Dkt. No. 294, Ex. 81 at 124:20-125:10. WowWee additionally points to a December 6, 2021 email from Briceno of Gamefam to Andrew Yanofsky of WowWee referring to a "conversation" with Roblox. *See* Opp. Ex. 16.

  WowWee points to evidence indicating Gamefam and Roblox had regular meetings. However, none of this evidence references meetings about the My Avastars dolls specifically. For

8

1    example, at his deposition, Briceno testified that a group of people including Gamefam and Roblox
2    personnel used to meet biweekly, now monthly, where they would "discuss the flavor of the . . .
3    month of what - - any issues or any concerns or updates." Opp. Ex. 4 at 161:21-162:3.  WowWee
4    also points to evidence indicating that Gamefam represented to WowWee that the My Avastars dolls
5    would not infringe Roblox's IP.  For example, at his deposition, Briceno testified that Gamefam
6    undertook "deliberate efforts to make sure the dolls were created in a way that were compliant and
7    were not infringing on Roblox's IP.  We know that that was the intention." *Id.* at 155:11-18.  Lastly,
8    WowWee points to a June 18, 2022 Roblox email regarding the My Avastars launch story.  *See*
9    Opp. Ex. 19.  The Court finds this evidence sufficient for a rational trier of fact to infer that Roblox
10   had some knowledge of the My Avastars dolls prior to their launch, although not necessarily
11   knowledge of the dolls' design.  However, the Court does not find this evidence sufficient to infer
12   that there was an implied license.  All the cases the parties cite involve more than mere knowledge,
13   and this is not a case where an implied license can be inferred through silence based on the evidence
14   before the Court.  Summary judgment is GRANTED on WowWee's defense of implied license.

### III.    Waiver

WowWee asserts its affirmative defense of waiver and/or estoppel "on the basis that Roblox previously allowed WowWee to create toys based on games hosted on the Roblox platform, and to place toy-based characters in such games; Roblox allowed, and continues to allow, use of (arguable) modified Roblox avatars, in violation of Roblox's putative restrictions on such uses." Dkt. No. 263 at 14.

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *U.S. v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).  "In copyright, waiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)).  "[A]bandonment of a right must be manifested by some overt act indicating an intention to abandon that right." *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114

(9th Cir. 1998); *see also Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (holding that abandonment of rights gained under the Copyright Act "must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy").[4]

WowWee contends that it has evidence of waiver aside from Roblox's alleged inaction. Dkt. No. 263 at 15. First, WowWee points to section 6.B(3) of Roblox's May 2021 TOU and the incorporated Name and Logo – Community Usage Guidelines.[5] As discussed above, the Court finds that the May 2021 TOU do not clearly prohibit WowWee's conduct. However, they also do not demonstrate a clear intent to relinquish IP rights. Second, WowWee points to the evidence discussed under implied license that it asserts supports an inference that Roblox knew of WowWee's uses and planned uses. Dkt. No. 263 at 15. As discussed above, the Court finds this evidence sufficient for a fact finder to infer that Roblox had some knowledge of the My Avastars dolls prior to their launch, but the Court does not find this evidence sufficient to infer the requisite intent for waiver. And the fact that Roblox did not object to the My Squishy Little Dumplings and Twilight Daycare toys does not save the defense because these are different toys. *See Micro Star*, 154 F.3d at 1114 ("abandoning some rights is not the same as abandoning all rights").

In sum, the Court finds the evidence WowWee points to insufficient to allow a rational trier of fact to infer that Roblox intended to waive its right to sue for infringement, particularly given the following undisputed timeline. On June 18, 2022 USA Today published an article entitled: "Exclusive first look: My Avastars dolls can help you understand the metaverse – finally!" Mtn. Ex. 70. On June 21, 2022 Gamefam and WowWee published a press release entitled: "WowWee Launches Next Gen Fashion Doll Franchise Born From the Metaverse." Opp. Ex. 17. On June 22, 2022, Roblox's Global Head of Licensing and Marketing messaged Wiseman on LinkedIn concerning "recent announcements around products you are working on." Opp. Ex. 20 at -761. And

---

[4] WowWee contends that waiver and abandonment of copyright are different defenses and that WowWee does not allege that Roblox has abandoned its copyrights but rather that it has waived its right to enforce its copyrights "through its conduct *vis-à-vis* WowWee." Dkt. No. 263 at 14-15. "Strictly speaking, 'waiver' itself does not serve as a defense to copyright infringement" and "abandonment is the particular copyright doctrine closest to waiver." 4 Nimmer on Copyright § 13.06.

[5] Roblox's April 6, 2022 TOU contain the same cited language. *See* Opp. Ex. 22 at -131.

10

on July 8, 2022, Roblox's counsel sent a cease-and-desist letter to WowWee.  Mtn. Ex. 72.

## IV. Estoppel

To establish an estoppel defense, "(1) The party to be estopped must know the facts; (2) [it] must intend that [its] conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the [party asserting estoppel] must be ignorant of the true facts; and (4) [] must rely on the [conduct of the party to be estopped] to [its] injury." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).  "Unlike waiver, estoppel focuses not on a party's intent, but rather on the effects of his conduct on another . . . Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI, 1993 WL 13767335, at *13 (N.D. Cal. Aug. 2, 1993).

WowWee contends that the "effect of Roblox's conduct on WowWee warrants application of estoppel in this case." Dkt. No. 263 at 16.  Roblox contends that WowWee cannot establish that Roblox knew of WowWee's plans for the My Avastars dolls (the first element).  Dkt. No. 294 at 11.  As discussed under implied license, the Court finds the evidence WowWee points to sufficient to allow a rational trier of fact to infer that Roblox had some knowledge of Gamefam and WowWee's plans for the My Avastars dolls prior to their launch.  The Court further finds that a rational trier of fact could find for WowWee on its equitable estoppel defense.  This is particularly true for Roblox's trademark infringement and false advertising claims given that the Community Usage Guidelines incorporated by reference into the May 2021 TOU state: "you can use the name 'Roblox' to promote you or your game(s) as long as the use doesn't confuse consumers . . . In other words, you can refer to 'Roblox' as the name of our platform, and you can use the name to show your interest in or affection for our platform." Mtn. Ex. 24 at -183.  Roblox's actions, including the language in the May 2021 TOU, the June 2022 updates to the TOU shortly after the launch of the My Avastars dolls, and the existence of prior collaborations with Gamefam (albeit ones that Roblox contends did not infringe its IP) raise genuine disputes of fact as to the first two elements of an estoppel defense.  WowWee has also pointed to evidence concerning Gamefam's representations to WowWee about

11

1   whether the My Avastars dolls infringed Roblox's IP, which raises a dispute of fact as to the third

2   and fourth elements. *See* Opp. Exs. 16, 20. The Court thus DENIES Roblox's motion for summary

3   judgment on WowWee's estoppel defense.

### V.  Acquiescence

In its amended answer, WowWee alleges that Roblox's claims are barred in whole or part by express or implied license and/or acquiescence because Roblox did not object to its Twilight Daycare collaboration with Gamefam, "Roblox continues to allow Gamefam to make experiences on Roblox that are arguably modified classic avatars" and Roblox's TOU do not prohibit the activity Roblox alleges is wrongful in this case, and Roblox's TOU and prior statements in fact permit WowWee's activities. Dkt. No. 74 ¶ 9.

Acquiescence "limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent to another." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010) (emphasis in original). Acquiescence is a closely related concept to laches and "differs from laches principally in that it requires some form of active consent." *Id.* at 989. The "elements of a *prima facie* case for acquiescence" are: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* "When inquiring into the reasonableness of reliance, a district court must examine both the content of the affirmative act and the context in which the act was performed." *Id.* at 990. There is some dispute about whether acquiescence applies in the copyright context, but the Court need not address this dispute to rule on this motion. *See Taylor Holland LLC v. MVMT*, No. 2:15-cv-03578-SVW-JC, 2016 WL 6892097, at *8 (C.D. Cal. Aug. 11, 2016) (collecting cases).

WowWee points to the following evidence that it contends creates a triable issue of fact. A 2016 Roblox marketing plan slide deck includes the following page. Instagram Photo Contest: (1) Follow @Roblox; (2) Snap your Roblox figures in a fun composition; (3) Tag @Roblox & use the hashtag #DoYouRoblox?" Opp. Ex. 41 at -707. WowWee again points to the Roblox Name and

1  Logo – Community Usage Guidelines regarding use of the name "Roblox." *See* Mtn. Ex. 24 at -
2  183. WowWee also points to the May 2021 TOU.
3        The Court does not find this to be evidence of affirmative conduct that could provide a
4  foundation for an acquiescence defense. Although the May 2021 TOU do not clearly prohibit
5  WowWee's conduct, they cannot be reasonably construed as an "active representation that [Roblox]
6  would not assert a right or claim." *See Seller Agency Council*, 621 F.3d at 989. Additionally,
7  because Roblox notified WowWee of its objections to the dolls shortly after their official launch,
8  there was no inexcusable delay. Summary judgment is GRANTED on WowWee's acquiescence
9  defense.

## VI. Unclean Hands

In its amended answer, WowWee alleges that Roblox's claims are barred by the doctrine of unclean hands because Roblox "sought to intimidate through selective, inconsistent, overreaching and/or retroactive enforcement of its vague, unlawful and/or unfair moving target policies. Roblox also made certain misstatements in its copyright registrations for its works in suit which were fraudulent in nature. Roblox's claimed copyright and trade dress and Jazwares' figurines are based on elements that Roblox borrowed from third parties." Dkt. No. 74 ¶ 8.

To prevail on an unclean hands defense, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). "The application of the unclean hands doctrine raises primarily a question of fact." *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). However, the unclean hands defense "is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. For instance, the defense has been recognized when the plaintiff misused the process of the courts by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party." 4 Nimmer on Copyright § 13.09[B]. "What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion

13

of such rights against the defendant." *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963). Additionally, "the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration." *Id.* at 349-50. "[T]he court must weigh the substance of the right asserted by the plaintiff against the transgression which, it is contended, serves to foreclose that right. The relative extent of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck." *Id.* at 350.

Copyright owners need not "challenge each and every actionable infringement" and can "defer suit until [they] can estimate whether litigation is worth the candle." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 682-83 (2014). According to a leading treatise, the "allegedly unfair or improper filing of a trademark infringement lawsuit cannot itself constitute a basis for an unclean hands defense to that lawsuit." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed. Mar. 2024 update) § 31.51. The Court agrees with Roblox that selective enforcement is insufficient to establish an unclean hands defense as a matter of law.

WowWee next contends that "the record contains ample evidence that Roblox's claimed copyright and trade dress, and the Jazwares figurines that Roblox has also attempted to put at issue in this case, are based on elements that Roblox borrowed from third parties." Dkt. No. 263 at 21. WowWee points to evidence in the record regarding disputes between Roblox and a third-party whose identity is sealed. See Opp. Exs. 48-50. That there were legal disputes between Roblox and a third-party in the past does not rise to the level of inequitable conduct *vis-à-vis* WowWee required for an unclean hands defense.

WowWee further contends that "Roblox has [] falsely asserted ownership of third-party rights and non-protectable 'models' in versions of its TOU, and continues to use such claims to intimidate users by claiming rights 'at its sole discretion.'" Dkt. No. 263 at 21. As an example WowWee points to the following provision in Roblox's June 23, 2022 TOU:

> Rights And Obligations In Modified Models. Roblox has created, owns all intellectual property in, and makes available to Creators models, which Creators may use as avatars and which may further be altered, customized, and modified by Creators (a 'Modified Model'). These include 'Modified Classic Avatars' meaning

> those avatars derived from a model constructed out of only 6 parts (known generally as 'R6' avatars) and those avatars derived from a model constructed out of only 15 parts (known generally as 'R15' avatars), and, subjected to subsection 1.(b)(2) above, any derivatives thereof (to be determined in Roblox's sole discretion) that are based on or derived from the body forms that have been developed by Roblox.

Opp. Ex. 21 at -644. The issue before the Court is whether Roblox's CLKD registered works were infringed. Whether other "models" are non-protectable and whether Roblox has falsely asserted ownership of third-party rights are not issues before the Court and are not inferences that can be drawn in WowWee's favor in this case.

Lastly, WowWee points to the following evidence that it contends demonstrates that Roblox provided false information to the Copyright Office, misrepresented the basis of its purported rights, and failed to correct statements it knew to be false. Dkt. No. 263 at 20. First, WowWee points to the deposition testimony of I-Wei Huang referenced in section I.A. of the order on WowWee's motion for summary judgment. Next, WowWee points to the following deposition testimony of Roblox's Stephen Jobe: "Q. . . . And to the best of your knowledge . . . the information reflected in the certificate of registration is correct? A. No. Q. So the registration contains errors? A. Yes. Q. Was this ever brought to the attention of the copyright office? A. That, I don't know." Opp. Ex. 47 at 122:25-126:8. The Court does not find that the issue of who is listed as the author on the copyright registrations rises to the level of a "transgression [] of serious proportions" sufficient to support an unclean hands defense. *See* 4 Nimmer on Copyright § 13.09[B].

Summary judgment is therefore GRANTED on WowWee's affirmative defense of unclean hands.

**VII. Copyright Misuse**

In its amended answer, WowWee alleges that "Roblox overstated its claimed intellectual property in an effort to harm WowWee." Dkt. No. 74 ¶ 6. Roblox contends that this defense "rises and falls with the question whether Roblox's intellectual property is protectable in the first place." Dkt. No. 294 at 14.

"Copyright misuse is a judicially crafted affirmative defense to copyright infringement, derived from the long-standing existence of such a defense in patent litigation." *Apple Inc. v. Pystar*

1    *Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011).  "The defense of copyright misuse forbids a copyright

2    holder from securing an exclusive right or limited monopoly not granted by the Copyright Office."

3    *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citation and internal

4    quotation marks omitted).  In other words, it "prevents copyright holders from leveraging their

5    limited monopoly to allow them control of areas outside the monopoly."  *Id.*  The doctrine "does

6    not prohibit using conditions to control use of copyrighted material, but it does prevent copyright

7    holders from using the conditions to stifle competition."  *Apple Inc.*, 658 F.3d at 1159.

8           The Ninth Circuit has "applied the doctrine sparingly."  *Id.* at 1157.  However, the Ninth

9    Circuit has also only discussed copyright misuse in a "handful of published opinions."  *Omega S.A.*

10   *v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015) (Wardlaw, J., concurring).  The

11   contours of the defense "are still being defined."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629

12   F.3d 928, 941 (9th Cir. 2010).  A court in this district, reviewing case law on the doctrine in 2002,

13   concluded that the test is "whether plaintiff's use of his or her copyright violates the public policy

14   embodied in the grant of a copyright, not whether the use is anti-competitive."  *In re Napster, Inc.*

15   *Copyright Litig.*, 191 F. Supp. 2d 1087, 1103 (N.D. Cal. 2002).  According to that court, copyright

16   misuse "is distinguishable from other equitable defenses in that it focuses on harm to the public as

17   well as harm to the court's integrity."  *Id.* at 1111.

18          WowWee points to the following record evidence.  First, WowWee points again to the

19   copyright registrations and the deposition of Roblox employee Huang, contending as it does in its

20   motion for summary judgment that Ge is the author of the works and no transfer agreement exists,

21   such that Roblox misrepresented its ownership to the Copyright Office.  *See* Dkt. No. 263 at 23.

22   Second, WowWee points to the evidence concerning a dispute between Roblox and a third-party

23   referenced under the unclean hands defense portion of this order to support its contention that

24   Roblox claims rights in unregistered "avatar bases" that are "composed largely or entirely of

25   elements that Roblox borrowed from third parties."  *Id.*  The Court cannot justifiably infer based on

26   this evidence of IP disputes between Roblox and a third-party that this statement is true.  Lastly,

27   WowWee contends as it did with respect to its unclean hands defense that Roblox falsely "asserts

28   ownership of third-party rights and non-protectable 'models' in versions of its TOU and continues

16

to use such claims to intimidate users by claiming rights 'at its sole discretion.'" *Id.* at 24. This Court cannot justifiably draw these inferences based on the evidence before it in this case.

WowWee has not met its burden of designating specific facts that show there is a genuine issue for trial here. Summary judgment on WowWee's copyright misuse defense is GRANTED.

## VIII. Dispute Regarding the Admissibility of an Exhibit

WowWee objects to Exhibit 12 submitted with Roblox's motion for partial summary judgment on the basis that it lacks foundation and is unauthenticated. Dkt. No. 263 at 25. The Court finds this dispute moot because the parties do not rely on this exhibit in their summary judgment briefing and the Court has not considered it. If Roblox seeks to admit this exhibit at trial, WowWee can raise objections as it deems necessary.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART AND DENIES IN PART Roblox's motion for partial summary judgment.

**IT IS SO ORDERED**.

Dated: September 3, 2024

SUSAN ILLSTON
United States District Judge